UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOSEPH D. MATEER, | ) | CASE NO. 1:22-cv-00740 |
| CHRISTOPHER BRANCHCOMB, | ) | |
| and KATHARINE JOHNSON | ) | |
| *On behalf of themselves and* | ) | |
| *all others similarly situated,* | ) | JUDGE LORNA G. SCHOFIELD |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' FIRST** |
| | ) | **AMENDED COMPLAINT** |
| vs. | ) | |
| | ) | |
| PELOTON INTERACTIVE, INC. | ) | |
| | ) | |
| Defendant. | ) | **(Jury Demand Endorsed Herein)** |

Now come Plaintiffs Joseph D. Mateer, Christopher Branchcomb, and Katharine Johnson

by and through counsel, and for their Collective Action and Class Action Complaint against

Defendant Peloton Interactive, Inc. ("Defendant" or "Peloton"), state and allege the following:

### INTRODUCTION

1.      Congress enacted the Fair Labor Standards Act ("FLSA") to remedy working

conditions "detrimental to the maintenance of the minimum standard of living necessary for health,

efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To achieve this broad remedial

purpose, the FLSA establishes minimum wage and overtime requirements for covered employees.

29 U.S.C. §§ 206, 207. These provisions, coupled with an effective integrated cause of action

within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees.

2.      Defendant's workforce of leasing and sales agents consists of personnel in two

broad categories of employees: (a) **inside sales representatives** who receive in-bound phone calls,

emails, or internet-based orders for rentals and purchases through Defendant's computer or phone

systems; and (b) **showroom personnel** who work at one of Defendant's physical locations across

the country where they offer rentals and purchases similar to those offered by the inside sales representatives.

3.      All of these personnel are subject to a company-wide policy:[1] Defendant requires prior approval of all overtime hours yet routes customer contacts to the sales personnel even during their off-shift time.  Despite Defendant's practice of promoting off-shift work, Defendant has no mechanism for these employees to report their off-shift time on time sheets, reports, or logs for work performed outside of a pre-assigned shift—even though Defendant tracks the date and time of the sale and the employee responsible therefor.  Defendant is aware of the off-shift work, but still maintains inaccurate time records.  The effect of these company-wide policies and procedures is the failure to pay overtime compensation to Defendant's non-exempt inside sales representatives and showroom personnel when they work overtime absent prior approval.  As set forth below, the above-captioned Plaintiffs represent the non-exempt members of the workforce averred herein and seek remedies for the violations alleged below.

4.      Pursuant to the FLSA, Plaintiffs Mateer and Branchcomb were inside sales representatives and bring a "collective action" consisting of the following categories of Defendant's non-exempt inside sales employees:

(a) **On-Site Inside Sales Personnel:** Defendant's non-exempt inside sales workforce working in-house for Defendant at Defendant's offices;

(b) **Remote Inside Sales Personnel:** Defendant's non-exempt remote workforce engaging in inside sales activities in work-from-home positions across the United States, including

---

[1] Defendant's company-wide Overtime Policy is set forth in its Employee Handbook.  A relevant excerpt is included *infra* at paragraph 44.

but not limited to Defendant's personnel who were re-assigned from other units during the COVID-19 pandemic to engage in remote inside sales duties on a temporary basis; and

(c) **Temporary or Seasonal Inside Sales Personnel**: Defendant's non-exempt temporary or seasonal employees who performed inside sales activities either on-site or remotely.

5.      Employees falling within the categories set forth in the previous averment shall hereinafter be referred to as Inside Sales Representatives ("ISRs") and/or the ISR Collective.[2]

6.      Plaintiff Johnson brings a "collective action" under the FLSA for Defendant's non-exempt showroom sales representatives across the United States. These personnel shall hereinafter be referred to as "Showroom Personnel" and/or "the Showroom Collective."

7.      Plaintiffs Mateer and Johnson also bring a "class action" pursuant to Rule 23 of the Federal Rules of Civil Procedure, each representing a class specific to their own state. Plaintiff Mateer seeks to represent a class of similarly situated employees under New York law and Plaintiff Johnson seeks to represent a class of similarly situated employees under Pennsylvania law. More specific allegations related to these claims are set forth in the "Class Action Allegations" section below.

8.      In violation of the FLSA, Defendant failed to pay Plaintiffs and other similarly situated Showroom Personnel and ISRs overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they work over 40 in a workweek.

---

[2] Plaintiffs use the title "Inside Sales Representative" to collectively refer to the various titles Defendant used to describe the inside sales position, including "Inside Sales Representative," "Account Executive, Inside Sales," and "Team Lead, Inside Sales." This term additionally includes not just the permanent sales employees, but also those who were only hired to work seasonally, as well as the sales representatives who were employed to work from home. And the term includes sales representatives who may have initially worked at one of Defendant's other locations, including in an office or at a showroom, but whose duties and work locations during the COVID-19 pandemic changed, and whose duties and responsibilities consisted of non-exempt inside sales responsibilities—regardless of their job title or location.

9.     By unlawfully failing to pay overtime, Defendant also violated New York Labor Law Articles 6 and 19; the Pennsylvania Wage Payment and Collection Law ("PWCL"), 43 P.S. § 260.1 *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, inasmuch as Defendant failed to pay Plaintiffs and other members of the New York and Pennsylvania classes at the prescribed rate of one and one-half times the employees' regular wage rates for all overtime hours worked.

10.    Plaintiffs brings these collective actions and class actions to recover the unpaid wages owed to them and all other similarly situated employees of Defendant, current and former, who worked at any of Defendant's locations or remotely at any time during the relevant period before the Complaint was filed up to the present.

11.    Beyond the FLSA and state law allegations, and related thereto, is the set of allegations that Defendant failed to provide legally mandated initial hire notices and accurate wage statements to all of its employees. As discussed in greater detail below, Plaintiff Mateer seeks to represent a class of all of Defendant's employees in the Initial Hire and Wage Statement Class.

## JURISDICTION AND VENUE

12.    The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act, in that: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) this action is a class action in which one or more members of a class of Plaintiffs is a citizen of a state different from the Defendant; and (3) the Defendant is not a state, state official, or other governmental entity, and the number of members of all proposed plaintiff classes in the aggregate is greater than 100. The Court also has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Additionally, the

Court has diversity jurisdiction under 28 U.S.C. § 1332 in that Plaintiffs Branchcomb and Johnson are citizens of states different than that of Defendant.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within this District and Division, and a substantial part of the events and omissions giving rise to these claims occurred in this District and Division.

## PARTIES

### A.     *Plaintiff Mateer*

14.     At all times relevant herein, Plaintiff Joseph D. Mateer was a citizen of the United States and resident of New York.  Plaintiff worked for Defendant in an inside sales role from approximately October 2017 until approximately June 11, 2021, when he left the company.

15.     At all times relevant herein, Plaintiff Mateer worked as an ISR or performed the job duties and functions of an ISR.

16.     At all times relevant herein, Plaintiff Mateer worked significant overtime hours without a system to request compensation for the hours worked.  Compensation for the hours worked remains unpaid, and he now seeks payment.

17.     At all times relevant herein, Plaintiff Mateer and similarly situated ISRs were employees within the meaning of 29 U.S.C. § 203(e).

18.     At all times relevant herein, Plaintiff Mateer and other similarly situated ISRs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

**B.**    ***Plaintiff Branchcomb***

19.    At all times relevant herein, Plaintiff Christopher Branchcomb was a citizen of the United States.

20.    Plaintiff Branchcomb began his employment for Defendant in May of 2021 as an ISR working remotely from his home in the District of Columbia, and after relocating in the Summer of 2021, from his home in Texas.

21.    At all times relevant herein, Plaintiff Branchcomb worked as an ISR or performed the job duties and functions of an ISR.

22.    Like Plaintiff Mateer and other similarly situated employees, Plaintiff Branchcomb worked significant overtime hours for which he had no mechanism to request compensation. Compensation for the hours worked remains unpaid, and he now seeks payment.

23.    At all times relevant herein, Plaintiff Branchcomb and similarly situated ISRs were employees within the meaning of 29 U.S.C. § 203(e).

24.    At all times relevant herein, Plaintiff Branchcomb and other similarly situated ISRs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

**C.**    ***Plaintiff Johnson***

25.    At all times relevant herein, Plaintiff Katharine Johnson was a citizen of the United States and a resident of the State of New Jersey.

26.    On or about December 2017, Plaintiff Johnson was hired by Defendant to work in its showroom in King of Prussia, Pennsylvania, where the events giving rise to this dispute took place.

27.     During her employment, her job titles were "Sales Associate," subsequently entitled "Sales Professional," and then "Assistant Showroom Manager."

28.     Although her job titles changed, her responsibilities remained largely the same.  In all of these capacities, Plaintiff Johnson was a non-exempt employee, working full-time, in pre-scheduled shifts, and was compensated with a mixture of hourly wages and sales-based commissions.

29.     Like similarly situated showroom personnel, Plaintiff Johnson worked significant overtime hours for which she had no mechanism to request compensation.  Compensation for the hours worked remains unpaid, and she now seeks payment.

30.     At all times relevant herein, Plaintiff Johnson and similarly situated showroom personnel were employees within the meaning of 29 U.S.C. § 203(e).

31.     At all times relevant herein, Plaintiff Johnson and other similarly situated showroom personnel were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

**D.     *Defendant Peloton Interactive, Inc.***

32.     Defendant is a Delaware corporation with its principal place of business in New York, New York, and offers subscriptions of streaming based interactive fitness classes, related apps and games, and leases, rentals, and/or sales of fitness products across the country. The unlawful compensation system at issue in this complaint affects Defendant's current and former non-exempt sales personnel who worked in assigned shifts and who were forced to work "off the clock" in excess of forty (40) hours a week without receiving either their agreed upon hourly compensation and/or requisite overtime premium for each hour worked.

33.     Defendant's non-exempt sales personnel are given apps, email, and other electronic systems that are installed on their personal mobile devices and are to be used outside their normal working hours to complete sales without receiving full compensation for such hours—even though the off-shift sales related to the work are tracked, the time is not recorded. Defendant's deliberate failure to compensate its employees for these hours worked violates federal law as set forth in the FLSA and the laws of the states of New York and Pennsylvania.

34.     At all times relevant herein Defendant maintained its principal place of business within this District and Division.

35.     At all times relevant herein, Defendant conducted business within this District and Division.

36.     At all times relevant herein, Defendant was an employer within the meaning of 29 U.S.C. § 203(d) and the New York Labor Law, Article 6, § 190, *et seq.*

37.     At all times relevant herein, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r).

38.     At all times relevant herein, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

## FACTUAL ALLEGATIONS

*A.*     *Plaintiff Johnson's Job Experience*

39.     Plaintiff Johnson was hired in or around December of 2017 to work as a sales associate in Defendant's showroom in King of Prussia, Pennsylvania. In this capacity, she reported directly to a supervisor.

8

40.     Although Plaintiff Johnson's job titles changed over time, starting on her first day and continuing throughout her employment, she was a full-time, non-exempt employee, paid on an hourly basis, assigned to work 40 hours per week on a shift-based schedule set by Defendant.

41.     In addition to her hourly wage, she earned commissions for individual sales.

42.     Plaintiff Johnson and other similarly situated Showroom Personnel were properly categorized as non-exempt employees and thus were entitled to overtime pay for all hours worked over 40 in a workweek.

43.     Although Defendant's sales personnel, including both the Showroom Personnel and the ISRs, are generally limited to compensation for a 40-hour work week, Defendant's Employee Handbook does provide for overtime payments, albeit only overtime that is approved in advance. In practice, this meant that overtime hours that accrued without prior approval were not paid, violating the FLSA and applicable state laws—even though off-shift sales were tracked in real time and attributed to the employee making said sale. In effect, Defendant deliberately kept inaccurate time records.

44.     The full context of the Employee Handbook's Overtime Policy is set forth below:

**Overtime**

If you are an overtime eligible (non-exempt) employee, you may be requested or required to work overtime. If you are an exempt employee, you are expected to manage your hours according to business needs. Peloton Interactive, Inc. expects you to work as long as necessary to meet the demands of your job. The salary received by employees treated as exempt shall constitute full compensation for all hours worked by the employee regardless of the number of hours and without regard to whether any such hours worked exceed 40 in a workweek.

Non-exempt employees may be asked to work overtime and will receive overtime compensation at the rate of time and a half their regular rate of pay for all hours worked in excess of forty in a workweek, in accordance with the following guidelines:

1. All overtime must be approved in advance by the employee's immediate supervisor.

2. "Hours worked" means time actually spent on the job. It does not include hours away from work due to vacation, sickness or holiday, even when those days are compensated, or time off that is approved (e.g., unpaid sick leave, personal leave, etc.). For example, if you work 40 hours from Monday through Thursday, but do not work on Friday because you are on vacation or it is a paid holiday, you are <u>not</u> entitled to overtime compensation because you did not work more than 40 hours that week.

In addition, non-exempt employees who work on a company holiday (see company holiday schedule) will receive overtime compensation at the rate of time and a half their regular rate of pay.

45.     Upon information and belief, this Overtime Policy was applicable to all showroom personnel and ISRs nationwide.

46.     As shown in the above Employee Handbook excerpt, "[a]ll overtime must be approved in advance by the employee's immediate supervisor."  Consistent with the policy set forth in Defendant's Employee Handbook, ISRs and Showroom Personnel who worked outside of their pre-assigned shifts had no mechanism by which to request compensation for time worked while off-the-clock.

47.     In the case of Plaintiff Johnson, Showroom Personnel clock in and clock out using iPad minis located within the showroom premises.  Software on the iPads allows them to clock in and out by taking a selfie with the iPad camera.  This is the only way for sales personnel to log

their hours.  That is, there are no timecards, timesheets, or any other mechanism to report or record hours worked.

48.     Defendant's timekeeping mechanism prevents showroom personnel from obtaining compensation for hours worked before or after they clock-in or out—even though Defendant's systems continue to steer customer contacts to them or otherwise enable selling during their off-shift time.

49.     This blanket policy and practice of denying compensation for overtime absent pre-approval was systemic across Defendant's showrooms nationwide and was the same as to Plaintiff Johnson as to all other similarly situated members of the Showroom Collective.

50.     Defendant uses proprietary software and apps to facilitate the work performance of its Showroom Personnel.  These technologies are customarily installed on the Showroom Personnel's individual personal mobile devices, which was the case with Plaintiff Johnson. Examples of these apps and software include email systems and apps that manage customer contacts like phone numbers and email addresses.

51.     There is no related app or technology for timekeeping or clocking in or out.

52.     Defendant gave Showroom Personnel business cards listing their email addresses and phone numbers, which they in turn provided to customers or sales leads. Prospective or current customers could call or email and connect with Plaintiff Johnson and similarly situated members of the Showroom Collective any time of day, but most importantly, even during those times when the employees were no longer on-shift.

53.     During Plaintiff Johnson's employment, sales emails would come to her personal mobile phone, even after she clocked out when her shift ended.

54.     Defendant's systems enabled sales contacts to come to sales associate mobile devices, without regard to whether the employee was on-shift or being paid for the work.

55.     During Plaintiff Johnson's employment, Defendant used a company-wide database that contained leads, sales, and customer data. This software was installed on individual Showroom Personnel's personal mobile devices in the form of an app.  The app itself not only facilitated off-the-clock sales, but also tracked the times that leads were added and sales were made. Plaintiff Johnson used the app during her off-shift hours to manage her sales leads and customer relationships as well as to engage in activities related to off-the-clock selling.

56.     These applications and other systems facilitated sales anywhere at any time.

57.     Considerable off-shift work was done that did not include securing a transaction. For example, customers would call or email when they needed more information or had questions about the product or services.  This educational or informational work was integral and dispensable to the job of selling and went uncompensated.

### 1.     *Sales Quotas*

58.     Each sales associate had a sales quota.  The failure of Showroom Personnel to meet their sales quotas resulted in negative employment actions.

59.     Upon information and belief, Defendant's sales quota systems took into account off-shift sales performance.  Sales personnel were subject to monthly sales goals. These sales goals were established by Defendant at its discretion. The formula used to establish the sales goal was based, at least in part, on the capacity of sales personnel to sell during their off-shift time periods. Showroom personnel could not always meet this goal by selling during their assigned shifts.  But failure to meet this goal could eventually result in termination under the guise of performance deficiencies.

**2.    *FLSA Applicability***

60.    Plaintiff Johnson and other similarly situated Showroom Sales Associates were hired as W-2 employees, and Defendant reported their wages on an IRS Form W-2.

61.    Similarly situated Showroom Sales Associates were assigned to work at Defendant's showrooms across the United States.

62.    Defendant's supervisory personnel supervised and controlled Plaintiff Johnson's and similarly situated Showroom Sales Associates' work schedules.

63.    Defendant assigned Plaintiff Johnson and similarly situated Showroom Sales Associates the tasks that Plaintiff and the other Showroom Sales Associates performed and determined the hours that Plaintiff and the other Showroom Sales Associates worked.

64.    Defendant required that Plaintiff Johnson and similarly situated Showroom Sales Associates follow Defendant's rules, policies, and directives, including Defendant's timekeeping policies.

65.    Per Defendant's practice and policy, Plaintiff Johnson and similarly situated Showroom Sales Associates were required to and did work more than 40 hours per workweek on a regular and recurring basis.

66.    Plaintiff Johnson and similarly situated Showroom Sales Associates performed pre-shift, post-shift, and off the clock work without pay on a regular and recurring basis.

67.    Plaintiff Johnson and similarly situated Showroom Sales Associates worked through meal periods and/or short rest breaks without compensation.

68.    Plaintiff Johnson and other similarly situated Showroom Sales Associates were not provided bona fide meal periods during which they were completely relieved of their duties.

69.     Defendant's practice and policy was to deny Plaintiff Johnson and similarly situated Showroom Sales Associates a mechanism to report any overtime work incurred after it had been worked. Although any individual off-shift sale might result in a commission payment therefor, this did not compensate Plaintiff and the Showroom Sales Associates for (a) time spent working that never resulted in a sale, (b) all of the time spent performing the related work, even if it resulted in a sale, and (c) all of the off-shift work that was unrelated to commission-generating sales. Because Defendant tracked these off-shift sales, it had knowledge thereof but deliberately failed to keep accurate records of the time in question.

70.     Plaintiff Johnson's work and the work of similarly situated Showroom Sales Associates did not end when the workday ended.  To the contrary, Defendant's practice, policy, and systems allowed for the performance of and consummation of sales pre-shift, during meal and rest breaks, and post-shift, as well as on weekends and holidays.

### 3.     Showroom Personnel Re-Assigned to Inside Sales

71.     On or about March 13, 2020, Defendant began closing its physical showrooms across the United States. Thereafter, a substantial number of Showroom Personnel were re-assigned to engage in Inside Sales activities on a remote, work-from-home basis.  From that point, they were subject to the same or substantially similar policies, systems, practices, and procedures as those applicable to Plaintiffs Mateer and Branchcomb during the same period.

72.     These re-assigned Showroom Personnel became Remote ISRs and from the time of their re-assignment these re-assigned personnel became members of the ISR collective.

### B.     Plaintiff Mateer's Job Experience

73.     From approximately October 2017 to February of 2018, Plaintiff Mateer was a non-exempt seasonal employee paid on an hourly basis working in a full-time capacity in shifts

14

scheduled by Defendant.  During this time period, his title was "Inside Sales Representative."
Plaintiff Mateer was paid additional incentives in addition to his hourly wage per Defendant's
Short Term Incentive Compensation Plan.  This plan included sales commissions, bonuses for
team performance, bonuses for average cart values, and bonuses for attaining certain levels of sales
volumes.  The benchmarks for bonuses paid for team performance and average cart values changed
month to month at Defendant's sole discretion and at benchmarks or dollar amounts established at
Defendant's sole discretion.

74.     On or about February 26, 2018, Defendant changed Plaintiff Mateer's job title to
"Account Executive, Inside Sales."  In this position, Plaintiff Mateer's hourly rate of pay was
changed to an annual rate of pay that was paid in semi-monthly installments, plus the additional
forms of compensation per the Short Term Incentive Compensation Plan. After months of this
compensation method, Defendant changed its compensation policies without explanation,
reverting to compensating Plaintiff Mateer on an hourly basis, plus the additional forms of
compensation per the Short Term Incentive Compensation Plan.

75.     In September of 2020, Defendant issued a written notice to Plaintiff Mateer, and
upon information and belief, to all ISRs nationwide, reiterating their non-exempt status, and
confirming their entitlement to overtime in accordance with applicable law.  The notice stated in
part:

> Below are the following changes made to the Account Executive role:
>
> **Non-Exempt.** As a non-exempt employee, you will be paid on an hourly basis. You are required to track
> and record all hours you work, and you will receive overtime if you work more than 40 hours in a
> workweek, and more than 8 hours in a day in some states, or as required in accordance with local laws.

76.     Plaintiff Mateer signed and returned the notice to Defendant on or about October
8, 2020.

77.     Even though the affected ISRs were to "track and record all hours" worked, Defendant kept its timekeeping systems separate from its other work-related systems, particularly its sales systems. This separation meant that an ISR could be receiving customer phone calls while logged out of the timekeeper system. So when a customer call came in after the ISR had de-activated their timekeeper, the ISR was working without compensation. And yet, Defendant had a real time report of any resulting sale while leaving the employee with no means of reporting that time on a separate timesheet or log or other means of reporting the off-shift time.

78.     Plaintiff Mateer worked under the job title "Account Executive" until January 12, 2021, when he was given the title "Team Lead, Inside Sales." Despite the title change, his job duties remained largely unchanged, and he continued to work full-time in shifts scheduled by Defendant.

79.     Notwithstanding the change to Plaintiff Mateer's title, Defendant never rescinded the notice of the company policy designating him as non-exempt.

80.     On or about January 12, 2021, Plaintiff Mateer's hourly pay was once again changed to an annualized rate, which was paid on a semi-monthly basis, along with additional compensation from the Short Term Incentive Compensation Plan.

81.     **Deficient Initial Hire Notices and Wage Statements**. Defendant failed to provide Plaintiff Mateer with Initial Hire notices that contained legally required information as detailed more fully in Count Four.  The wage statements that Defendant furnished to Plaintiff Mateer were similarly lacking in required information.  These deficiencies are more fully detailed in Count Four. The effect of Defendant's disclosure failures, when combined with Defendant's frequently changing compensation plans, deprived Plaintiff Mateer of the ability to know exactly how much compensation he was entitled to and led to the underpayment of wages set forth above.  Defendant

altered Plaintiff's base compensation system without appropriate notice. When Defendant was making credits and deductions to Plaintiff's compensation, commingled with a number of bonus payments per Defendant's Short Term Incentive Compensation Plan (addressed more fully in Count Four), and without line items for the same, there was no way for Plaintiff Mateer to know how much he was earning—let alone whether Defendant's accounting was accurate. These disclosure failures led to the underpayment of wages as averred herein.

82.     Upon information and belief, all similarly situated ISRs were subject to agreements and policies designating New York Law as the choice of law for any employment dispute with Defendant.

83.     During his employment, Plaintiff Mateer performed significant "off-the-clock" work. Plaintiff Mateer regularly worked in excess of 40 hours in a workweek and was not paid overtime per the FLSA and New York Labor Law. This uncompensated "off-the-clock" overtime accrued during workweeks during each of Plaintiff Mateer's inside sales positions as an "Inside Sales Representative," an "Account Executive, Inside Sales," and as a "Team Lead, Inside Sales."

84.     During his employment, Plaintiff Mateer worked in excess of 8 hours in a given workday and was not paid overtime per the FLSA and New York Labor Law. This uncompensated overtime accrued during workweeks during each of Plaintiff Mateer's positions as an "Inside Sales Representative," an "Account Executive, Inside Sales," and as a "Team Lead, Inside Sales."

85.     Upon information and belief, Defendant employed in excess of one hundred ISRs throughout the relevant statute of limitations periods. These individuals include, but are not limited to, other individuals employed as an "Inside Sales Representative," an "Account Executive, Inside Sales," and as a "Team Lead, Inside Sales." Included within this group are ISRs employed by Defendant throughout the COVID-19 pandemic.

86.     Defendant closed approximately 80 showrooms across the United States in 2020 and employed additional ISRs to work remotely. Upon information and belief, these ISRs accessed computer systems, sales software, and time tracking software in Defendant's New York headquarters and were supervised, managed, and trained by personnel from Defendant's New York headquarters. Their employment circumstances, experiences, duties, and responsibilities were similar to the circumstances, experiences, duties, and responsibilities of Plaintiff Mateer.

87.     In particular, all of these ISRs were subject to the same policy set forth above pertaining to non-payment of overtime absent prior approval.  Additionally, these ISRs were subject to Defendant's centralized and systematic overtime practices: none of them had a mechanism to request overtime after it had been worked off the clock.

88.     Plaintiff Mateer and other similarly situated ISRs were properly categorized as non-exempt employees, and thus were entitled to overtime pay for all hours worked over 40 in a workweek.

89.     Plaintiff Mateer and other similarly situated ISRs worked as non-exempt employees for at least one workweek during the relevant statute of limitations periods.

90.     Plaintiff Mateer and other similarly situated ISRs worked over forty hours in a workweek as a non-exempt employee during the relevant statute of limitations periods and did not receive overtime compensation for the hours worked.

91.     Plaintiff Mateer and other similarly situated ISRs were hired as W-2 employees, and Defendant reported their wages on an IRS Form W-2.

92.     Plaintiff Mateer was assigned to work at Defendant's headquarters located in New York, New York, where he was assigned a workstation and reported directly to a supervisor.

93.     Similarly situated ISRs were assigned to work at Defendant's headquarters located in New York, New York, where Plaintiff Mateer and similarly situated ISRs had assigned workstations and reported directly to a supervisor.

94.     On or about March 13, 2020, the physical location of Plaintiff Mateer and similarly situated ISRs' work locations changed because of the COVID-19 pandemic.  Plaintiff Mateer worked remotely from his home in New York City, where he continued to report to a supervisor, albeit remotely.  Similarly situated ISRs also began to work remotely and still reported to their supervisors.

95.     Defendant supervised and controlled Plaintiff Mateer's and similarly situated ISRs' work schedules.

96.     Defendant assigned Plaintiff Mateer and similarly situated ISRs the tasks that Plaintiff and the other ISRs performed and determined the hours that Plaintiff and the other ISRs worked.

97.     Defendant required that Plaintiff Mateer and similarly situated ISRs follow Defendant's rules, policies, and directives, including Defendant's timekeeping policies.

98.     Per Defendant's practice and policy, Plaintiff Mateer and similarly situated ISRs were required to and did work more than 40 hours per workweek on a regular and recurring basis.

99.     Plaintiff Mateer and similarly situated ISRs performed pre-shift, post-shift, and off the clock work without pay on a regular and recurring basis.

100.    Plaintiff Mateer and similarly situated ISRs worked through meal periods and/or short rest breaks without compensation.

101.    Plaintiff Mateer and other similarly situated ISRs were not provided bona fide meal periods during which they were completely relieved of their duties.

102.   Defendant's practice and policy was to instruct Plaintiff Mateer and similarly situated ISRs to only enter 40 hours in Defendant's timekeeping system absent prior authorization to exceed this amount.

103.   Plaintiff Mateer's work and the work of similarly situated ISRs did not end when the workday ended.  To the contrary, Defendant's practice, policy, and systems allowed for the performance of and consummation of sales pre-shift, during meal and rest breaks, and post-shift, as well as on weekends and holidays.

C.   *Plaintiff Branchcomb's Job Experience*

104.   From approximately May 2021 to November 2021, Plaintiff Branchcomb was a non-exempt full-time ISR paid on an hourly basis.  Plaintiff Branchcomb was paid an hourly wage and additional compensation per Defendant's Short Term Incentive Compensation Plan.

105.   Plaintiff Branchcomb's job title during this time period was "Account Executive."

106.   As with Plaintiff Mateer, Plaintiff Branchcomb was a shift-based employee who reported his work time by clocking in and clocking out of Defendant's timekeeper system.

107.   As is the case with Plaintiff Mateer, Plaintiff Branchcomb had access to his work-related computer systems, emails, and sales programs even when he was off-the-clock.

108.   When Plaintiff Branchcomb was initially trained in his job responsibilities, a part of that training included instruction in how to engage in off-shift sales—or sales that take place while the employee is off-the-clock.

109.   As with Plaintiff Mateer, Plaintiff Branchcomb's non-wage compensation structure experienced a number of changes.  Notably, Defendant altered its performance-related sales quotas to levels where the ISRs were pressured into engaging in off-shift sales to keep pace with one another.

110.    Off-shift sales were rampant. Each ISR has access to real-time reports of sales data connected to every other ISR, wherever located around the country. A number of ISRs, including Plaintiffs Mateer and Branchcomb, witnessed sales populating in these real-time reports by sales personnel whom they knew to be off-shift.  ISRs, like Plaintiff Branchcomb, could see their sales performance in relation to employees who were selling off-the-clock and knew that their job retention, promotion, and other incentives would be based in relation to other ISRs selling off-the-clock.

111.    Plaintiff Branchcomb performed significant "off-the-clock" work.  He regularly worked in excess of 40 hours in a workweek and in excess of 8 hours in a given workday and was not paid overtime per the FLSA.

112.    Plaintiff Branchcomb and other similarly situated ISRs were properly categorized as non-exempt employees, and thus were entitled to overtime pay for all hours worked over 40 in a workweek.

113.    Plaintiff Branchcomb and other similarly situated ISRs worked as non-exempt employees for at least one workweek during the relevant statute of limitations periods.

114.    Plaintiff Branchcomb and other similarly situated ISRs worked over forty hours in a workweek as a non-exempt employee during the relevant statute of limitations periods and did not receive overtime compensation for the hours worked.

115.    Plaintiff Branchcomb and other similarly situated ISRs were hired as W-2 employees, and Defendant reported their wages on an IRS Form W-2.

116.    Defendant supervised and controlled Plaintiff Branchcomb's and similarly situated ISRs' work schedule.

117.    Defendant assigned Plaintiff Branchcomb and similarly situated ISRs the tasks that Plaintiff Branchcomb and the other ISRs performed and determined the hours that Plaintiff Branchcomb and the other ISRs worked.

118.    Defendant required that Plaintiff Branchcomb and similarly situated ISRs follow Defendant's rules, policies, and directives, including Defendant's timekeeping policies.

119.    Per Defendant's practice and policy, Plaintiff Branchcomb and similarly situated ISRs were required to and did work more than 40 hours per workweek on a regular and recurring basis.

120.    Plaintiff Branchcomb and similarly situated ISRs performed pre-shift, post-shift, and off-the-clock work without pay on a regular and recurring basis.

121.    Plaintiff Branchcomb and similarly situated ISRs worked through meal periods and/or short rest breaks without compensation.

122.    Plaintiff Branchcomb and other similarly situated ISRs were not provided bona fide meal periods during which they were completely relieved of their duties.

123.    Defendant's practice and policy was to instruct Plaintiff Branchcomb and similarly situated ISRs to only enter 40 hours in Defendant's timekeeping system absent prior authorization to exceed this amount.

124.    Plaintiff Branchcomb's work and the work of similarly situated ISRs did not end when the workday ended.  To the contrary, Defendant's practice, policy, and systems allowed for the performance of and consummation of sales pre-shift, during meal and rest breaks, and post-shift, as well as on weekends and holidays.

125.    Defendant's practice and policy was to deny Plaintiffs Mateer, Branchcomb and similarly situated ISRs a mechanism to report any overtime hours incurred after they had been

worked. Although any individual off-shift sale might result in a commission payment therefore, this did not compensate Plaintiffs and the ISRs for (a) time spent working that never resulted in a sale, (b) all of the time spent performing the related work, even if it resulted in a sale, and (c) all of the off-shift work that was unrelated to commission-generating sales.

126.    Plaintiff Branchcomb is due overtime for which he has not been paid.

### DEFENDANT'S WILLFULNESS

A.    *Willfulness As To The ISR Collective*

127.    Defendant maintained a policy and practice of only paying overtime to ISR Collective members for hours that were pre-approved.

128.    In practice, this meant that Defendant offered no mechanism to the ISR Collective to report overtime for hours that were not pre-approved, even while routing customer contacts to these employees during their off-shift hours and tracking the resulting sales in real time.

129.    This policy and practice violated the FLSA rights of Plaintiffs Mateer and Branchcomb and the ISR Collective as well as Plaintiffs' rights under New York state law.

130.    Upon information and belief, Defendant knew that Plaintiffs Mateer, Branchcomb, and the ISR Collective members performed work that required payment of minimum wages and overtime compensation.  Upon information and belief, Defendant has operated under a scheme to deprive these employees of the requisite compensation by failing to compensate Plaintiffs and the Collective Classes for all hours worked.

131.    Plaintiffs and the ISR Collective members were given apps for use on their personal mobile devices, emails, and other electronic systems so that they could access work related e-mails, voicemails, and company sales systems, and be available for phone calls, electronic

messages, and other contacts from customers and other company personnel regardless of their location and regardless of their on-the-clock status.

132.     Plaintiffs Mateer, Branchcomb, and the ISR Collective members received phone calls, e-mails, and other contacts while off the clock and were regularly not compensated for the time spent receiving and responding to these communications and/or conducting other work related thereto.  Defendant's systems enabled these employees to conduct work, including but not limited to sales transactions, outside of pre-assigned shifts or else they would lose the related commission.  This off-shift work was performed without compensation for the related time.

133.     Defendant did not and does not maintain proper time records for Plaintiffs Mateer, Branchcomb, and the ISR Collective members.

134.     Defendant did not and does not maintain proper records for the beginning and end of Plaintiffs Mateer, Branchcomb, and the ISR Collective workdays.

135.     Defendant did not and does not permit Plaintiffs Mateer, Branchcomb, and the ISR Collective members to report their off-shift time on time sheets, reports, or logs for work performed outside of a pre-assigned shift. In fact, there is no mechanism to request or report off-shift overtime.

136.     Defendant required the ISRs to use a timekeeping system to clock in and clock out of their scheduled shifts.  But even before an ISR clocks in or after an ISR clocks out, Defendant's systems direct customer sales calls, emails, and web-based orders to the ISRs.  This is true even on days when an ISR does not have a pre-scheduled shift. The customer contacts keep coming regardless of the ISRs' schedule.

137.    And, while Defendant allegedly requires pre-authorization for overtime, the reality of the sales volume, as well as Defendant's sales system, made pre-authorization impracticable and/or impossible.

138.    Defendant utilizes sophisticated surveillance technology to track the performance of Plaintiff and similarly situated ISRs. When Plaintiff and similarly situated ISRs engaged in pre-shift, post-shift, meal and rest break, or off-the-clock work, Defendant was tracking those activities and was aware of said pre-shift, post-shift, meal and rest break, or off-the-clock work, including when the work occurred, and who performed it.

139.    Data relating to off-the-clock sales posted in real time, and attributed to the ISR who conducted the sale, was available to Defendant and Defendant's supervisory personnel.

140.    No electronic system prevents an ISR from selling while clocked out of Defendant's timekeeping system.

141.    Defendant accepts the benefit of the sale without paying the ISR for the off-shift overtime.

142.    Defendant set performance standards for Plaintiffs Mateer, Branchcomb, and similarly situated ISRs in the form of monthly sales quotas. Failing to meet the sales quota could result in termination and, in fact, inside sales personnel were terminated for failing to meet the sales quotas.

143.    Upon information and belief, Defendant's sales quota systems took into account off-shift sales performance.  ISRs were subject to monthly sales quotas. These sales goals were established by Defendant at its discretion. The formula used to establish the sales goal was based, at least in part, on the capacity of sales personnel to sell during their off-shift time periods.  ISRs

could not always meet this goal by selling during their assigned shifts.  But failure to meet this goal could eventually result in termination under the guise of performance deficiencies.

144.    Defendant routinely set individual ISR sales quotas so high that the sales personnel could not meet the performance standards by selling solely within their assigned work shift. Meanwhile, Defendant continued to send customer purchase requests, e-mails, and calls to Plaintiffs Mateer, Branchcomb and other similarly situated ISRs during off-shift time periods, even though they would not be compensated for the overtime.

145.    When customer contacts or sales requests were routed to inside sales personnel during off-shift time periods, Defendant was deliberately suffering and permitting the affected employees to work while denying them a mechanism to report the overtime work.

146.    The above allegations were true for Plaintiff Mateer during the time periods when he was paid on an hourly basis as well as when he was paid on an annualized basis and did not differ as his job title changed over the years.  As to Plaintiff Branchcomb, the above allegations were true during the entire period of his employment.

147.    Defendant knew and/or showed a willful disregard for the provisions of the FLSA and New York Law as evidenced by its failure to compensate Plaintiffs Mateer, Branchcomb, and similarly situated ISRs at the statutory rate of time and one-half for all hours worked in excess of forty hours per week when Defendant knew or should have known such was due.

148.    The records, if any, reflecting the number of hours actually worked and the compensation actually paid to Plaintiffs Mateer, Branchcomb, and similarly situated ISRs are in the possession and custody of Defendant.

149.    Defendant failed to properly disclose or apprise Plaintiffs Mateer, Branchcomb, and similarly situated ISRs of their rights under the FLSA and New York Law.

26

150.     Defendant's actions constitute a willful violation of the FLSA and New York Law.

151.     Written consents to join this action as to Count I, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

**B.     *Willfulness As To The Showroom Collective***

152.     Defendant maintained a policy and practice of only paying overtime for hours that were pre-approved.

153.     In practice, this meant that Defendant offered no mechanism to the Showroom Collective to report overtime for hours that were not pre-approved, even while enabling Showroom Collective personnel access to sales systems away from their work locations and while giving them a mechanism to report their off-shift work.

154.     This policy and practice violated the FLSA rights of Plaintiff Johnson and the Showroom Collective as well as Plaintiff's rights under Pennsylvania state law.

155.     When Showroom Personnel received phone calls or emails from customers while no longer clocked in and away off from the showroom premises, it was almost always the case that the Showroom Personnel could not conduct the final point of sale transaction remotely, so they would need to call into the showroom so that the final transaction could be entered using the store's own systems.  Those off-shift sales were attributed to the off-shift employee—not the employee entering the transaction.  Meaning, Defendant and its relevant personnel knew or had reason to know that its non-exempt showroom personnel were engaging in off-the-clock work without required compensation.  These personnel were not given a mechanism to request overtime compensation for this work.

156.    Through Defendant's apps, software, and other electronic systems, Plaintiff Johnson and similarly situated members of the Showroom Collective could and did perform substantial work for Defendant outside of their pre-scheduled shifts without compensation.

157.    Plaintiff Johnson worked significant unpaid overtime, overtime for which there was no mechanism to request payment after the work had been performed.

158.    Defendant maintained sophisticated technological surveillance over its employees' use of its proprietary data, apps, software, and other systems, giving Defendant knowledge, actual or constructive, as to when Showroom Personnel were conducting work in relation to their on-shift status.

159.    Defendant and/or its relevant personnel knew or should have known that members of the Showroom Collective were performing off-shift work without requisite compensation.

160.    Defendant knew and/or showed a willful disregard for the provisions of the FLSA and Pennsylvania law as evidenced by its failure to compensate Plaintiff Johnson and similarly situated Showroom Personnel at the statutory rate of time and one-half for all hours worked in excess of forty hours per week when Defendant knew or should have known such was due.

161.    The records, if any, reflecting the number of hours actually worked and the compensation actually paid to Plaintiff Johnson and similarly situated Showroom Personnel are in the possession and custody of Defendant.

162.    Defendant failed to properly disclose or apprise Plaintiff Johnson and similarly situated Showroom Personnel of their rights under the FLSA and Pennsylvania Law.

163.    Defendant's actions constitute a willful violation of the FLSA and Pennsylvania Law.

164.    Written consents to join this action as to Count I, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

<strong><u>COLLECTIVE ACTION ALLEGATIONS</u></strong>

*A.*    ***The ISR Collective***

165.    Plaintiffs Mateer and Branchcomb bring Count I of this action on their own behalf pursuant to 29 U.S.C. §216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct ("the FLSA Class" or "the FLSA Class Members").

166.    This FLSA collective, defined more fully below, consists of the following categories of employees:

*1.*    ***On-Site Inside Sales Representatives***

167.    **<u>On-site inside sales representatives</u>** include those inside sales employees who worked in Defendant's facilities and who conduct sales via phone, internet, email, and mobile device, including their personal devices.

168.    These personnel clocked in and out using a timekeeper system. This timekeeping mechanism was separate from the sales systems—meaning, the personnel were able to engage in sales or sales-related activities, like speaking with customers to provide them information or education, to develop a brand relationship, or other activities to prepare a customer for a sale, whether the activities resulted in a commission-generating sale or not.

169.    Aside from the timekeeping system, there was no mechanism for these ISRs to inform Defendant of their off-the-clock work.  For instance, there was no way to submit a timesheet or work order or other process to request compensation for the time after work was performed.

170.    Plaintiff Mateer was one such inside sales representative, having worked in Defendant's office space in Manhattan.

### 2.    *Remote Inside Sales Representatives*

171.    **Remote inside sales representatives** are those sales representatives who engaged in ISR duties, but who worked outside of Defendant's physical locations.

172.    The timekeeping and overtime policies and procedures for the Remote ISRs was the same as those who worked in Defendant's physical locations.  Meaning, although they worked off-the-clock, they were unable to report their overtime after the work was performed.

173.    Plaintiff Branchcomb was one such remote ISR who worked from home in the District of Columbia and in Dallas, Texas.

### 3.    *Seasonal Inside Sales Representatives*

174.    **Seasonal inside sales representatives** were those ISRs who worked for Defendant on a seasonal or temporary basis.

175.    The timekeeping and overtime policies and procedures for the Seasonal ISRs was the same as those for On-Site ISRs and Remote ISRs.  Meaning, although they worked off-the-clock, they were unable to report their overtime after the work was performed.

176.    When Plaintiff Mateer began his employment with Defendant, he was hired on a seasonal basis before he took on a permanent role.

### 4.    *Inside Sales Representatives During Covid-19*

177.    After around mid-March 2020, Defendant hired or re-assigned a substantial number of employees to ISR duties.

178.    More specifically, after various showroom facilities closed in Spring of 2020, the showroom retail employees were sent home. Defendant's corporate offices in New York and Texas

30

closed as well.  These were two principal areas On-Site ISRs conducted their work before the pandemic closures.

179.    While the showrooms and offices were shutdown, the demand for Defendant's products and related services significantly increased.

180.    In response, Defendant made two key operational changes. One, the On-Site ISRs, like Plaintiff. Mateer, became Remote ISRs, like Plaintiff Branchcomb. Two, Defendant re-assigned personnel to become Remote ISRs, namely personnel from Defendant's showrooms who were unable to perform their pre-pandemic duties because of the facility shutdowns. Once these personnel were converted to Remote ISRs, their work conditions and related timekeeping, sales processes, and overtime mechanisms were the same or substantially the same as those applicable to pre-pandemic On-Site or Remote ISRs.

181.    Plaintiffs will request that the Court grant conditional certification under 29 U.S.C. § 216(b), and order notice to potential opt-in plaintiffs who are or were employed by Defendant as an ISR within three years preceding the commencement of this lawsuit.

182.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly harmed Plaintiffs and the FLSA Class Members by engaging in a pattern, practice, or policy of violating the FLSA on a class wide basis.

183.    Although Defendant permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, Defendant has denied them full compensation for their hours worked over forty.

184.    The FLSA Class Members perform or have performed the same or similar work as Plaintiffs. In particular, Plaintiffs and the FLSA Class Members all worked as ISRs and were not compensated at time and one-half their regular rate for all hours worked over forty each workweek.

185.    The FLSA Class Members are not exempt from receiving overtime pay under the FLSA.  As such, the FLSA Class Members are similar to Plaintiffs in that they share substantially similar job duties, compensation plans, and the denial of overtime wages.

186.    Defendant's failure to pay overtime compensation at the rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Class Members.

187.    The experiences of Plaintiffs, with respect to their pay, are similar to the experiences of the FLSA Class Members. This is particularly true with respect to Defendant's timekeeping procedure: no ISR had a mechanism to report time spent working off-shift. This factor was unaffected by whether an ISR worked in an office or at home, whether in New York or in Texas, whether an ISR was seasonal, temporary, or permanent. The separation of timekeeping from sales systems and the denial of access to report off-shift work was a central policy that applied equally to any ISR.

188.    The experiences of Plaintiffs, with respect to their job duties, are similar to the experiences of the FLSA Class Members.

189.    The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

190.    All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during each workweek.

191.    Although the exact amount of damages may vary among the FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a formula. The claims of all the FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all the FLSA Class Members.

192.     The Plaintiffs and the FLSA Class Members held the same primary duties and were compensated in violation of the FLSA.

193.     The FLSA Class that Plaintiffs seek to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> All former and current employees who worked for Peloton Interactive, Inc. as ISRs, or those who performed substantially similar duties to ISRs, who worked more than forty hours in one or more workweeks of their employment, and who were not paid overtime for all hours worked at the statutorily required rate of one- and one-half times their regular rate of pay, at any time between January 27, 2019, and the present.

194.     Plaintiffs are unable to state at this time the exact size of the potential FLSA Class, but upon information and belief, avers that it consists of over one hundred persons.

195.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former ISRs are similarly situated with regard to their wages and claims for unpaid wages and damages.  Plaintiff is representative of those other ISRs and is acting on behalf of their interests as well as his own in bringing this action.

196.     These similarly situated ISRs are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

Plaintiff and the FLSA Class Members are similarly situated in that:

a. Plaintiff and the putative opt-in plaintiffs were employed by Defendant;

b. Defendant required Plaintiff and the putative opt-in plaintiffs to follow its company policies, practices, procedures, and directives;

c. Plaintiff and the putative opt-in plaintiffs were all classified as non-exempt and/or at times misclassified as exempt;

d. Plaintiff and the putative opt-in plaintiffs all worked in excess of 40 hours per week in one or more workweeks;

e. Defendant required, suffered or permitted Plaintiff and the putative opt-in plaintiffs to work off the clock without pay;

f. Regardless of their job title or location, Defendant did not pay Plaintiff and the putative opt-in plaintiffs for all hours worked;

g. Regardless of their job title or location, Defendant did not pay Plaintiff and the putative opt-in plaintiffs an overtime premium of one -and -one -half times their regular rate for all hours worked in excess of 40 hours in a workweek;

h. Defendant maintained common timekeeping systems and policies and procedures with respect to Plaintiff and the putative opt-in plaintiffs regardless of their job title or location;

i. Defendant failed to record all of the hours actually worked by Plaintiff and the putative opt-in plaintiffs;

j. Defendant maintained timekeeping data, time of sales data, computer records and other data showing that Plaintiff and the putative opt-in plaintiffs worked more than 40 hour per week without pay; and

k. Defendant maintained timekeeping data, time of sales data, computer records and other data showing that Plaintiff and the putative opt-in plaintiffs worked pre-shift, post-shift, and during meal periods and short rest breaks without pay.

197.    Defendant's unlawful conduct has been widespread, repeated, consistent, willful, and in bad faith.

**B.**      ***The Showroom Collective***

198.    Plaintiff Johnson brings Count I of this action on her own behalf pursuant to 29 U.S.C. §216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct ("the Showroom Class" or "the Showroom Class Members").

199.    This Showroom collective, defined more fully below, consists of the following categories of employees: Defendant's showroom sales personnel with the job titles sales associate, sales professional, sales pro, sales specialist, and/or showroom personnel with similar duties, who were non-exempt from the FLSA, and who worked more than forty hours in one or more workweeks of their employment, and who were not paid overtime for all hours worked at the statutorily required rate of one- and one-half times their regular rate of pay, during the applicable statute of limitations period.

200.    Plaintiff Johnson will request that the Court grant conditional certification under 29 U.S.C. § 216(b), as to the Showroom collective, and order notice to potential opt-in plaintiffs who are or were employed by Defendant as a Showroom Class Member within three years preceding the commencement of this First Amended Complaint.

201.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly harmed Plaintiff and the Showroom Class Members by engaging in a pattern, practice, or policy of violating the FLSA on a class wide basis.

202.    Although Defendant permitted and/or required the Showroom Class Members to work in excess of forty hours per workweek, Defendant has denied them full compensation for their hours worked over forty.

203.   The Showroom Class Members perform or have performed the same or similar work as Plaintiff Johnson. In particular, Plaintiff Johnson and the Showroom Class Members all worked as non-exempt sales associates at Defendant's showroom locations and were not compensated at time and one-half their regular rate for all hours worked over forty each workweek.

204.   The Showroom Class Members are and were compensated under the same or substantially similar compensation practices, policies, and procedures as Plaintiff Johnson, namely with respect to Defendant's uniform, centralized policy, practice, and procedure of only compensating them for pre-approved overtime while denying them a mechanism to even request consideration for hours worked off-shift without prior approval.

205.   Upon information and belief, the policy and practice set forth above is stated in Defendant's Employee Handbook, which was applicable to all Showroom Class Members nationwide.

206.   The Showroom Class Members are not exempt from receiving overtime pay under the FLSA.  As such, the Showroom Class Members are similar to Plaintiff Johnson in that they share substantially similar job duties, timekeeping and time reporting mechanisms, compensation plans, access to sales systems for off-shift sales, and the denial of overtime wages.

207.   Defendant's failure to pay overtime compensation at the rate required by the FLSA results from generally applicable policies or practices, as set forth in the Employee Handbook, and does not depend on the personal circumstances of the Showroom Class Members.

208.   The experiences of Plaintiff Johnson, with respect to her pay, are similar to the experiences of the Showroom Class Members. This is particularly true with respect to Defendant's timekeeping procedure: no Showroom Class Member had a mechanism to report time spent working off-shift. The separation of timekeeping from sales systems and the denial of access to

report off-shift work was a central policy that applied equally to any Showroom Class Member however situated.

209.    The experiences of Plaintiff Johnson, with respect to her job duties, are similar to the experiences of the Showroom Class Members.

210.    The specific job titles or precise job responsibilities of each Showroom Class Member does not prevent collective treatment.

211.    All Showroom Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during each workweek.

212.    Although the exact amount of damages may vary among the Showroom Class Members, the damages for the Showroom Class Members can be easily calculated by a formula. The claims of all the Showroom Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all the Showroom Class Members.

213.    Plaintiff Johnson and the Showroom Class Members held the same primary duties and were compensated in violation of the FLSA.

214.    The Showroom Class that Plaintiff Johnson seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> All former and current employees who worked at Peloton Interactive, Inc.'s showrooms as a sales associate, sales specialist, sales professional, sales pro, or those who performed substantially similar duties to a sales associate, sales specialist, sales professional, sales pro, who worked more than forty hours in one or more workweeks of their employment, and who were not paid overtime for all hours worked at the statutorily required rate of one- and one-half times their regular rate of pay, at any time between January 27, 2019, and the present.

215.     Plaintiff Johnson is unable to state at this time the exact size of the potential Showroom Class, but upon information and belief, avers that it consists of over one thousand persons.

216.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff Johnson, numerous current and former showroom sales personnel are similarly situated with regard to their wages and claims for unpaid wages and damages.  Plaintiff Johnson is representative of those other showroom personnel and is acting on behalf of their interests as well as her own in bringing this action.

217.     These similarly situated showroom personnel are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

Plaintiff Johnson and the FLSA Class Members are similarly situated in that:

a.  Plaintiff and the putative opt-in plaintiffs were employed by Defendant;

b.  Defendant required Plaintiff and the putative opt-in plaintiffs to follow its company policies, practices, procedures, and directives;

c.  Plaintiff and the putative opt-in plaintiffs were all classified as non-exempt and/or at times misclassified as exempt;

d.  Plaintiff and the putative opt-in plaintiffs all worked in excess of 40 hours per week in one or more workweeks;

e.  Defendant required, suffered or permitted Plaintiff and the putative opt-in plaintiffs to work off the clock without pay;

f.   Regardless of their job title or location, Defendant did not pay Plaintiff and the putative opt-in plaintiffs for all hours worked;

g.   Regardless of their job title or location, Defendant did not pay Plaintiff and the putative opt-in plaintiffs an overtime premium of one -and -one -half times their regular rate for all hours worked in excess of 40 hours in a workweek;

h.   Defendant maintained common timekeeping systems and policies and procedures with respect to Plaintiff and the putative opt-in plaintiffs regardless of their job title or location;

i.   Defendant failed to record all of the hours actually worked by Plaintiff and the putative opt-in plaintiffs;

j.   Across the Showroom Class, Defendant had no mechanism to allow any Showroom Class Member to request overtime compensation for work done after the work was performed;

k.   Defendant maintained timekeeping data, time of sales data, computer records and other data showing that Plaintiff and the putative opt-in plaintiffs worked more than 40 hour per week without pay; and

l.   Defendant maintained timekeeping data, time of sales data, computer records and other data showing that Plaintiff and the putative opt-in plaintiffs worked pre-shift, post-shift, and during meal periods and short rest breaks without pay.

218.   Defendant's unlawful conduct has been widespread, repeated, consistent, willful, and in bad faith.

## STATE LAW CLASS ALLEGATIONS

219.   **The New York Class**. Plaintiff Mateer brings Count II of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of Plaintiff and all other members of the class ("the New York Class") defined as:

> All former and current employees who worked for Peloton Interactive, Inc. as ISRs, or those who performed substantially similar duties to ISRs, and who worked more than forty hours in one or more workweeks of their employment in the state of New York, and who were not paid overtime for all hours worked at the

statutorily required rate of one- and one-half times their regular rate of pay, at any time between January 27, 2016, and the present.

220.    **The Pennsylvania Class**. Plaintiff Johnson brings Count III of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of Plaintiff and all other members of the class ("the Pennsylvania Class") defined as:

> All former and current employees who worked for Peloton Interactive, Inc. as non-exempt Showroom Sales Personnel, or those who performed substantially similar duties to non-exempt Showroom Sales Personnel, who worked more than forty hours in one or more workweeks of their employment in the state of Pennsylvania, and who were not paid overtime for all hours worked at the statutorily required rate of one- and one-half times their regular rate of pay, at any time between January 27, 2016, and the present.

221.    **The Initial Hire Notice and Wage Statement Class**. Plaintiff Mateer brings Count IV of this action pursuant to Fed. R. Civ. P. 23(a) and b(3) on behalf of himself and all other members of the class defined as:

> All of Peloton Interactive, Inc.'s current and former employees from January 27, 2016, through the present.

222.    The New York, Pennsylvania, and Initial Hire Notice and Wage Statement Classes are so numerous that joinder of all class members is impracticable.  Plaintiffs are unable to state at this time the exact size of the potential classes, but upon information and belief, aver that it consists of over one thousand persons.

223.    There are questions of law or fact common to each state class, including but not limited to the following:

   a.  Whether Defendant maintained a policy and practice of refusing to pay overtime compensation unless that compensation was to pay for pre-approved work;

   b.  whether, despite any stated policy, Defendant had a mechanism for class members to report overtime hours after they had been worked;

c.  whether Defendant unlawfully failed to pay overtime compensation to Plaintiff and other members of the New York and/or Pennsylvania Classes;

d.  whether Defendant, as a result of unlawfully failing to pay overtime compensation, violated New York Labor Law Articles 6 and 19, and/or Pennsylvania labor law, respectively, by failing to pay Plaintiffs and other members of the state class they represent at the prescribed rate of one and one-half times the employees' regular rates for all overtime hours worked;

e.  whether Defendant provided initial hire notices to its employees;

f.  whether Defendant provided accurate wage statements to its employees; and

g.  what amount of monetary relief will compensate Plaintiffs and other members of the New York and/or Pennsylvania Classes for Defendant's violation of the respective labor laws averred herein.

224.    The claims of each Plaintiff are typical of the claims of other members of the class they seek to represent.  Plaintiffs' claims arise out of the same uniform course of conduct by Defendant and are based on the same legal theories as the claims of other class members of the class they seek to represent.

225.    Plaintiffs will fairly and adequately protect the interests of the New York, Pennsylvania, and Initial Hire Notice and Wage Statement Classes.  The Plaintiffs' individual interests are not antagonistic to, but rather are in unison with, the interests of other members of the classes they seek to represent.  Plaintiffs' counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the New York, Pennsylvania, and Initial Hire Notice and Wage Statement Classes in this case.

226.    The questions of law or fact that are common to the New York, Pennsylvania, and Initial Hire Notice and Wage Statement Classes predominate over any questions affecting only individual members.  The primary questions that will determine Defendant's liability to the

respective classes, listed above, are common to each class as a whole, and predominate over any questions affecting only individual class members.

227.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Requiring New York, Pennsylvania, and Initial Hire Notice and Wage Statement Class members to pursue their claims individually would entail a host of separate suits, in various states, with concomitant duplication of costs, attorneys' fees, and demands on court resources—and yet all still require common evidence.  Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually.  Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

<u>**COUNT ONE**</u>
**(Fair Labor Standards Act Violations)**

228.    Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

229.    Defendant did not pay overtime compensation to Mateer, Branchcomb, Johnson, its ISRs, and/or Showroom Personnel for all hours worked over forty in a workweek.

230.    As a result of its unlawful failure to pay overtime compensation, Defendant failed to pay Plaintiffs Mateer, Branchcomb, Johnson, similarly situated ISRs, and/or Showroom Personnel at the prescribed rate of one and one-half times the employees' regular wage rates for all overtime hours worked, in violation of 29 U.S.C. § 207 and other provisions of the FLSA and regulations thereunder.

231.    As a result of Defendant's practices and policies, Plaintiffs and other similarly situated ISRs and Showroom Personnel have been damaged in that they have not received wages due to them pursuant to the FLSA.

232.     Plaintiffs and other similarly situated ISRs and Showroom Personnel are entitled to back overtime compensation using the default method of calculating overtime at one and one-half times their regular rate of pay for the hours they worked over 40 in a workweek.

233.     In perpetrating these unlawful practices, Defendant has willfully failed to keep accurate records for all of the time worked by Plaintiffs and the Collective Classes of ISRs and Showroom Personnel.

234.     Defendant's failure to properly compensate Plaintiffs and the Collective Classes and failure to properly record all compensable work time was willfully perpetrated.  Defendant has not acted in good faith nor with reasonable grounds to believe its actions or omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and the Collective Classes are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above.

235.     Plaintiffs and the Collective Classes are entitled to damages equal to the mandated overtime premium pay within the three years preceding the date of filing this action, plus periods of equitable tolling because Defendant acted willfully and knew or showed reckless disregard of whether its conduct was prohibited by the FLSA.

236.     Pursuant to the FLSA, successful Plaintiffs are entitled to reimbursement of the costs and attorney's fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

237.     By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated the provisions of the FLSA.

## COUNT TWO
### (Violations of New York Labor Law Articles 6 and 19)

238.     Plaintiff Mateer incorporates by reference the foregoing allegations as if fully rewritten herein.

239.     New York Labor Law Article 19 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 *et seq.*, the 'Fair Labor Standards Act of 1938,' as amended."  See Article 19 § 142-2.2

240.     Defendant failed to pay overtime compensation to Plaintiff Mateer and other members of the New York Class "in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 *et seq.*, the 'Fair Labor Standards Act of 1938,' as amended."  On the contrary, Defendant's failure to pay overtime compensation to Plaintiff and other New York Class members violated section 7 of the FLSA, 29 U.S.C. § 207, and therefore violated New York Labor Law Article 19.

241.     As a result of Defendant's violation of New York Labor Law Article 19, Plaintiff and other members of the New York Class have been damaged in that they have not received wages due to them pursuant to New York Labor Law Article 19.

242.     Plaintiff and other members of the New York Class are entitled to back overtime compensation using the default method of calculating overtime at one and one-half times their regular rate of pay for the hours they worked over 40 in a workweek, pursuant to New York Labor Law Articles 6 and 19.

243.     Defendant cannot prove a good faith basis to believe that its underpayment of wages was in compliance with New York Law. N.Y. Lab. Law § 198.

244.    Plaintiff and other members of the New York Class are entitled to their unpaid wages "and an additional equal amount as liquidated damages," per Articles 6 and 19 of the New York Labor Law.

### COUNT THREE
**(Violations of Pennsylvania's Wage Payment and Collection Law and the Pennsylvania Minimum Wage Act)**

245.    Plaintiff Johnson incorporates by reference the foregoing allegations as if fully rewritten herein.

246.    Defendant Peloton had a contractual obligation with Plaintiff Johnson with respect to the payment of overtime wages.  These contractual obligations consist of a standard "Letter Agreement" offered to her, which she accepted, and the number of policy documents and other agreements included by reference therein.

247.    In Defendant's standard offer Letter Agreement, Defendant obligated itself to compensate Plaintiff for all hours worked at certain compensation levels per compensation policies referenced in the compensation agreement.

248.    As alleged in greater detail above, Plaintiff Johnson worked per the terms of the Letter Agreement, but has not been compensated in accordance with the terms thereof.

249.    The same or substantially similar type of Letter Agreement Defendant offered to Plaintiff Johnson was offered to and accepted by the members of putative Pennsylvania Class.

250.    Per the terms of these Letter Agreements, Plaintiff Johnson and the absent class members earned compensation to which they are entitled but Defendant has not paid.

251.    In failing to pay contractually and legally obligated wages, Defendant has failed to pay the requisite minimum wage with respect to Plaintiff Johnson and the absent members of the Pennsylvania Class.

252.    Defendant's actions averred above violated the PWPCL, 43 P.S. § 260.1 *et seq.*, and the PMWA, 43 P.S. § 333.101, *et seq.*

253.    Included within every Letter Agreement between Defendant and each member of the Pennsylvania Class, including Plaintiff Johnson, was Defendant's agreement to pay overtime compensation under the terms of the FLSA.  As alleged above, Defendant has failed to pay FLSA overtime to Plaintiff Johnson and the absent class members.

254.    As a result of Defendant's violations of the PWPCL and the PMWA, Plaintiff Johnson and other members of the Pennsylvania Class have been damaged in that they have not received wages due to them pursuant to applicable law.

255.    Plaintiff Johnson and other members of the Pennsylvania Class are entitled to back overtime compensation using the default method of calculating overtime at one and one-half times their regular rate of pay for the hours they worked over 40 in a workweek.

256.    Plaintiff and other members of the Pennsylvania Class are entitled to their attorney fees, unpaid wages and, as liquidated damages, "an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater."

## COUNT FOUR
### (Violations of New York Labor Law Art. 6, § 195)

257.    Plaintiff Mateer incorporates by reference the foregoing allegations as if fully rewritten herein.

258.    Defendant failed to furnish Plaintiff Mateer and the putative Initial Hire Notice and Wage Statement Class with (a) initial hiring notices required by law and (b) complete and accurate wage statements.

259.   **Initial Hire Notices**. At the time Defendant hired Plaintiff Mateer, Defendant failed to provide written initial hire notices and failed to provide the same within ten days thereafter.  The same is true of the absent class members.

260.   More specifically, Defendant failed to furnish Plaintiff Mateer and the absent class members in writing, in English, and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article;  the name of the employer;  any "doing business as" names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer.

261.   In fact, Defendant unilaterally altered the rate of pay and/or the basis for the rate of pay for Plaintiff Mateer without notifying him of these changes as required by law.

262.   For non-exempt employees or for employees who were non-exempt for periods of their employment, Defendant failed to provide them with notices containing their overtime rate.

263.   Although Defendant was required to obtain a signed and dated written acknowledgement of the initial hire notices averred above—in English and in the primary language of the employee, and containing a written language affirmation—Defendant failed to do so with respect to Plaintiff Mateer and the absent class members.

264.   **Wage Statements**. Defendant failed to furnish to Plaintiff Mateer and the absent class members with a statement accompanying every payment of wages, listing the following:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address

and phone number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages.

265.    For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, Defendant's wage statements failed to include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked.

266.    More specifically, although Defendant did provide paystubs to employees, those paystubs failed to include all of the required wage statement information above and, even when some of that information was provided, it was inaccurate or incomplete.  For instance, Defendant's wage statements failed to contain the basis for the rate of pay; the rate of pay itself; the number of regular hours worked; and the number of overtime hours worked.

267.    For commission-based employees, the wage statements failed to identify the pay period attributable to the commission payments.  Although Defendant's wage statements identified the pay periods for which base wages were earned, they failed to identify the periods in which commission wages were earned.  Moreover, the line item on the wage statements that reported commissions was commingled with other compensation earned by the employee from Defendant's Short Term Incentive Compensation plan, including bonuses and other forms of non-commission payments.

268.    Additionally, the wage statements included within the commission line item credits from prior pay periods for sales that were for whatever reason not properly paid in an earlier period. When credits were paid, there was no designation on the wage statement as to when the credit was

earned or if in fact a credit had been applied to any particular wage statement. Related to credits is the problem of debits: Defendant would debit a commission payment in a current period for returns, refunds, or order cancellations for an order sold in a prior period. As with credits, the wage statements failed to report whether a deduction was made, the amount of the deduction, and/or the pay period attributable to the deduction. The commingling of current pay period commissions with prior period commission credit amounts, prior period commission deduction amounts, and other forms of incentive compensation, in this manner violates the wage statement reporting requirements. And the wage statements were further deficient in failing to identify the existence of and the pay periods attributable to any credits, deductions, incentive compensation, and even commissions in the current period.

269.    In sum, there was no way to know when a genuine commission was earned or deducted and how much genuine commission was earned or deducted in a current pay period simply by looking at either a single wage statement or a series of them.

270.    As such, commission-based employees had no way to accurately track whether Defendant was paying them appropriately—especially since Defendant failed to provide the requisite compensation disclosures in the required initial hire notices.

271.    These statutory obligations are implied contractual obligations embedded into Defendant's employment contracts with each employee, implied by fact and law. Defendant breached these obligations, injuring Plaintiff Mateer and the absent class members by denying them their right to accurate information, even as it changed their pay structures and compensation arrangements in complicated and confusing ways. In the case of Plaintiff Mateer, Defendant's failure to provide accurate initial hire notices and accurate wage statements denied him his statutory right to receive true and accurate information about the nature of his employment and the

related compensation policies. Moreover, the breach of the obligations injured Plaintiff by denying him the right to know the conditions of his compensation and resulted in the underpayment of wages averred above.

272. Upon information and belief, Defendant's decisions pertaining to the wage statements and the initial hire notices were made by personnel in New York and affect all employees as defined in § 195 of Article 6 of the New York Labor Law.

273. For failing to provide initial hire notices, Defendant is liable to Plaintiff Mateer and each member of the Initial Hire Notice and Wage Statement Class in the amount of $5,000.00 (five-thousand dollars) per employee.

274. For failing to provide legally required wage statements, Defendant is liable to Plaintiff Mateer and each member of the Initial Hire Notice and Wage Statement Class in the amount of $5,000.00 (five-thousand dollars) per employee.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, and all those similarly situated, collectively pray that this Honorable Court:

A. Issue an order permitting this litigation to proceed as a collective action, and certifying the New York, Pennsylvania, and Initial Hire Notice and Wage Statement Classes pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

B. Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all class members that this litigation is pending and that they have the right to "opt in" to this litigation;

C. Award Plaintiffs and the classes they represent actual damages for unpaid wages, overtime compensation, and statutory damages;

D. Award Plaintiffs and the classes they represent liquidated damages in an amount

equal to the unpaid overtime compensation found due to Plaintiffs and the classes;

E.      Award Plaintiffs and the classes they represent pre- and post-judgment interest at the statutory rates;

F.      Award Plaintiffs and the classes they represent attorneys' fees, costs, and disbursements; and

G.      Award Plaintiffs and the classes they represent further and additional relief as this Court deems just and proper.

Date: April 19, 2022                    Respectfully submitted,

                                        By: /s/ *Jason R. Bristol*
                                        Jason R. Bristol (OH #0072989) (*pro hac vice*)
                                        jbristol@crklaw.com
                                        COHEN ROSENTHAL & KRAMER LLP
                                        3208 Clinton Avenue
                                        Cleveland, Ohio 44113
                                        (216) 815-9500 (Tel. and Fax)

                                        /s/ *J.R. Howell*
                                        J.R. Howell (CA #268086) (*pro hac vice*)
                                        jrhowell@jrhlegalstrategies.com
                                        LAW OFFICE OF J.R. HOWELL
                                        1223 Wilshire Boulevard
                                        P.O. Box 543
                                        Santa Monica, CA 90403
                                        Phone: (202) 650-8867

                                        *Attorneys for Plaintiffs and the Proposed Classes*


## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all eligible claims and issues.

                                        /s/ *Jason R. Bristol*
                                        *One of the Attorneys for Plaintiffs and the Proposed Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All parties not registered with the ECF system will be served by regular U.S. mail. Parties may access this filing through the Court's system.

<u>/s/ Jason R. Bristol</u>
Jason R. Bristol (*Pro Hac Vice*)
One of the Attorneys for Plaintiff and the Proposed Classes