UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOSEPH D. MATEER, CHRISTOPHER BRANCHCOMB, and KATHARINE JOHNSON, *On behalf of themselves and all others similarly situated,* | ) ) ) ) ) ) | CASE NO. 1:22-cv-00740 JUDGE LORNA G. SCHOFIELD MAGISTRATE JUDGE GABRIEL W. GORENSTEIN |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| PELOTON INTERACTIVE, INC. | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF SETTLEMENT
CLASSES, PRELIMINARY APPROVAL OF SETTLEMENT, APPOINTMENT OF
PLAINTIFFS' COUNSEL AS CLASS COUNSEL, APPOINTMENT OF NAMED
PLAINTIFFS AS CLASS REPRESENTATIVES, APPROVAL OF THE PROPOSED
NOTICES OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE**

## I.    __INTRODUCTION__

On January 28, 2022, Plaintiff Joseph Mateer filed this collective and class action alleging that Defendant Peloton Interactive, Inc. ("Defendant" or "Peloton") failed to pay certain of its employees overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law—allegations which Peloton has and continues to strenuously deny. In April of 2022, Plaintiff Mateer amended the Complaint to add two additional Named Plaintiffs, Katharine Johnson from the Commonwealth of Pennsylvania, and Christopher Branchcomb, who was residing in the State of Texas at the time of filing. The Amended Complaint alleged additional wage and hour class claims under Pennsylvania state law by Plaintiff Johnson, as well as additional individual and class claims under New York's Wage Theft Prevention Act by Plaintiff Mateer. The Complaint was amended once more to clarify Plaintiff Johnson's legal theory on July 31, 2022.  Peloton has and continues to dispute these claims too.

The Parties began discussing the possibilities of settlement and mediation in August of 2022.  The Parties jointly planned mediation before a private mediator experienced in the legal matters at issue, which took place on December 8, 2022.  Settlement talks continued for several months thereafter.

Subject to Court approval, the Parties have agreed to settle this action and have entered into a Settlement Agreement, which provides for a maximum payment of $2,500,000.00. The settlement resolves Plaintiffs' claims on a class-wide basis and, as discussed herein, Plaintiffs respectfully submit that the settlement satisfies all the criteria for preliminary approval. To effectuate the settlement, Plaintiffs request that the Court: (1) certify the settlement classes; (2) grant preliminary approval of the Class Settlement Agreement and Release[1] (attached as Exhibit

---

[1] Capitalized terms not defined herein have the meanings ascribed in the Class Settlement Agreement and Release.

A to the Declaration of Jason R. Bristol ("Bristol Decl.")); (3) approve the Notices of Proposed Settlement and Right to Opt Out (attached as Exhibits B and C to the Bristol Decl.)[2]; (4) appoint Named Plaintiffs Joseph Mateer, Katharine Johnson, and Christopher Branchcomb as settlement class representatives; and (5) appoint the attorneys at Cohen Rosenthal & Kramer LLP and the Law Office of J.R. Howell as settlement class counsel.

## II.    STATEMENT OF FACTS

Peloton makes and distributes fitness equipment and interactive fitness classes. Its products, services, memberships, and/or subscriptions were sold by employees who worked out of its offices in New York or Texas, who work remotely, as well as sales personnel who worked from showrooms in various locations across the country. These employees were generally categorized as inside sales representatives ("ISRs") or Showroom Sales Personnel. All these employees worked in pre-assigned shifts and were paid a combination of wages and commissions. The operative Complaint alleges Defendant failed to pay the employees for all overtime hours worked and failed to adequately compensate them for those overtime hours that were actually compensated. Defendant vigorously denies these allegations, raising numerous defenses.

The Court conditionally certified the FLSA collective action by Order dated July 13, 2022. [Dkt. No. 61]. Notice was issued to more than 1,300 ISRs and Showroom Sales Personnel nationwide. The opt-in period concluded on September 26, 2022, with 166 individuals filing valid consent forms to join the FLSA action.

---

[2] The Parties are proposing two notices. One notice is directed to the FLSA Collective Members and the Rule 23 New York State and Pennsylvania State Settlement Classes, all of whose wage and hour claims are interrelated. A second notice specific to the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class is also proposed. The Parties believed a separate notice to this class is appropriate because not every member of the latter class possessed a wage and hour claim for unpaid overtime of the type asserted by the FLSA Collective and the other Rule 23 State Settlement classes. And not every member of the FLSA Collective and the other Rule 23 State Settlement classes possessed claims under the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class. The Parties jointly propose sending these two separate notices to avoid confusion to the class members and to adequately apprise them of their respective rights.

The class claims for related unpaid overtime under New York and Pennsylvania state law are brought pursuant to Rule 23 of the Federal Rules of Civil Procedure for the subset of ISRs and Showroom Sales Personnel in those respective jurisdictions.  Additionally, Plaintiff Mateer brought a claim under the New York Wage Theft Prevention Act that alleged Defendant failed to provide initial hire notices and wage statements containing certain information.  Defendant estimates that this class includes 1,824 people. (Bristol Decl. ¶ 55). The litigation was resolved before Plaintiffs moved to certify the Rule 23 classes.

While the FLSA Collective is nationwide in scope, the Rule 23 classes are limited to their respective states.  Not every member of the Rule 23 New York and Pennsylvania State Settlement Classes have opted into the FLSA Collective.  The individuals who comprise the Rule 23 Initial Hire Notice and Wage Statement Class were employed solely in the state of New York and are not restricted to employees who work as ISRs or as Showroom Sales Personnel.

On December 8, 2022, the Parties mediated with the matter with Susan Eisenberg, a private mediator well-versed in the wage and hour and class action matters at issue.  Her resume is attached to the declaration of Jason R. Bristol, as Exhibit D.  By the time of the mediation, the Parties had conducted extensive discovery, the matter was heavily litigated (including briefing of early dispositive motions), and the parties understood the strengths and weaknesses of the case. Discovery materials included thousands of pages of documents produced over several months and included detailed compensation data for individuals who consented to join the FLSA action.  The Plaintiffs conducted interviews and surveys of FLSA opt-ins, which included members of the putative New York and Pennsylvania state law classes. Initial consultations with the mediator and informal discussions among the Parties occurred in the days leading up to the mediation on December 8, 2022, which was followed by several months of ongoing negotiations regarding

specific settlement terms and conditions. The settlement that Plaintiffs now present for the Court's consideration is the culmination of several months of arms-length and hard-fought negotiation. The terms of the settlement are set forth below.

### III.    SUMMARY OF THE SETTLEMENT

#### A.    The Settlement Classes

The Class Settlement Agreement and Release defines four settlement classes (collectively, the "Settlement Classes"). The Settlement Classes include (1) all ISRs or Showroom Sales Personnel who filed valid consent forms to opt-in to the FLSA collective action (the "FLSA Collective"); (2) all former and current employees who worked for Peloton as ISRs, and who allegedly worked more than forty hours in one or more workweeks of their employment in the state of New York, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2016, and July 7, 2023, (the "Rule 23 New York State Settlement Class"); (3) all former and current employees who worked for Peloton as non-exempt Showroom Sales Personnel, who allegedly worked more than forty hours in one or more workweeks of their employment in the state of Pennsylvania, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2019, and July 7, 2023, (the "Rule 23 Pennsylvania State Settlement Class"); and (4) all current and former employees who worked for Peloton in the state of New York from January 27, 2016 through December 31, 2020, excluding those current and former employees who have released claims against Peloton under the NYLL (the "Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class"). Bristol Decl., Ex. A ¶¶ 1.9-1.11; 1.30-1.32. There are 166 members of the FLSA Collective; approximately 26 members of the Rule 23 New York State

Settlement Class; approximately 44 members of the Rule 23 Pennsylvania State Settlement Class; and approximately 1,824 members of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.  Bristol Decl. ¶ 55.[3]

### B.  The Maximum Settlement Payment

The settlement provides for a gross settlement amount of $2,500,000.00, which is the maximum amount that Peloton is required to pay under the settlement. Bristol Decl., Ex. A at ¶ 1.13. All required payments will be made from this amount, including all payments to members of the settlement classes, attorneys' fees and litigation costs, the full cost of settlement administration, class representative incentive awards, and the parties' respective payroll and withholding taxes.  *Id*.  The settlement will be managed by an experienced, third-party settlement administrator, Simpluris, Inc. of Costa Mesa, California.  Bristol Decl. ¶ 52.  Simpluris's estimate for the cost of settlement administration is attached.  Bristol Decl., Ex. E.

### C.  The Releases

The releases pertaining to the FLSA Opt-ins and Settling Class Members (as those terms are defined in the Class Settlement Agreement and Release) are detailed in § 2.3 of the Settlement Agreement. The terms are customary in nature, commensurate with releases incorporated in other hybrid class and collective action settlement agreements and are fair and reasonable.  Bristol Decl. ¶¶ 49-50.  The terms are also similar, if not identical to, release terms previously approved by this Court. *Id*.  *See e.g. McGreevy et al. v. Life Alert Emergency Response Inc.*, No. 1:14-CV-07457 (S.D.N.Y. Mar. 16, 2016); *In Re Delcath Systems, Inc. Securities Litigation*, No. 1:13-CV-03116

---

[3] The class numbers contained herein are approximate and will be confirmed during the Settlement Procedure. As stated in the Declaration of Jason R. Bristol, the Class Settlement Agreement and Release states that the Settlement Administrator will be responsible for calculating individual settlement amounts and mailing Settlement Payments to Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members, and therefore the exact figures have not yet been calculated.  Plaintiffs will either supplement this submission or provide exact figures prior to final approval based on the Court's preference.  Bristol Decl., ¶56, and Ex. G and H.

(S.D.N.Y. Apr. 6, 2016); *Childers et al. v. The New York Presbyterian Hospital*, No. 1:13-CV-05414 (S.D.N.Y. Oct. 21, 2016); . In addition to the releases contained in § 2.3, the Named Plaintiffs have also agreed to a General Release of Claims. Bristol Decl. ¶ 50.

### D. Attorneys' Fees and Litigation Costs

Plaintiffs' counsel will seek no more than 33.33% of the gross settlement amount as attorneys' fees, plus an additional amount for actual litigation costs. Bristol Decl., Ex. A at ¶ 3.3(a)(i). These two amounts must be approved by the Court and Plaintiffs will file a separate motion for approval of fees and costs along with Plaintiffs' motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h) & 54(d)(2). The Settlement Agreement is not conditioned on the award of attorneys' fees and costs. The Court need not decide the attorneys' fees and costs issue now and can instead take the issue up as part of Plaintiffs' motion for final approval (which will be filed prior to the Final Approval Hearing to be scheduled by the Court).

### E. Incentive Awards

In addition to their Individual Settlement Amount under the allocation formula, the settlement provides for Incentive Awards to the class representatives in recognition of the services they rendered on behalf of the class not to exceed $25,000 each for Plaintiffs Mateer and Johnson and $10,000 for Plaintiff Branchcomb. *Id*. at ¶ 3.3(b)(i). Such awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting in the prosecution of the litigation. *See Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872 (7th Cir. 2012) (discussing the public policy reasons for incentive/service awards to class representatives).

### F. Net Settlement Fund Allocation

The Net Settlement Fund (all Settlement Funds remaining after deductions for the payment of Court-approved Settlement Administration Costs, Fees Award, Costs, and Incentive Awards)

will be computed from the Net Settlement Fund as follows:

(a) First, the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class, as defined above, will be allocated an amount not to exceed $200,000.00 from the Net Settlement Fund, to be divided equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

(b) Second, fifteen percent (15%) of the remaining Net Settlement Fund, will be divided on a *pro rata* basis across the Named Plaintiffs, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members based on their number of weeks worked and average overtime rate during the relevant time periods.

(c) Third, the remaining funds in the Net Settlement Fund will be divided on a *pro rata* basis across the Named Plaintiffs and FLSA Opt-Ins who worked in a qualifying position during the relevant periods based on their total number of weeks worked and overtime rates of pay, based on Peloton's records.

(d) Fourth, because of differences in the volume of alleged off-shift work, greater commission payments, and increased likelihood of success on the merits, FLSA ISR Collective members allocation under section (c) shall be multiplied by a factor of three.

(e) The calculations in (b) – (d) will result in each Named Plaintiffs, FLSA Opt-Ins, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members Individual Settlement Amounts.

(f) The Parties note that 11 FLSA Opt-Ins are also Class Members. For purposes of Net Settlement Fund allocation, individuals who are a member of the Rule 23 New York State Settlement Class or the Rule 23 Pennsylvania State Settlement Class will not have any workweeks double counted. Rather, any workweeks during which such individuals met the definition of a State Settlement Class or FLSA Collective shall be counted once both for the purpose of calculating the Gross Workweek Amount and the individual's Individual Settlement Amount.

(g) Defendant's records of weeks worked for each Named Plaintiff, FLSA Opt-In, Rule 23 New York State Settlement Class Member, and Rule 23 Pennsylvania State Settlement Class Member shall be dispositive.

(h) The Settlement Administrator will calculate the Individual Settlement Amounts.

Bristol Decl., Ex. A at ¶ 3.4.

No funds will revert to Defendant and every participating class member will receive remuneration from the Net Settlement Fund.  Any unclaimed funds from the Net Settlement Fund shall be donated *cy pres* to the New York City Legal Aid Society.

These allocations are based upon a thorough review of the class size, average overtime rates, number of weeks worked, the estimated damages for each class as well as the risk of loss, considering overall principals of fairness to the absent class members and the members of the FLSA Collective. The estimated damages for each class are based upon actual payroll and time records, the maximum limitations period for each class, the proper overtime rate for each class member, and the relative strength and weaknesses of Peloton's substantive and procedural defenses to each class, with noted variations with respect to the strengths of certain potentially dispositive defenses against Showroom Sales Personnel as opposed to those asserted against the ISRs.

**G.    The Settlement Payments**

    **1.    Payments to the Rule 23 New York Initial Hire Notice and Wage Settlement Class.**

Members of the Rule 23 Initial Hire Notice and Wage Statement Settlement Class who do not return to the settlement administrator a timely and valid form to opt-out of the settlement will be entitled to an equal share of the $200,000 allocated to this class from the Net Settlement Fund.

    **2.    Payments to the FLSA Collective and Rule 23 New York and Pennsylvania State Settlement Classes.**

Members of the FLSA Collective, and the Rule 23 New York and Pennsylvania State Settlement Classes who do not return to the settlement administrator a timely and valid form to opt-out of the settlement will be entitled to a *pro rata* share of the net settlement fund allocated to their respective classes—fifteen percent (15%) to the Rule 23 New York and Pennsylvania State

9

Settlement Classes and the balance to the FLSA Collective. This *pro rata s*hare will be determined based upon the total number of weeks worked during the relevant period in which a member of the settlement classes worked as multiplied by their average overtime rate. *Pro rata* allocations to members of the FLSA Collective who worked in a position classified as "inside sales" (defined in the Class Settlement Agreement and Release in ¶ 1.10) will be multiplied by a factor of three to account for a commensurate difference in their average overtime rate as compared to the other collective members, and other factors discussed below.

Based upon the class member compensation data produced by Peloton and analysis by Plaintiffs' experts,[4] it was apparent that those class members who worked in positions classified as Inside Sales Representatives had "regular rates" that, on average, were approximately three times greater than those class members who worked as Showroom Sales Personnel at showroom locations. Additionally, it was apparent that individuals who worked as Inside Sales Representatives either worked more off-the-clock hours without compensation or had access to systems that facilitated off-the-clock work more readily than their counterparts who worked in the showrooms. Lastly, it was counsel's assessment that the likelihood of success on the merits for individuals who worked as Showroom Sales Personnel was substantially less than that for individuals who worked as Inside Sales Representatives, owing to factors related to Peloton's available defenses, class representative challenges, statute of limitations issues, and procedural/venue questions. As a result, the parties agreed that increasing the *pro rata* share of Inside Sales Representatives within the FLSA collective by a factor of 3 (using a 3X multiplier) was a fair and reasonable mechanism to address apparent disparities among these two groups of

---

[4] The CVs of Plaintiff's Experts are attached. Bristol Decl., Ex. F.

FLSA Collective members in terms of compensation, alleged off-the-clock hours worked, and likelihood of success on the merits.

## H. The Notices

The notices of preliminary approval, a summary of the terms of the settlement, along with a link to a website containing the Settlement Agreement, will be sent to members of the settlement classes by the Settlement Administrator. Bristol Decl. ¶ 52. The settlement provides for a single re-mailing, utilizing available databases, for notices returned as undeliverable, and the posting of the notice and Settlement Agreement on a website created and maintained by the Settlement Administrator so that the Notices and Settlement Agreement can easily be reviewed by all members of the settlement classes. *Id*. The settlement administrator will make reasonable efforts to locate the correct mailing address before re-mailing undeliverable notices. *Id*.

Members of the Rule 23 New York State Settlement Class, Rule 23 Pennsylvania State Settlement Class, Rule 23 Initial Hire Notice and Wage Statement Settlement Class will be provided an opportunity to opt-out of the settlement; all settlement class members can file objections to the settlement and appear at the final approval hearing, which will be set by the Court. *Id*. at ¶ 52.

Plaintiffs submit that the settlement terms are fair and reasonable under the FLSA, satisfy all of the requirements for preliminary approval, and therefore should be approved by the Court on a preliminary basis, as set forth below.

## IV.    LAW AND ARGUMENT

### A.    The Court Should Certify the Settlement Classes and Grant Preliminary Approval.

The United States Supreme Court has confirmed the legitimacy of class certification for settlement purposes, explaining that "the 'settlement only' class has become a stock device" and

"all Federal Circuits recognize [its] utility . . . ." *Amchem Prods., Inc. v. Wi*ndsor, 521 U.S. 591, 618 (1997). Before granting such certification, the district court must find that the proposed class satisfies all of the requirements of Rule 23(a) and that the action is sustainable under rule 23(b). *Id*. at 620-21. Here, Rule 23(a) and (b) requirements have been satisfied for settlement purposes.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Thus, the parties request that the Court certify the FLSA Collectives, the Rule 23 New York State Settlement Class, the Rule 23 Pennsylvania State Settlement Class, and the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

### 1.    Rule 23(a)'s Requirements Are Satisfied.

Rule 23(a) establishes four requirements for certifying class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. For settlement purposes, these requirements are met.

First, the numerosity requirement is satisfied. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." In this context, "[i]mpracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Rather, impracticability of joinder has been construed to mean "inconvenient." *See In re Independent Energy Holdings PLC Securities Litigation*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers. *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968). "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members. " *Robidoux*, 987 F.2d at

936; *Marcera v. Chinlund*, 91 F.R.D. 579, 583 (W.D.N.Y. 1981) (analyzing statewide distribution for impracticability purposes).

Certifying each of the Settlement Classes now will eliminate complications, confusion to class members, and inefficiencies for the Court and the parties surrounding dissemination of multiple notices at different times. *See Shahriar v. Smith Wollensky Rest. Grp., Inc*., 659 F.3d 234, 248 (2d Cir. 2011) ("an entirely different and potentially worse problem of confusion would arise, with uncoordinated notices from separate courts peppering the employees."); *Saddle Rock Partners Ltd. v. Hiatt*, No. 96 Civ. 9474, 2000 WL 1182793, at *2 (S.D.N.Y. Aug. 21, 2000) (examining factors that would "make litigation needlessly complicated and inefficient.").

 The FLSA Collective consists of 166 current and former employees who worked in various locations nationwide (17 ISRs and 149 Showroom Personnel); the Rule 23 New York State Settlement Class consists of approximately 26 current and former employees; the Pennsylvania State Settlement Class consists of approximately 44 current and former employees; and the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class consists of approximately 1,824 individuals.  The FLSA Collective overlaps both the Rule 23 New York and Pennsylvania State Settlement Classes. Additionally, the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class overlaps the Rule 23 New York State Settlement Class.

Typically, when the class size exceeds 40 members, numerosity has been met. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The Rule 23 New York State Settlement Class Members were employed in locations dispersed across the state of New York, some of whom now live in locations out of state.  These class members' claims are mixed with class members in Pennsylvania and FLSA Collective members across the country.  Joinder of these actions would be inconvenient and impracticable.  Certifying these classes for settlement purposes

is convenient both to the courts and to the Parties.  For settlement purposes, this requirement of Rule 23(a) is satisfied.

Second, the commonality factor examines whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This factor requires that the class claims depend upon a "common contention" capable of class-wide resolution. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). A plaintiff must pose a question that "will produce a common answer." *Id*. at 2551-52.

Here, the settlement classes allege discernable, written company-wide policies that injured the putative classes: "claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." *Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 127 & n.90 (S.D.N.Y. 2011) (collecting cases); *see, e.g., Youngblood v. Family Dollar Stores, Inc*., No. 09 Civ. 3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011).

The conditional certification of an FLSA collective action militates in favor of certifying the state law class actions based on similar facts. "Where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Garcia v. Pancho Villa's of Huntington Village, Inc*., 281 F.R.D. 100, 104-5 (E.D.N.Y. 2011) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006)); *see Damassia v. Duane Reade, Inc*., 250 F.R.D. 152, 163 (S.D.N.Y. 2008) (explaining that Courts in the Second Circuit routinely certify class actions in FLSA matters so that New York State and federal wage and hour claims are considered together).

Third, typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is established

where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304-05 (S.D.N.Y. 2010).

The requirements of commonality and typicality "tend to merge into one another, so that similar considerations" are analyzed for each requirement. *Marisol A. v. Giulianai*, 126 F. 3d 372, 376 (2d Cir. 1997). The "crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). Typicality is present when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

In a wage and hour case, the typicality requirement is satisfied where the named plaintiff and proposed class members "were subject to the same general employment scheme," and their claims are based on "the same course of events and legal theory." *Garcia*, 281 F.R.D. at 105.

Here, the three named plaintiffs and all settlement class members worked for Peloton under identical company policies and handbooks with respect to relevant time and attendance policies, overtime payment policies, and initial hire notice and wage statement practices and policies. Second Amended Complaint, ¶ 44. Thus, in the context of the certification of a settlement class, the named plaintiffs' claims are typical of the claims of the classes.

Finally, "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: (1) whether the claims of the proposed class representatives conflict with those of the class and (2) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331, 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014). Here, the interests of the class representatives and the classes are aligned because both seek to prove their employer, Peloton, underpaid their wages and failed to provide information required by New York's Wage Theft Protection Act. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) (where plaintiffs and class members share the common goal of maximizing recovery, there was "no conflict of interest between the class representatives and other class members") (citing *Drexel*, 960 F.2d at 291). In addition, Plaintiffs' counsel have extensive experience litigating and settling other complex cases, wage and hour cases, and class actions, including numerous unpaid overtime class and collective actions. Bristol Decl. at ¶¶ 15-17; Howell Decl. at ¶¶ 6, 7.

Thus, for settlement purposes, all four requirements of Rule 23(a) are met.

### 2. Rule 23(b)'s Requirements Are Satisfied.

An action is sustainable under Rule 23(b) if any one of its three prongs is satisfied. Here, certification for settlement purposes is appropriate under Rule 23(b)(3), which requires that (1) common questions of law or fact predominate over individual questions and (2) a class action is a superior method to adjudicate the controversy fairly and efficiently. Fed. R. Civ. P. 23(b)(3).

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This requirement is met

where each class member is alleged to have suffered the same kind of harm under the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages. *In re Marsh & McLennan Cos. v. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *11 (S.D.N.Y. Dec. 23, 2009); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006) ("In determining whether common questions predominate, a court's inquiry is directed toward whether the issue of liability is common to the members of the class." (citation omitted)). Here, because Plaintiffs allege a common course of conduct by Defendant, the predominance requirement is satisfied for settlement purposes. *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (predominance satisfied by a showing that the common questions were "susceptible to generalized class-wide proof."); *Massoud v. 1285 Bakery Inc.*, No. 15-cv-7414, 2017 WL 448955, at *7 (S.D.N.Y. Jan. 26, 2017) (("The issues to be litigated – whether proposed class members: [] were paid overtime wages…and [] were given adequate wage statements and notices – are about the most perfect questions for class treatment.").

Rule 23(b) also requires a showing that the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by [the] Defendant." *Whitehorn v. Wolfgang's Steakhouse, Inc*., 275 F.R.D. 193, 200 (S.D.N.Y. 2011). Further, "[c]ourts in this Circuit [] have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class action, along with FLSA collective action, is a superior method." *Trinidad v. Breakaway Courier Systems, Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) (collecting cases).

Here, the settlement class members each worked under the same policies, rendering the litigation of the same issues redundant, inefficient, and inferior to a hybrid FLSA collective and Rule 23 class action. Second, many potential class members are currently employed by Peloton or were employed by Peloton during the FLSA opt-in period. Additionally, this forum is desirable, since Peloton operates a large office in this judicial district and many settlement class members reside in the state of New York. Last, "manageability" need not be considered in determining whether to certify a class for settlement purposes. *Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . [since] there [would] be no trial.") (internal citations omitted).

For these reasons, the proposed classes should be certified for settlement purposes.

### 3.    The FLSA Collectives Are Appropriate for Settlement.

On July 13, 2022, the Court granted conditional certification of the FLSA claim. Order dated July 13, 2022 [Dkt. No. 61]. Thus, the Court has already determined that the action is appropriate for conditional certification and, accordingly, is also appropriate for settlement certification purposes.

In their motion for final approval, Plaintiffs will seek final approval of the settlement of the FLSA claims separately from the Rule 23 claims. FLSA claims are brought as a "collective action," in which employees must affirmatively "opt in" to the litigation, unlike the procedure under Rule 23. *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [state law]"). Because under the FLSA "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not

implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.") Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement.

When Plaintiffs file their Motion for Final Approval, they will seek approval of the FLSA settlement.

### B.    The Court Should Preliminarily Approve the Settlement.

Settlement of class action litigation is favored by public policy and strongly encouraged by the courts. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citations and internal quotation marks omitted); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action can be settled only with court approval. Such approval typically involves a two-step process consisting of (1) preliminary approval of the settlement and notice to all class members and (2) a final fairness hearing. *See In re Traffic Exec. Ass'n–E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980); 2 Herbert Newberg & Alba Conte, Newberg on Class Actions §§ 11.24-25 (4th ed. 2002); Manual for Complex Litigation, §§ 21.632-34 (4th Ed. 2002).

At the preliminary approval stage, the court "ascertain[s] whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). Preliminary approval of a class settlement represents "what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10 Civ. 3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (citation omitted).

In making this preliminary determination, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted); *accord Platinum & Palladium*, 2014 WL 3500655, at *11.

Plaintiffs' request that the Court take the first step in the settlement approval process and grant preliminary approval of the settlement. The proposed settlement is well "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87.

### 1.     The Settlement Is the Result of Mediation and Arms-Length Negotiations Conducted by Well-Informed and Experienced Counsel Before a Neutral Mediator.

The settlement was achieved through good faith settlement negotiations between well-informed and experienced counsel with the assistance of an experienced mediator well-versed in wage and hour issues. The parties engaged in significant and costly discovery from May of 2022 through the date of the mediation on December 8, 2022, had discussions on the merits of the claims, and mediated for more than 15 consecutive hours to dispute, confer, and negotiate the terms and conditions of the settlement—a process that continued throughout the early months of 2023.

The involvement of a mediator such as Susan Eisenberg supports the conclusion that the settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (same). The mediator's resume is attached to the Bristol Declaration as Exhibit D.

In addition, as discussed above, the parties and their counsel were knowledgeable about the strengths and weaknesses of their positions prior to reaching their agreement to settle. As a result, Plaintiffs and settlement class counsel had an adequate basis for assessing the strength of the claims of the four settlement classes and Peloton's defenses when they entered into the settlement. A proposed class action settlement enjoys a "presumption of fairness" where, as here, it is the product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery. *See Wal-Mart*, 396 F.3d at 116; *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014). In addition, class counsel, who have extensive wage and hour and class action experience, have concluded that the settlement is in the best interests of the settlement classes. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight'. . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (citation omitted).

Given that the settlement is the product of good faith, arm's-length negotiations involving the participation of an experienced mediator after meaningful discovery and was entered into by experienced and informed counsel, the settlement is entitled to a strong presumption of fairness and preliminary approval is warranted.

**2.    The Substantial Benefits for the Settlement Classes, Weighed Against Litigation Risks, Support Preliminary Approval.**

The proposed settlement creates a fund of $2,500,000.00. This is the maximum amount that Peloton is obligated to pay under the settlement, and the amount will cover all payments under the settlement including Plaintiffs' attorneys' fees and costs upon Court approval.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception.

Although there has been significant discovery already, additional discovery would be required to establish liability and damages, including depositions of opt-ins and class members and Defendant's employees and managers, as well as the people on whom Defendant contends it relied for its "good faith" defense. Moreover, Defendant would have opposed certification of the Rule 23 Classes had the matter not resolved, and sought to decertify same, even in the event that the Court ultimately certified one or more Rule 23 classes. Indeed, Defendants would likely have sought to decertify one or more of the classes, adding additional uncertainty to the future of the litigation.

In addition, the parties likely would have filed cross-motions for summary judgment regarding the applicability of Defendant's defenses, including, but not limited to, the retail sales exemption, the highly compensated exemption, lack of willfulness, lack of standing, statute of limitations, and the enforceable release of certain class / collective member's claims. If the Court denied the motions, a fact intensive trial would be necessary to determine some or all of these

issues, particularly whether Defendant properly implemented 29 U.S.C. § 207(i) or violated the FLSA and/or state wage and hour laws. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. Any judgment would likely be appealed, extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.

Plaintiffs' counsel took great care to establish a fair method for allocating the settlement. The proportions among the FLSA and state wage and hour class were established under the considerations of the relative strengths and weaknesses of Defendant's defenses against the class members' claims, as well as the average overtime rate of workers within each class, the average weeks worked, and the differing limitations periods for each class.

For instance, it is Plaintiffs' position that Defendant's retail or service establishment defense under 29 U.S.C. § 207(i) was far weaker against employees in ISR roles than it was against employees who worked in the showrooms. The FLSA ISR Collective and the Rule 23 New York State Settlement Class consist solely of ISR personnel. Whereas the FLSA Showroom Sales Personnel Collective and the Rule 23 Pennsylvania State Settlement Class consist of workers employed in showrooms. The relative strength and weakness of Defendant's 29 U.S.C. § 207(i) exemption defense, and its willingness and capacity to appeal adverse rulings related thereto, fell along class lines, which in turn factored into the allocation of settlement funds.

With respect to the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class, the class members are expected to receive approximately $110.00 per capita. The maximum recovery for any individual class member is $250.00 per day up to a statutory maximum of $5,000.00. This amount represents more than 40% of a single day violation. And based on

Defendant's defenses to class certification, defenses regarding standing that could linger even after any potential judgment, combined with Defendant's willingness and capacity to appeal any adverse judgment, and a class member's right to opt-out, this a settlement class and recovery warrants preliminary approval.

The issues in this case are complex, and as shown by the previous proceedings, will be vigorously contested, resulting in significant expense if the litigation should continue. Without settlement, there is a meaningful risk that the settlement classes would receive less than the settlement amount or nothing at all. Balancing the amount of the certain recovery against uncertain potential recovery after trial and appeals, Plaintiffs and counsel believe that the settlement provides an excellent result for the settlement classes, and that preliminary approval is appropriate.

### 3.    The Proposed Settlement Meets the Requirements for the Settlement of FLSA Claims.

In evaluating a proposed settlement of FLSA claims, the Court may approve a settlement among private litigants "when the settlement is reached as a result of contested litigation to resolve bona fide disputes." *Kopera v. Home Depot U.S.A., Inc*., No. 09-cv-8337 (WHP), 2011 WL 13272403, at *1 (S.D.N.Y. June 24, 2011).  FLSA settlements should be approved when they reflect "a reasonable compromise over contested issues." *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08-cv-8713 (PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010)

This action involves numerous disputed issues under the FLSA including whether members of the FLSA Collectives are properly non-exempt and entitled to overtime, whether Defendant's prior approval overtime policy is lawful, questions of willfulness and the limitations period, Defendant's good faith defenses, among others, all of which would be contested and whose outcomes are uncertain. This settlement provides a reasonable resolution to these issues. Thus, preliminary approval of the FLSA settlement is appropriate.

C.    **The Court Should Approve the Proposed Notices.**

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members who would be bound by a proposed settlement. Here, the settlement administrator will notify class members of the proposed settlement through a mailing as well as posting the notices on its website. The proposed notices explain the nature of the litigation, apprises members of the settlement classes of the pendency of settlement and informs them about the material settlement terms, including what class members "give up" by participating in the settlement and how payments are calculated and distributed. The proposed notices also inform class members of the formula used to determine the *pro rata* distributions among their respective classes. *See* Bristol Decl. ¶ 51. This information will allow members of the settlement classes to estimate the amount that they will receive under the settlement. The notice also provides the relevant deadlines and consequences for failing to opt-out of the Rule 23 classes. The notice also informs class members how they can obtain a copy of the Class Settlement Agreement and Release, which will be posted on a website by the Settlement Administrator. Finally, settlement class members are provided notice of their right to file objections to the settlement and appear at the fairness hearing.

The proposed manner of notice and timetable for further proceedings are also reasonable. Under the schedule proposed by the parties, notice will be sent to all class members no later than 20 days after the Court preliminarily approves the settlement. This notice will be by first-class mail to the last known address of each FLSA Opt-In and Class Member, and by email to the last known email address of each FLSA Opt-In and Class Member. Bristol Decl., Ex. A at ¶ 4.2. Notices that are returned as undeliverable will be re-mailed using available address databases. In addition, each settlement Class Member will be able to review the settlement agreement on a

website established by the Settlement Administrator as well as a toll-free number to contact with any questions. Bristol Decl., Ex. A at ¶ 4.4(b).

Members of the class will have 30 days from the date the notice is mailed to object to the settlement or mail an opt-out request, stating that they desire to be excluded from the settlement. Courts have routinely found a 30-day period to be reasonable and have approved even shorter periods. *See In re Remeron End-Payor Antitrust Litig.*, No. 02 Civ. 2007, 2005 WL 2230314, at *19 (D.N.J. Sept. 13, 2005) (30 days to object); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997) (45 days to opt-out); *see also* 2 Newberg § 8.37, at 8-118 (most notices between 30 and 60 days).

The form and manner of providing notice satisfy due process and Rule 23. The notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options" available. *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70) (internal quotation marks omitted). The manner of providing notice, which includes individual notice by first-class mail to all Class Members and FLSA Opt-Ins, and supplemented by internet notice, represents the best practicable notice and fully satisfies the requirements of due process and of Rule 23. *See City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008). Accordingly, Plaintiffs respectfully submit that the proposed notices are appropriate and should be approved.

Plaintiffs will file a joint motion seeking final approval of their settlement within 30 days after completion of the opt-out periods, or as otherwise directed by the Court.

**D.    Plaintiffs' Counsel Should Be Appointed Settlement Class Counsel.**

Rule 23(g) sets forth four criteria for evaluating the adequacy of proposed counsel: (1) the work counsel has performed in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action; (3) counsel's knowledge of the applicable authority; and (4) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(1)(B). "No single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g)(1)(C) advisory committee's note.

Proposed settlement class counsel meet all these criteria. As shown in Section II above, class counsel performed substantial work investigating, prosecuting, and settling this litigation. They have substantial experience prosecuting and settling employment class actions, including wage-hour class and collective actions, and are qualified to continue to represent the interests of the class. They also committed substantial resources to this litigation, which contributed to the settlement that was achieved. *See* Bristol Decl. ¶¶ 6, 15-17; Howell Decl. ¶¶ 4, 9.

## V.    **CONCLUSION**

Plaintiffs' request that the Court certify the proposed settlement classes; grant this motion for preliminary approval of the settlement; approve the content and manner of settlement notice and claim form proposed by Plaintiffs; appoint Plaintiffs Joseph Mateer, Katharine Johnson, and Christopher Branchcomb as the settlement class representatives for their respective settlement classes; and appoint Cohen Rosenthal & Kramer LLP and the Law Office of J.R. Howell as settlement class counsel.  Defendant does not oppose Plaintiffs' motion.

Dated: July 7, 2023

(Signatures on next page)

Respectfully submitted,

By: /s/ *Jason R. Bristol*
Jason R. Bristol (OH #0072989) (*pro hac vice*)
jbristol@crklaw.com
James B. Rosenthal (OH #0062872) (*pro hac vice*)
jbr@crklaw.com
COHEN ROSENTHAL & KRAMER LLP
3208 Clinton Avenue
Cleveland, Ohio 44113
(216) 815-9500 (Tel.)

/s/ *J.R. Howell*
J.R. Howell (CA #268086) (*pro hac vice*)
jrhowell@jrhlegalstrategies.com
LAW OFFICE OF J.R. HOWELL
1223 Wilshire Boulevard
P.O. Box 543
Santa Monica, CA 90403
Phone: (202) 650-8867

*Attorneys for Plaintiffs, the FLSA Collective, and Proposed Classes*

## CERTIFICATE OF SERVICE

On this 7th day of July 2023, a copy of the foregoing ***Memorandum Of Law In Support of Plaintiffs' Unopposed Motion for Certification of Settlement Classes, Preliminary Approval of Settlement, Appointment of Plaintiffs' Counsel as Class Counsel, Appointment Of Named Plaintiffs as Class Representatives, Approval of the Proposed Notices of Settlement and Class Action Settlement Procedure*** was served by ECF electronic filing on all known parties.

/s/ *Jason R. Bristol*
Jason R. Bristol (0072989)
Admitted *pro hac vice*