UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH D. MATEER, CHRISTOPHER BRANCHCOMB, and KATHARINE JOHNSON, *On behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>PELOTON INTERACTIVE, INC.<br><br>Defendant. | CASE NO. 1:22-cv-00740<br><br>JUDGE LORNA G. SCHOFIELD<br><br>MAGISTRATE JUDGE GABRIEL W. GORENSTEIN |

**DECLARATION OF JASON R. BRISTOL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF SETTLEMENT CLASSES, PRELIMINARY APPROVAL OF SETTLEMENT, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, APPROVAL OF THE PROPOSED NOTICES OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE**

I, Jason R. Bristol, pursuant to 28 U.S.C. § 1746, hereby declare, under penalty of perjury, that the following is true and correct to the best of my personal knowledge, information, and belief:

1.      My name is Jason R. Bristol.  I am over the age of eighteen (18) and competent to testify as to the matters stated herein.

2.      I am one of the attorneys for Plaintiffs Joseph D. Mateer, Christopher Branchcomb, and Katharine Johnson in the above-captioned lawsuit. I have personal knowledge of the facts set forth in this Declaration, and, if called to testify, I could and would testify competently to the matters stated herein.  I make this declaration in support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement.

1

3.      I am a Partner at Cohen Rosenthal & Kramer LLP ("CRK") in Cleveland, Ohio.  I am in charge of the firm's nationwide class/collective action employment practice.

4.      As an attorney at CRK, I am responsible for prosecuting, as lead counsel, federal and state labor and employment claims, including claims arising under Title VII, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), Ohio's Anti Employment Discrimination statute, O.R.C. §4112.02, the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, and various other parallel state and local municipal wage and hour laws, among others.

5.      Along with J.R. Howell of the Law Office of J.R. Howell, I am lead counsel in the matter of *Joseph Mateer, et al. vs. Peloton Interactive Inc.,* Case No. 1:22-cv-00740.  I was the attorney responsible for the litigation on behalf of the Plaintiffs, and the settlement classes.

6.      We undertook this representation on a purely contingent basis.  Moreover, because our firm has finite resources, our acceptance of this case precluded us from accepting other wage and hour class/collective actions.  Neither my firm nor I have received compensation for the services we have rendered in this case to date, from any source.

**Professional Experience**

7.      I am an attorney licensed and authorized to practice in Ohio and other jurisdictions throughout the United States and appear in this action *pro hac vice*.  In 2000 I earned a J.D. from Cleveland State University's Cleveland-Marshall College of Law.  While in law school I was a member of the Moot Court Board of Governors, served on the school's National Moot Court Team, and was selected a National Member of the Order of Barristers.

8.      Upon graduation, I was asked by Cleveland-Marshall to serve as an Adjunct Professor of Law, and since the fall of 2001 I have been teaching at Cleveland-Marshall.  I

currently teach an Administrative Law course on the Fair Labor Standards Act and I taught Advanced Brief Writing/Appellate Advocacy for seven years. I have served as a Faculty Advisor to the School's nationally renowned Moot Court Team, and I am a frequent guest lecturer at the law school. In 2012 I delivered Cleveland Marshall's annual Labor and Employment Law Lecture, titled "The Fair Labor Standards Act at 75: Why Congress' Stated Policy of Eliminating Substandard Labor Conditions Remains As Necessary Today As It Did In 1938." My most recent scholarly publication is *Intended and Unintended Consequences: The 2006 Fair Minimum Wage Amendment of the Ohio Constitution*, 58 CLEV. ST. L. REV. 367 (2010). I have also served as a member of Cleveland Marshall's Board of Visitors since 2011.

9.      From 2000 to 2004, I worked as an associate attorney for Gary Naegele & Theado, LLC, a firm with a national reputation for its work in class action litigation. While at Gary, Naegele & Theado I litigated class cases involving retiree pension benefits, environmental disasters, consumer fraud, and employee benefits.

10.      In 2004, I joined Cohen Rosenthal & Kramer LLP as a Partner where I developed the firm's plaintiffs' employment class action practice. My firm is extensively engaged in complex litigation, including the prosecution of major class actions. In the course of our practice, members of the firm have prosecuted numerous major class actions on behalf of thousands of class members, resulting in payments to class members in the tens of millions of dollars. CRK has an "av" rating from Martindale Hubbell.

11.      My practice is devoted entirely to complex civil litigation, including collective actions and class actions. In 2007, I was named Plaintiff's Complex Litigation and Class Action Counsel to the State of Ohio. I am a member of various professional organizations, including the National Employment Lawyers Association, Ohio Employment Lawyers Association, Cleveland

Employment Lawyers Association, Cleveland Employment American Inn of Court (Master of the Bench status), the Ohio State Bar Association, and the Cleveland Metropolitan Bar Association. I am a Life Member of the Eighth District Judicial Conference, and I also serve on the court appointed Cuyahoga County Court of Common Pleas Civil Justice Improvement Committee. In 2020 I was elected a Fellow of the College of Labor and Employment Lawyers. Other professional honors include *Crain's Cleveland Business* "Notables in Law" (2022); Leadership Cleveland (Class of 2019); Cleveland-Marshall College of Law Hall of Fame (Class of 2019); The Court of Nisi Prius; and *Crain's Cleveland Business*, "40 under 40." In 2016, I was one of 32 Americans competitively selected as a Marshall Memorial Fellow of the German Marshall Fund of the United States where I focused on transatlantic trade and investment policy and human rights.

12. Since 2001, I have been asked to and have spoken at numerous seminars and events on the topic of complex litigation and Fair Labor Standards Act litigation in particular. These include the following:

> *"Computer Vision Technology In The Workplace: A Wage and Hour Case Study"*
> American Bar Association Section of Labor and Employment Law
> National Symposium on Technology in Labor and Employment Law
> Co-Presented with Professor Emily Underwood, University of Chicago, Elizabeth Arnold, Director, Berkley Research Group, Joe Mulherin, Partner, McDermott Will & Emery
> Chicago, Illinois – April 21, 2023

> *"The Importance of High-Quality Legal Research and Writing"*
> Cleveland State University College of Law
> Co-Presented with The Honorable Benita Y. Pearson, District Judge, United States District Court for the Northern District of Ohio, Siegmund F. Fuchs, Attorney, United States Department of Justice, Ilah M. Adkins, Senior Counsel, Progressive Corporation
> Cleveland, Ohio – April 4, 2023

> *"Pro bo 'Know' CLE, Basics of State and Federal Wage Theft Cases"*
> Cleveland Metropolitan Bar Association, Pro Bono Week
> Cleveland, Ohio – October 25, 2021

*"FLSA Collective Actions: Certification and Ins and Outs of Notice"*
Ohio State Bar Association Annual Midwest Labor and Employment Law Seminar
Co-presented with Tonya B. Braun, Partner, Jones Day
Columbus, Ohio – October 15, 2020

*"Physician Contracts and Negotiations"*
MetroHealth Hospital, MetroHealth Family Medicine Program
Co-Presented with Jim Rosenthal, Partner, Cohen Rosenthal & Kramer LLP
Cleveland, Ohio – May 26, 2020

*"Developments and Strategy in Wage and Hour Collective and Class Actions"*
Ohio State Bar Association Advanced Employment Law Seminar
Co-presented with Fred G. Presley, Partner, Porter Wright Morris & Arthur LLP
Columbus, Ohio – May 15, 2020

*"Employment Status in the Gig Economy"*
Labor and Employment Relations Association (LERA) 71st Annual Meeting
Co-presented with Meredith Shoop, Shareholder, Littler Mendelson;
Raven Applebaum, Counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C.; and
Elizabeth Arnold, Director, Berkeley Research Group
Cleveland, Ohio – June 16, 2019

*"American Constitution Society: Supreme Court Term Preview"*
Co-presented with Professors Stephen R. Lazarus and Doron M. Kalir
Cleveland-Marshall College of Law
Cleveland, Ohio – September 27, 2017

*"Basics of Wage and Hour Law"*
Ohio State Bar Association, New Lawyer Training
Columbus, Ohio – May 11, 2017

*"Forced Arbitration and Class Action Waivers"*
Cleveland Employment Inn of Court
Cleveland, Ohio – April 20, 2017

*"The Impact of State of Nevada, et al. v. United States Department of Labor, et al., No. 4:16-CV-00731 (E.D. Tex. Nov. 22, 2016) on the Final Overtime Rule"*
Cleveland Employment Lawyers Association
Cleveland, Ohio – December 9, 2016

*"Wage and Hour Law: Overtime, Minimum Wage, and How State Laws Differ"*
Co-presented with David Blanchard, Blanchard & Walker, PLLC
Committee on Regional Training (employment law training for legal services providers in Indiana, Michigan, Ohio, and West Virginia)
Ann Arbor, Michigan – August 10, 2016

*"New 2016 White Collar Overtime Regulations: An Overview"*
Cleveland Employment Lawyers Association
Cleveland, Ohio – December 11, 2015

*"State of the Profession Panel Discussion"*
Co-presented with J. Phillip Calabrese, Porter Wright Morris & Arthur LLP
Federal Bar Association, Northern District of Ohio Chapter, Annual State of the
Court Seminar
Cleveland, Ohio – September 16, 2015

*"Risk Versus Reward: The New Pros and Cons of Arbitration Agreements and
Class Action Waivers"*
Co-presented with John Gerak, Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Federal Bar Association, Northern District of Ohio Chapter, Annual State of the
Court Seminar
Cleveland, Ohio – September 8, 2014

*"Arbitration Agreements: Best Practices"*
Cleveland Employment Lawyers Association
Cleveland, Ohio – May 2, 2014

*"FLSA Collective and Class Action Waivers and Mandatory Arbitration"*
Cleveland Employment Lawyers Association, Annual Seminar
Cleveland, Ohio – December 6, 2013

*"Litigation Tactics in Complex Wage and Hour Cases:  A Perspective from the
Defendants and Plaintiffs Bar"*
Co-presented with Richard A. Millisor, Esq., Fisher & Phillips, LLP
50th Annual Labor and Employment Law Seminar, Ohio State Bar Association
Columbus, Ohio – October 4, 2013

*"Wage and Hour Justice: Issues Facing Working People in an Increasingly Part-
time Contingent Economy"*
Panel Discussion, Mideast Regional Conference of the National Lawyers Guild,
Case Western Reserve University
Cleveland, Ohio – March 23, 2013

*"The Fair Labor Standards Act At 75:  Why Congress' Stated Policy of
Eliminating Substandard Labor Conditions Remains As Necessary Today As It
Was In 1938"*
Cleveland-Marshall College of Law, Annual Employment and Labor Law Lecture
Cleveland, Ohio – October 25, 2012

*"Litigation Tactics in Wage and Hour Collective and Class Actions: A
Perspective from Both Sides of the Bar"*
Co-presented with Richard A. Millisor, Esq., Fisher & Phillips, LLP

49th Annual Labor and Employment Law Seminar, Ohio State Bar Association
Columbus, Ohio – October 11, 2012

*"Arbitration and Other Key Developments in Wage and Hour Litigation"*
Co-presented with Stephen S. Zashin, Esq., Zashin & Rich
Columbus Bar Association, Masters Series
Columbus, Ohio – September 18, 2012

*"Litigation Tactics in Complex Wage and Hour Cases"*
Co-presented with Richard A. Millisor, Esq., Fisher & Phillips, LLP
Cleveland Employment Inn of Court
Cleveland, Ohio – January 12, 2012

*"Ohio Employer Conference: FLSA Panel discussion"*
Littler Mendelson, P.C., Annual Seminar
Cleveland, Ohio – October 27, 2011

*"Burgeoning FLSA Claims and Collective Actions: Navigating the Waters of Increased Scrutiny, Regulations and Litigation"*
Hot Issues in Employment Law, Ohio State Bar Association
Columbus, Ohio – April 22, 2011

*"Advanced FLSA – The Fluctuating Workweek"*
Employment, Labor & The Workday Grind, Cleveland Employment Lawyers Association
Cleveland, Ohio – November 12, 2010

*"Collective Actions under the FLSA"*
47th Annual Labor and Employment Law Seminar, Ohio State Bar Association
Columbus, Ohio – October 14, 2010

*"Workplace Issues Our Grandparents Never Envisioned"*
Ogletree, Deakins, Nash, Smoak & Stewart PC Annual Seminar
Cleveland, Ohio - August 12, 2010

*"Intended and Unintended Consequences: The 2006 Fair Minimum Wage Amendment of the Ohio Constitution"*
Cleveland Employment Lawyers Association, Annual Seminar
Cleveland, Ohio – December 4, 2009

*"Identifying, Prosecuting and Defending §216(b) FLSA Collective Actions"*
Federal Employment Litigation Seminar, Federal Bar Association, Northern District of Ohio Chapter Cleveland, Ohio – December 1, 2009

*"Engulfed: The Rising Tide of Economic Disparity"* City Club of Cleveland, Chair

Cleveland, Ohio – September to November 2007

*"Complex Civil Litigation and Class Actions"*
New Lawyer Training, Ohio Supreme Court/Cleveland Bar Association
Cleveland, Ohio – February 2006

*"Writing for the Trial Court"*
Civil Practice Seminar, Lorain County Bar Association
Elyria, Ohio – 2001

13.     I have substantial experience in complex litigation, including class and collective action cases prosecuted under the Fair Labor Standards Act, and numerous state laws relating to the payment of wages. Based on my litigation experience and teaching I have significant knowledge of the federal and state wage and hour laws, and I have prosecuted dozens of significant class, collective, hybrid, and individual actions. I also have significant knowledge of federal and state consumer protection laws, having litigated many cases of this nature.

14.     The class actions I have prosecuted include employee rights cases, consumer rights claims, and mass disasters. I routinely handle claims that involve alleged improper use of the socall Fluctuating Workweek method of computing overtime, employee misclassification, unpaid overtime compensation, unpaid minimum wages, off-the-clock work, unpaid preparatory and concluding activities, unpaid donning and doffing activities, unpaid on-duty meal periods, improper rounding practices, unpaid short rest periods, regular rate violations, and unpaid waiting time and unpaid travel time.

15.     In each of the class cases where I have represented plaintiffs in a wage and hour case, like the instant case, or in a consumer protection case, the Court found me adequate to serve as class counsel and appointed me as such.

16.     A sample of cases in which I served as class counsel or lead class counsel are listed below:

*Ervin et al. v. The Scott's Company, LLC et al.*, Case No. 17-cv-60344-RS (S.D. Florida May 26, 2021) (Co-Lead Class Counsel) (Finally approved $3,034,999 hybrid class and collective action settlement for territory service representatives throughout the U.S. and in the states of Illinois, Kentucky, Michigan, Oregon, and Washington alleging misapplication of the Fluctuating Workweek Method of computing overtime compensation and failure to pay legally required overtime).

*Hook v. Ascendum Solutions, LLC, et al.,* Case No. 1:18-cv-56 (S.D. Ohio June 4, 2019) (Lead Class Counsel) (granting conditional certification of two classes of underwriters working for Ascendum Solutions and loanDepot.com, the second largest non-bank provider of direct-to-consumer loans in the United States)

*Crosby v. Stingray Pressure Pumping, LLC,* Case No. 2:17-cv-00080 (S.D. Ohio September 28, 2018) (Lead Class Counsel) ($300,000 settlement for six allegedly misclassified Field Engineers working in the hydraulic fracturing industry)

*In re RS Legacy Corporation, et al.,* Case No. 1:15-10197 (Bankr. D. Del. August 29, 2016) (Lead Class Counsel) ($41,000,000 class action settlement resulting in allowed general unsecured claim for 7,500 store managers who alleged illegal use of the Fluctuating Workweek method of computing overtime compensation)

*Brodzenski v. StoneMor Partners, L.P.*, *et al.* (N.D. Ohio August 26, 2015) (Lead Class Counsel) ($2,328,000 settlement of fully-certified nationwide FLSA collective action for a class of sales counselors who were allegedly forced to work off-the-clock and report fewer hours than they actually worked)

*Roe v. Intellicorp Records, Inc.* (N.D. Ohio June 5, 2014) (Class Counsel) ($18,600,000 class settlement vindicating the rights of consumers who were alleged to have been the victims of erroneous criminal background reports, and one of the top FCRA settlements in U.S. history)

*Jewell v. Aaron's, Inc.,* Case No. 1:12-cv-563 (N.D. Ga. December 12, 2014) (Lead Class Counsel) ($1,300,000 settlement of a conditionally certified nationwide collective action for employees who alleged they were not paid for work performed during automatically deducted meal periods)

*Baldwin v. Forever 21, Inc.,* Case No. 53-160-71-13 (American Arbitration Association) (Lead Class Counsel) ($496,500 settlement of a conditionally certified nationwide collective action for retail employees who alleged they were not paid for work performed during unpaid meal periods)

*Steele v. SWS, LLC*, No. 3:11-cv-00060 (E.D. Tenn. June 24, 2011) (Lead Class Counsel) (granting nationwide certification of a class of cable installers who allege they were misclassified as independent contractors under the FLSA)

*Murphy v. 1-800-Flowers*, No. 1:10-cv-1822 (Lead Class Counsel) (N.D. Ohio October 22, 2010) (Lead Class Counsel) (conditionally certified nationwide class of store managers who alleged that they were improperly classified as exempt from the FLSA's overtime requirements)

*Jackson v. Maui Sands Resort*, No. 1:08-CV-2972 (N.D. Ohio Sept. 10, 2010) (Lead Class Counsel) ($550,000 judgment against individual corporate officer and affiliated corporations under joint employer doctrine for class of hotel employees who alleged they were not paid wages for their last weeks of employment or for on-duty meal periods in violation of the FLSA)

*Warren v. Race*, Case No. 1:09-CV-2670 (N.D. Ohio Sept. 3, 2010) (Lead Class Counsel) (approving $660,000 settlement of nationwide FLSA collective action against corporate officers and directors on behalf of employees who were unpaid when employer went out of business)

*Dillworth v. Case Farms Processing*, Case No. 5:10-cv-1694 (N.D. Ohio) (Lead Class Counsel) (conditionally certified multi-state collective action for meat processing workers who alleged they were not paid for time spent donning and doffing uniforms and protective gear)

*McNelley v. Aldi, Inc.*, Case No. 1:09-cv-1868 (N.D. Ohio Nov. 17, 2009) (Lead Class Counsel) (granting conditional certification in nationwide FLSA collective action on behalf of store managers who contend they were misclassified as exempt from overtime compensation)

*Jackson v. Papa John's USA, Inc.*, 2009 WL 385580 (N.D. Ohio Feb. 13, 2009) (Lead Class Counsel) (granting conditional certification in nationwide FLSA collective action on behalf of store managers who alleged they were misclassified as exempt from overtime compensation)

*West v. AK Steel Corp.*, 318 F. Supp. 2d 579 (S.D. Ohio 2004), affirmed, 484 F.3d 395 (6th Cir. 2007), cert. denied, 129 S. Ct. 895 (2009) (granting partial summary judgment in certified ERISA class action for class of retirees whose lump sum pension distributions were illegally calculated, resulting in $46,000,000 million class judgment for retirees)

*Fincham v. Nestle Prepared Foods Company*, Case No. 1:08-cv-0073 (N.D. Ohio) (Lead Class Counsel) (conditionally certified collective action for employees who alleged they were not paid for time spent changing into and out of uniforms and protective gear)

*Berger v. Cleveland Clinic Foundation*, 2007 WL 2902907 (N.D. Ohio Sept. 29, 2007) (Lead Class Counsel) (granting collective and class action certification for

class of Respiratory Therapists and Technicians who allege they were not provided bona fide meal periods in violation of the FLSA and OMFWSA)

*Williams v. Le Chaperon Rouge*, 2007 WL 2344738 (N.D. Ohio Aug. 14, 2007) (Lead Class Counsel) (granting conditional certification for a class of day-care employees who allege that they were not paid for all hours worked and were not provided bona fide meal periods in violation of the FLSA and OMFWSA)

*Insalaco v. Ben Venue Laboratories*, Case No. 450549, Cuyahoga County, Ohio Court of Common Pleas (2005) (class action settlement involving class of mid-to-upper-level managers who alleged breach of an employee incentive plan)

*Lowe v. Sun Refining & Marketing Co.*, Case No. 88-0630, Lucas County, Ohio Court of Common Pleas (2002) (class action settlement on behalf of thousands of Fremont, Ohio, residents affected by a toluene pipeline rupture)

*White v. Aztec Catalyst Co.*, Case No. 93-111025, Lorain County, Ohio Court of Common Pleas (2000) (class action settlement on behalf of thousands of Lorain, Ohio, residents affected by a chemical plant explosion)

17.    In addition to litigating wage and hour class and collective actions, I also serve as a mediator in complex wage and hour disputes.  Since beginning my mediation practice in 2016, I have resolved numerous nationwide class/collective actions.  I am routinely retained by some of the country's largest labor and employment law firms and top plaintiffs' firms to serve as their mediator.

18.    Nearly all the attorneys' fees earned by my law firm are earned on a contingency fee basis.  We do not get paid unless we recover for our clients.  It is also almost always necessary for us to advance the costs in federal wage and hour cases, which often requires risking tens of thousands of dollars in addition to our fees. Absent Court approval of our contingency fee at the conclusion of a case, we could not continue to accept contingency work on behalf of aggrieved workers and consumers.

19.    My standard hourly rate is $465.00 per hour.  This is the rate I charge most clients for representation in complex litigation matters.  This rate has been approved in other class action cases.

## Case Background

20.     Cohen Rosenthal & Kramer first became involved in the *Mateer* matter when our co-counsel J.R. Howell contacted us in late 2021 to notify us that he believed that Peloton was engaging in a systematic violation of the FLSA, and that a class action could be possible.  Because of our class action and collective action expertise, Cohen Rosenthal & Kramer was brought in as lead counsel, and has been involved in every aspect of the case— from the drafting of the complaint to the settlement negotiations and resolution of the matter.

21.     After months of investigation and evaluation of the facts and law, we filed suit in the United States District Court for the Southern District of New York on January 28, 2022, on behalf of Plaintiff Joseph D. Mateer, and all others similarly situated, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* and the New York Labor Law, Articles 6 and 19.

22.     We filed a Second Amended Complaint on July 30, 2022, asserting individual and class-wide wage and hour claims under the FLSA, violations of New York Labor Law, violations of Pennsylvania's Wage Payment and Collection Law, and violations of the Pennsylvania Minimum Wage Act.

23.     Cohen Rosenthal & Kramer worked hand in hand with the Law Office of J.R. Howell to litigate this case and bring about the substantial settlement now under consideration. Our firm handled document review, damage calculation, briefing and letter motions, correspondence with opposing counsel, discovery disputes, argument at hearings, strategic leadership, deposition planning and preparation, settlement negotiations, and the like.  We are thoroughly familiar with every aspect of the case having participated in every litigation initiative throughout the case.

24.    I was familiar with the legal and factual issues relating to this case before Plaintiffs engaged in any settlement discussions in this matter. In fact, by the time the parties agreed to mediation in the fall of 2022, the parties had shared the bulk of the relevant documentary evidence, and by the time negotiations ensued in December of 2022, the parties were on the eve of significant representative discovery and forthcoming briefing of summary judgment and final certification. All of the relevant documents and evidence were reviewed, and Plaintiffs were preparing to conduct several days of corporate representative depositions.

25.    In addition, by the time the negotiations began, I had a very thorough understanding of all the defenses, and the 207(i) defense in particular. I also studied the case law and defenses applying to the New York Initial Hire Notice and Wage Statement claims.

### Nature of Plaintiffs' Claims

26.    Plaintiffs and the Plaintiff Classes are all current or former employees of Peloton Interactive Inc. who worked as Inside Sales Representatives, non-exempt Showroom Sales Personnel, or who worked for Peloton in the state of New York from January 27, 2016, through December 31, 2020, excluding those current and former employees who have released claims against Peloton under the NYLL. The Inside Sales Representatives and non-exempt Showroom Sales Personnel allege that Peloton failed to pay legally required overtime wages in violation of the Fair Labor Standards Act, New York Labor Law, and Pennsylvania Law. Plaintiffs covered by the New York Initial Hire Notice and Wage Statement Settlement Class (as described below) allege violations of New York's Wage Theft Prevention Act relating to Peloton's alleged failure to provide legally required information at the point of hire and on pay stubs. The following is a description of each of the classes covered by the Parties' Settlement Agreement.

27.    The "FLSA ISR Collective" members are all FLSA Opt-Ins who filed valid Opt-In forms in the Action to join the FLSA collective conditionally certified by the Court on July 13, 2022 (ECF No. 61), consisting of former and current employees who worked for Peloton as Inside Sales Representatives, or those who performed substantially similar duties to ISRs (namely, Account Executives, Seasonal Account Executives, Inside Sales Representatives, Inside Sales Team Leads, Account Associates, Account Associate Leads, and Supervisors, Inside Sales) (collectively, "ISRs"), who allegedly worked more than forty hours in one or more workweeks of their employment, and who were not paid overtime for all hours worked at the statutorily required rate of one and one-half times their regular rate of pay, at any time between January 27, 2019, and July 12, 2022.

28.    The "FLSA Showroom Sales Personnel Collective" are all FLSA Opt-Ins who filed valid Opt-In forms in the Action after the Court conditionally certified an FLSA collective on July 13, 2022 (ECF No. 61) to opt into the collective of former and current employees who worked for Peloton as Showroom Sales Personnel, who allegedly worked more than forty hours in one or more workweeks of their employment, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one and one-half times their regular rate of pay, at any time between January 27, 2019, and July 12, 2022.

29.    The "Rule 23 New York State Settlement Class" are all former and current employees who worked for Peloton as ISRs, and who allegedly worked more than forty hours in one or more workweeks of their employment in the state of New York, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2016, and the date Plaintiffs' Counsel signs the Settlement Agreement.

30.     The "Rule 23 Pennsylvania State Settlement Class" are all former and current employees who worked for Peloton as non-exempt Showroom Sales Personnel, who allegedly worked more than forty hours in one or more workweeks of their employment in the state of Pennsylvania, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2019, and the date Plaintiffs' Counsel signs the Settlement Agreement.

31.     The "Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class" are all current and former employees who worked for Peloton in the state of New York from January 27, 2016 through December 31, 2020, excluding those current and former employees who have released claims against Peloton under the NYLL.

### Settlement Considerations and Recommendations of Counsel

32.     As a result of my experience, I am aware of the types of information and documents necessary to conduct settlement negotiations of a class/collective action in an informed manner. In my opinion, based on my previous experience litigating similar cases, we had sufficient information and documents to make an informed and reasonable decision about settlement before agreeing to settle the case. In fact, I highly doubt that Plaintiffs would have obtained any significant information, or a better result, though additional discovery and more protracted litigation.

33.     In my opinion, based on my substantial experience as outlined above, the Settlement clearly warrants the Court's preliminary approval. Its terms are not only fair, reasonable and adequate, but are a very favorable result for the class. The $2,500,000.00 settlement proposal results in significant monetary relief to the FLSA Collective Members and participating Rule 23 Class Members.

34.     Plaintiffs believe that they have a strong case against Defendant and will prevail if this case goes to trial. However, the risks of proceeding are substantial. Defendants, such as the Defendant here, frequently vigorously resist liability in wage and hour class actions and employ every available tactic in an effort to avoid liability. At every stage of the proceedings, there is a risk that plaintiffs will be unable to overcome the hurdles raised by defendants in such cases. Moreover, highly capitalized and/or insured corporations have significant resources to devote to litigation and will often appeal, thus significantly delaying relief to injured workers.

35.     Thus, there is a very real prospect that unless the Settlement is approved, Plaintiffs will face years of costly and complex litigation that will pose risks and delay any recovery. In view of the dollar amounts at stake for the majority of class members, it is unlikely that class members will ever pursue individual litigation. On the other hand, the Settlement offers immediate and concrete monetary relief for class members.

36.     Though I am confident Plaintiffs would have prevailed in this case if litigation continued, Defendant's defenses were substantial and pose risk to Plaintiffs' ability to prevail on both final FLSA certification and class certification and the merits.

**<u>The Mediation</u>**

37.     At the urging of the Court and following several months of intense litigation, the parties agreed to submit their dispute to private mediator, Susan Eisenberg, Esq., of Cozen O'Connor in Miami, Florida.  Ms. Eisenberg is Board Certified in Labor and Employment Law, a Fellow of the College of Labor and Employment Lawyers, is a Founding Member of the Wage and Hour Defense Institute and is one of the authors of the premiere treatise titled *The Fair Labor Standards Act*. She is highly experienced in wage and hour litigation, and a copy of her resume is attached hereto as Exhibit D.

38.     Following individual preparatory meetings with the mediator during the week of December 5, 2022, after the submission of thorough mediation statements and individual settlement talks among the parties, a mediation session was held on December 8, 2022, which lasted through the early morning hours of December 9, 2022.  The mediation enabled the parties to arrive at a framework for the settlement, but several weeks of additional settlement talks and negotiation were required to arrive at settlement, as well as several months of intensive work to arrive at a mutually agreeable Settlement Agreement.

39.     The proposed Settlement was negotiated at arm's length and in good faith by experienced counsel, with the assistance of an experienced mediator, and is the product of hard bargaining on both sides. Plaintiffs spent significant time investigating the claims, analyzing the claims and defenses, and negotiating the terms of this settlement. The procedures for identifying class members, providing notice of the proposed Settlement terms, and affording opportunities to object to or opt out of the Settlement are fair and sufficient. Through the formal and informal exchange of information with Defendant, and Plaintiffs' counsel's prior knowledge of the relevant legal issues, we have gained a thorough understanding of the merits, risks, and value of the case, and had more than sufficient information to determine, and to negotiate for, a fair resolution for the Classes. Nothing was left on the table.  I therefore recommend that the Court grant preliminary approval of the Settlement.

### The Class Settlement Agreement and Release

40.     A true and accurate copy of the Class Settlement Agreement and Release is attached hereto as Exhibit A.

41.     Defendant has agreed to a gross settlement amount of $2,500,000.00. *See* Class Settlement Agreement and Release, §3.2.

42.     The gross settlement amount will cover the Settlement Administrator's fees and costs, Court-approved attorneys' fees and costs, and Court-approved incentive awards to Named Plaintiffs. *Id*. at §3.3.

43.     The Net Settlement Fund (all Settlement Funds remaining after deductions for the payment of Settlement Administration Costs, the Fees Award, Costs, and Incentive Awards) will be computed from the Net Settlement Fund as follows:

(a)     First, the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class, as defined above, will be allocated an amount not to exceed $200,000.00 from the Net Settlement Fund, to be divided equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

(b)     Second, fifteen percent (15%) of the remaining Net Settlement Fund, will be divided on a *pro rata* basis across the Named Plaintiffs, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members based on their number of weeks worked and average overtime rate during the relevant time periods.

(c)     Third, the remaining funds in the Net Settlement Fund will be divided on a *pro rata* basis across the Named Plaintiffs and FLSA Opt-Ins who worked in a qualifying position during the relevant periods based on their total number of weeks worked and overtime rates of pay, based on Peloton's records.

(d)     Fourth, because of differences in the volume of alleged off-shift work, greater commission payments, and increased likelihood of success on the merits, FLSA ISR Collective members allocation under section (c) shall be multiplied by a factor of three.

(e)     The calculations in (b) – (d) will result in each Named Plaintiffs, FLSA Opt-Ins, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members Individual Settlement Amounts.

(f)     The Parties note that 11 FLSA Opt-Ins are also Class Members.  For purposes of Net Settlement Fund allocation, individuals who are a member of the Rule 23 New York State Settlement Class or the Rule 23 Pennsylvania State Settlement Class will not have any workweeks double counted.  Rather, any workweeks during which such individuals met the definition of a State Settlement Class or FLSA Collective shall be counted

once both for the purpose of calculating the Gross Workweek Amount and the individual's Individual Settlement Amount.

(g)    Defendant's records of weeks worked for each Named Plaintiff, FLSA Opt-In, Rule 23 New York State Settlement Class Member, and Rule 23 Pennsylvania State Settlement Class Member shall be dispositive.

(h)    The Settlement Administrator will calculate the Individual Settlement Amounts.

*Id*. at §3.4.

44.    The settlement distribution methods are based on actual compensation data produced by Defendant, which has been represented to Plaintiffs as complete and accurate.

45.    To analyze this data, Plaintiffs' Counsel retained experts at Employment Research Corporation of Ann Arbor, Michigan. The *curriculum vitae* of Plaintiffs' experts is attached hereto as Exhibit F.

46.    Based on an analysis of the class member compensation data produced by Peloton and expert analysis performed by Plaintiffs' Expert, the parties agreed that the allocation of the settlement funds among the FLSA Collective and three Rule 23 state law classes was fundamentally fair and reasonable as was the methodology for distributing individual shares of the settlement funds on a *pro rata* basis.

47.    Based upon the class member compensation data produced by Peloton and analysis issued by Plaintiffs' experts, it was apparent that on average, those class members who worked in positions classified as Inside Sales Representatives had "regular rates" that, on average, were approximately three times greater than those class members who worked as Showroom Sales Personnel at showroom locations. Additionally, it was apparent that individuals who worked as Inside Sales Representatives either worked more off-the-clock hours without compensation or had access to systems that facilitated off-the-clock work more readily than their counterparts who worked in the showrooms. Lastly, it was counsel's assessment that the likelihood of success on

the merits for individuals who worked as Showroom Sales Personnel was substantially less than that for individuals who worked as Inside Sales Representatives, owing to factors related to Peloton's available defenses, class representative challenges, statute of limitations factors, and procedural/venue questions. As a result, the parties agreed that increasing the *pro rata* share of Inside Sales Representatives within the FLSA collective by a factor of 3 (using a 3X multiplier) was a fair and reasonable mechanism to address apparent disparities among these two groups of FLSA Collective members in terms of compensation, alleged off-the-clock hours worked, and likelihood of success on the merits.

48.     No amounts paid into the Settlement Fund by Peloton will revert to Peloton.

49.     The releases pertaining to the FLSA Opt-Ins and Settling Class Members (as those terms are defined in the Class Settlement Agreement and Release) are detailed in § 2.3.  The terms are customary in nature, commensurate with releases incorporated in other hybrid class/collective action settlement agreements and are fair and reasonable.  The terms are also similar, if not identical to, release terms previously approved by this Court.

50.     In addition to the releases contained in § 2.3, the Named Plaintiffs have also agreed to a General Release of Claims.  Each of the Named Plaintiffs have expressed their approval of this term by signing the settlement agreement.

**The Proposed Notices**

51.     The proposed Notices of Proposed Settlement and Right to Opt Out are attached hereto as Exhibits B and C, which provide class members with all of the pertinent information regarding their right to opt out, information on how to object to the terms of the settlement, the date, time, and location of the Final Approval Hearing, the releases that will apply to their claims

20

if they fail to opt-out in a timely manner, and the formula used to determine the pro rata distributions of the settlement funds.

### Settlement Administration

52.     The parties have agreed to retain Simpluris Inc. to serve as the Settlement Administrator and to provide notice and to facilitate the distribution of funds from the settlement fund.  An estimate for the Settlement Administrator's scope of work is attached hereto as Exhibit E. Notice of preliminary approval, a summary of the terms of the settlement, along with a link to a website containing the Settlement Agreement, will be sent to members of the settlement classes by the Settlement Administrator. The settlement provides for a single remailing, utilizing available databases, for notices returned as undeliverable, and posting of the notice and Class Settlement Agreement and Release on a website established by the Settlement Administrator so it can be reviewed by all members of the settlement collectives and classes. The Settlement Administrator will make reasonable efforts to locate the correct mailing address before re-mailing undeliverable notices.  Members of the FLSA Collective; Rule 23 New York State Settlement Class; Rule 23 Pennsylvania State Settlement Class; and Rule 23 Initial Hire Notice and Wage Statement Settlement Class will be provided an opportunity to opt-out of the settlement.  All settlement class members can file objections to the settlement and appear at the Final Approval Hearing.

53.     The Parties anticipate that the Settlement Administrator's fees will be less than $30,000.00.

54.     At this early stage in the process, the named-Plaintiffs have expressed their approval of the settlement by signing the settlement agreement.  Similarly, the handful of Class Members who have learned of the settlement to date have all reacted favorably.

55.     There are approximately 1,824 members of the New York Initial Hire Notice and

Wage Statement Settlement Class, 166 members of the FLSA Collective, 26 members of the Rule 23 New York State Settlement Class, and 44 members of the Pennsylvania State Settlement Class.

56.     Pursuant to the Court's Individual Rules and Procedures for Civil Cases, Section III (C) (5) pertaining to class actions, a Preliminary Approval Disclosure and Proposed Schedule of Class Action Settlement Procedure are attached hereto as Exhibits G and H respectively.  As noted in Exhibit G, the Class Settlement Agreement and Release states that the Settlement Administrator will be responsible for calculating individual settlement amounts and mailing Settlement Payments to Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members, and therefore the exact figures have not yet been calculated.  In addition, the class sizes are approximate.  Plaintiffs will either supplement this submission or provide exact figures prior to final approval based on the Court's preference.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct. Executed on July 7, 2023, in Cleveland, Ohio.

Jason R. Bristol (0072989)
Admitted *pro hac vice*
jbristol@crklaw.com
Cohen Rosenthal & Kramer LLP
3208 Clinton Avenue
Cleveland, Ohio 44113
216-815-9500 [Telephone and Facsimile]

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **JOSEPH D. MATEER,** | ) | |
| **CHRISTOPHER BRANCHCOMB,** | ) | |
| and **KATHARINE JOHNSON**, *On* | ) | **CASE NO. 1:22-CV-00740** |
| *behalf of themselves and all others* | ) | |
| *similarly situated,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PELOTON INTERACTIVE, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**CLASS SETTLEMENT AGREEMENT AND RELEASE**

This Class Settlement Agreement and Release ("**Agreement**") is entered into by and between Plaintiffs Joseph D. Mateer, Christopher Branchcomb, and Katharine Johnson (collectively, the "**Named Plaintiffs**"), individually and on behalf of the classes of individuals that they seek to represent, as further defined below (the "**Plaintiff Classes**"), on the one hand, and Defendant Peloton Interactive, Inc. ("**Peloton**" or "**Defendant**"), on the other hand (collectively, the "**Parties**").

The Parties do hereby agree to take all steps necessary and appropriate to obtain entry of a Final Approval Order (as defined below) and Final Judgment, in consideration for: (a) contribution by Defendant of the payments described herein, subject to the terms, conditions, and limitations of this Agreement; (b) the release and dismissal with prejudice of all claims by Named Plaintiffs and the members of the Plaintiff Classes that have been asserted in this Action, (c) execution of general releases by Named Plaintiffs; and (d) other consideration as set forth herein.

**Page 1**

DocuSign Envelope ID: 23157B50-72D5-45C5-B418-0FD4F44F0EA6

This settlement was reached pursuant to extensive negotiations between the Parties over the course of this Action, including a full-day mediation conducted before Susan N. Eisenberg on December 8, 2022, after which the Parties executed a Mediation Term Sheet - Memorandum of Understanding on January 23, 2023.

WHEREAS, Named Plaintiff Mateer filed this action on January 28, 2022, asserting individual and class-wide wage and hour claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("**FLSA**"), and violations of New York Labor Law Articles 6 and 19 ("**NYLL**");

WHEREAS, Named Plaintiffs filed the operative Second Amended Complaint in this Action on July 30, 2022, asserting individual and class-wide wage and hour claims under the FLSA, violations of NYLL, violations of Pennsylvania's Wage Payment and Collection Law, and violations of the Pennsylvania Minimum Wage Act;

WHEREAS, Named Plaintiffs purported to bring claims on behalf of themselves and other allegedly similarly situated current and former employees of Defendant who are or were employed within the applicable statute of limitations period(s), either as collective actions pursuant to 29 U.S.C. § 216(b), or purported class actions pursuant to Fed. R. Civ. P. 23 or analogous state rules or both;

WHEREAS, Peloton expressly denies that it has committed any wrongdoing or violated any state or federal laws pertaining to payment of wages or hours worked (and all state law notice requirements thereto), has vigorously disputed the claims asserted in this Action, and asserts that it has strong and meritorious defenses to the claims in this Action;

WHEREAS, Plaintiffs assert that their claims are valid and meritorious.  Plaintiffs also maintain that their respective claims are ideally suited for final FLSA and class certification under Rule 23 of the Federal Rules of Civil Procedure.  However, they acknowledge the cost to

advance the litigation of a nationwide FLSA Collective and pendant Rule 23 Class Actions against Peloton through trial and possible appeals and the uncertainty attendant therewith.

WHEREAS, this Agreement is the culmination of nearly a year of litigation between the Parties related to these claims;

WHEREAS, the Parties have engaged in extensive written and document discovery in the litigation of this Action;

WHEREAS, based on Peloton's asserted defenses and pending motion to dismiss/transfer, the uncertainty of the outcome of the litigation, and the expense and delay associated with continued litigation, including but not limited to additional discovery, briefing related to decertification of the FLSA collective actions, and class certification of Rule 23 state-law classes, Named Plaintiffs and Plaintiffs' Counsel (as defined below) believe that settlement with Peloton on the terms set forth in this Agreement is fair, reasonable and adequate and is in the best interests of Named Plaintiffs and the members of the Plaintiff Classes;

WHEREAS, Plaintiffs maintain the merits of their causes of action and the suitability of this matter for class certification and FLSA collective treatment and, whereas, Peloton denies all liability or wrongdoing with respect to any allegations or claims raised in this Action, but to avoid the costs of continued litigation and in consideration for the dismissal of all pending claims raised by Named Plaintiffs and/or members of the Plaintiff Classes, as well as the releases signed by Named Plaintiffs and other consideration described herein, Peloton agrees to make the payments described herein;

WHEREAS, in order to avoid the expense and burdens of further litigation, the Parties mutually desire to resolve any and all causes of action, claims or demands based on putative violations of the FLSA as well as any state or local law (both statutory and common law) related

or pertaining to hours worked or payment of wages (and all state law notice requirements

thereto), including without limitation all claims that were asserted or could have been asserted in

this Action based upon the allegations in it, regarding events that occurred or are alleged to have

occurred, by current and former employees of Defendant who are or were employed within the

applicable statute of limitations period(s) or who filed a valid consent to join this action; and

WHEREAS, Defendant identified the Class Members based upon Defendant's review of

its employment records and provided that information to Plaintiffs, and Plaintiffs have relied upon

the accuracy of that information.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual

promises hereinafter set forth, the Parties agree as follows:

## 1.    **<u>DEFINITIONS</u>**

As used in all parts of this Agreement, the following terms have the meanings set out below:

1.1.    **Action.**  "Action" means this lawsuit, *Mateer et al. v. Peloton Interactive, Inc.*, Case No. 1:22-cv-00740 filed in the United States District Court for the Southern District of New York.

1.2.    **Agreement.**  "Agreement" means this Settlement Agreement, and all exhibits and attachments hereto.

1.3.    **Class Counsel.**  Plaintiffs' Counsel, as defined below, subject to appointment by the Court pursuant Section 2.2 of this Agreement.

1.4.    **Class Member.**  "Class Member" means any person who is a member of any of the State Settlement Classes, as defined below.

1.5.    **Court.**  "Court" means the United States District Court for the Southern District of New York.

1.6.    **Final Approval Hearing.**  "Final Approval Hearing" means the Court's hearing following the Settlement Administrator's work to locate and send Notices to all Class Members and FLSA Opt-Ins, determine the amount payable to each Settling Class Member and FLSA Opt-In, and perform other settlement-related administrative tasks, for the purpose of determining the fairness and reasonableness of the Agreement and enter the Final Approval

Order. The hearing shall be set by the Court to take place at the Court's convenience, but at least thirty (30) calendar days after the Response Deadline.

1.7. **Final Approval Order.** "Final Approval Order" means a final order issued by the Court fully and finally approving the Agreement, including with respect to Federal Rule of Civil Procedure 23, and dismissing with prejudice all claims encompassed by the Agreement.

1.8. **Final Approval Order Effective Date**. "Final Approval Order Effective Date" or "Effective Date" means the date by which the Final Approval Order becomes final. For purposes of this paragraph, the Final Approval Order becomes effective upon the latter of: (1) the day after expiration of the time for appeal from the Court's Final Approval Order; or (2) if a timely appeal from the Final Approval Order is filed, the day after the final resolution of the appeal (including any requests for rehearing and/or petitions for writ of certiorari) and/or the expiration of any time period for any further appeal or judicial review, resulting in the final judicial approval of the Agreement and dismissal with prejudice of the Action.

1.9. **FLSA Opt-Ins.** "FLSA Opt-Ins" means the individuals (including Named Plaintiffs) who filed valid Opt-In forms in the Action after the Court conditionally certified an FLSA collective on July 13, 2022 (ECF No. 61). The FLSA Opt-Ins are listed in Exhibit A.

1.10. **FLSA ISR Collective.** "FLSA ISR Collective" means all FLSA Opt-Ins who filed valid Opt-In forms in the Action to join the FLSA collective conditionally certified by the Court on July 13, 2022 (ECF No. 61), consisting of former and current employees who worked for Peloton as Inside Sales Representatives, or those who performed substantially similar duties to ISRs (namely, Account Executives, Seasonal Account Executives, Inside Sales Representatives, Inside Sales Team Leads, Account Associates, Account Associate Leads, and Supervisors, Inside Sales) (collectively, "ISRs"), who allegedly worked more than forty hours in one or more workweeks of their employment, and who were not paid overtime for all hours worked at the statutorily required rate of one and one-half times their regular rate of pay, at any time between January 27, 2019, and July 12, 2022.

1.11. **FLSA Showroom Sales Personnel Collective.** "FLSA Showroom Sales Personnel Collective" means all FLSA Opt-Ins who filed valid Opt-In forms in the Action after the Court conditionally certified an FLSA collective on July 13, 2022 (ECF No. 61) to opt into the collective of former and current employees who worked for Peloton as Showroom Sales Personnel, who allegedly worked more than forty hours in one or more workweeks of their employment, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one and one-half times their regular rate of pay, at any time between January 27, 2019, and July 12, 2022.

1.12. **FLSA Collectives.** "FLSA Collectives" means the FLSA ISR Collective and FLSA Showroom Sales Personnel Collective.

1.13. **Gross Settlement Amount.** "Gross Settlement Amount" means Two Million Five Hundred Thousand Dollars and Zero Cents ($2,500,000.00). This represents the maximum amount that Peloton can be required to pay under this Agreement for any purpose, except

DocuSign Envelope ID: 23157B50-73D5-45C5-B418-0FD4F44F0EA6

that Peloton also will bear responsibility for applicable employer-side payroll taxes on the portions of Individual Settlement Amounts that are designated as wages.

1.14. **Individual Settlement Amount.** "Individual Settlement Amount" means the gross amount paid to a Named Plaintiff, FLSA Opt-In, or Settling Class Member out of the Net Settlement Fund, exclusive of any Incentive Awards, prior to any applicable tax withholdings or deductions.

1.15. **Incentive Award.** "Incentive Award" means any additional amount of the Settlement Fund allocated to a particular FLSA Opt-In or Settling Class Member as a consequence of serving as a Named Plaintiff.

1.16. **Last Known Address.** "Last Known Address" means the most recently recorded mailing address(es) for a Class Member or FLSA Opt-In as reflected in Defendant's records.

1.17. **Named Plaintiffs**. "Named Plaintiffs" means Joseph D. Mateer, Christopher Branchcomb, and Katharine Johnson.

1.18. **Net Settlement Fund.** "Net Settlement Fund" means the amount of money remaining after the Settlement Fund is reduced by the following amounts: (x) Plaintiffs' Counsel's attorneys' fees up to $833,250, and costs up to $100,000, subject to Court approval; and (y) Incentive Awards to Named Plaintiffs, subject to Court approval.

1.19. **Notice.** "Notice" means the notice substantially in the form attached hereto as Exhibit B subject to Court approval and associated response forms, which the Settlement Administrator will mail, via first-class U.S. mail to each FLSA Opt-In and Class Member to explain the terms of the Settlement, including the procedure for objecting to or opting out of the Settlement.

1.20. **Parties**. "Parties" means Peloton, Named Plaintiffs, FLSA Opt-ins, and the Class Members.

1.21. **Peloton.** "Peloton" means Defendant Peloton Interactive, Inc.

1.22. **Peloton's Counsel.** "Peloton's Counsel" means Gibson, Dunn & Crutcher LLP.

1.23. **Peloton Releasees.** "Peloton Releasees" means Peloton and any and all of its current or former parents, members, partners, subsidiaries, divisions, affiliates, related entities, shareholders, employee benefit and/or pension plans or funds, successors, assigns, trustees, directors, employees, agents, representatives, insurers and attorneys, and any and all of their respective past and present officers, representatives, attorneys, fiduciaries, agents, predecessors, administrators, and assigns (whether acting as agents for Peloton, its affiliates, and/or related entities, or in their individual capacities).

1.24. **Plaintiffs' Counsel**. "Plaintiffs' Counsel" means Cohen Rosenthal & Kramer LLP and Law Office of J.R. Howell.

**1.25.** **Plaintiff Classes**. "Plaintiff Classes" means the FLSA Collectives and the State Settlement Classes.

**1.26.** **Preliminary Approval Date.** "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

**1.27.** **Preliminary Approval Order.** "Preliminary Approval Order" means the Court's Order granting preliminary approval of the terms contained in this Agreement. The Parties will submit a draft order, entitled Order Granting Preliminary Approval of Class Settlement for the Court's review and approval.

**1.28.** **Putative State Law Class Claims**. "Putative State Law Class Claims" means the state law claims in this Action and the Rule 23 Actions alleged by Named Plaintiffs on behalf of unnamed putative class members pursuant to Federal Rule of Civil Procedure 23, including the State Settlement Classes, identified below.

**1.29.** **Reasonable Address Verification Measure.** "Reasonable Address Verification Measure" means the utilization of the National Change of Address Database maintained by the United States Postal Service to review the accuracy of and, if possible, to update a Last Known Address.

**1.30.** **Response Deadline.** "Response Deadline" means thirty (30) calendar days from the date the Settlement Administrator mails the Notice to FLSA Opt-Ins and Class Members, by which date FLSA Opt-Ins and Class Members must postmark or otherwise submit written notice of their intent to opt-out of the Agreement and/or a written notice of objection to the Agreement, as applicable.

**1.31.** **Rule 23 New York State Settlement Class.** "Rule 23 New York State Settlement Class" means all former and current employees who worked for Peloton as ISRs, and who allegedly worked more than forty hours in one or more workweeks of their employment in the state of New York, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2016, and the date Plaintiffs' Counsel signs this Agreement.

**1.32.** **Rule 23 Pennsylvania State Settlement Class.** "Rule 23 Pennsylvania State Settlement Class" means all former and current employees who worked for Peloton as non-exempt Showroom Sales Personnel, who allegedly worked more than forty hours in one or more workweeks of their employment in the state of Pennsylvania, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2019, and the date Plaintiffs' Counsel signs this Agreement.

**1.33.** **Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.** "Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class" means all current and former employees who worked for Peloton in the state of New York from January 27, 2016 through December 31, 2020, excluding those current and former employees who have released claims against Peloton under the NYLL.

DocuSign Envelope ID: 23157B50-73D5-45C6-B418-0FD4F44F0EA6

**1.34. Settlement.** "Settlement" means the agreement embodied by this Agreement.

**1.35. Settlement Payment.** "Settlement Payment" means any payment made pursuant to this Agreement.

**1.36. Settlement Administration Costs.** "Settlement Administration Costs" means the aggregate costs incurred by the Settlement Administrator in administering the Settlement, which is estimated at $25,659.96. The aggregate costs include an amount reserved to complete the Notice and an amount reserved to complete the settlement administration after the initial Individual Settlement Amount payments are distributed.

**1.37. Settlement Administrator.** "Settlement Administrator" means Simpluris, the non-Party entity responsible for settlement administration tasks, including: holding the Settlement Fund in escrow; making disbursements from the Settlement Fund pursuant to the Agreement, the Final Approval Order, and all other applicable Court orders; making any necessary notice or mailings to FLSA Opt-Ins, Class Members, or to government authorities under the Class Action Fairness Act; issuing all required federal and state tax forms relating to disbursements from the Settlement Fund; and performing any other services as required under this Agreement or by order of the Court or requested by the Parties.

**1.38. Settlement Fund.** "Settlement Fund" means the FDIC insured interest-bearing account(s) created and held by the Settlement Administrator.

**1.39. Settling Class Members.** "Settling Class Members" means any member of any of the State Settlement Classes who does not exercise his or her right to "opt out" of his or her respective State Settlement Classes within the time period in the Notice.

**1.40. Showroom Sales Personnel.** "Showroom Sales Personnel" means former and current employees who worked for Peloton during the relevant time periods as a Sales Specialist, Seasonal Sales Specialist, or Assistant Showroom Manager.

**1.41. State Settlement Classes.** "State Settlement Classes" means the Rule 23 New York State Settlement Class, Rule 23 Pennsylvania State Settlement Class, and Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

## 2. <u>SETTLEMENT CLASS CERTIFICATION AND RELEASES</u>

**2.1. Settlement Classes.** Solely for settlement purposes, the Parties agree to seek certification by the Court of the FLSA Collectives as collective actions pursuant to 29 U.S.C. § 216(b), and of the State Settlement Classes as Federal Rule of Civil Procedure 23 classes.

**2.2. Class Counsel.** The Court shall appoint Plaintiffs' Counsel as Class Counsel for the Plaintiff Classes.

**2.3.    Release Of Claims By FLSA Opt-Ins and Settling Class Members**.

(a)    As of the Effective Date, the FLSA Opt-Ins, including Named Plaintiffs, release the Peloton Releasees from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with compensation for any work performed for Defendant, including, but not limited to, claims for overtime, travel time, unreported time, reported time, work performed in the United States, work performed outside the United States, and the causes of action asserted, or which could have been asserted, in the Action, as well as any other causes of action arising under the FLSA, the New York Labor Law, the Pennsylvania Wage Payment and Collection Law, and the Pennsylvania Minimum Wage Act, and any other applicable federal, state, local, or other wage and hour laws (the "**FLSA Opt-In Released Claims**").

(b)    As of the Effective Date, the Rule 23 New York State Settlement Class Members, including Plaintiff Mateer, release the Peloton Releasees from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with compensation for any work performed for Defendant, including, but not limited to, claims for overtime, travel time, unreported time, reported time, work performed in the United States, work performed outside the United States, and the causes of action asserted, or which could have been asserted, in the Action, as well as any other causes of action arising under the FLSA, the New York Labor Law, and any other applicable federal, state, local, or other wage and hour laws (the "**Rule 23 New York Released Claims**").

(c)    As of the Effective Date, the Rule 23 Pennsylvania State Settlement Class Members, including the Plaintiff Johnson, release the Peloton Releasees from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with compensation for any work performed for Defendant, including, but not limited to, claims for overtime, travel time, unreported time, reported time, work performed in the United States, work performed outside the United States, and the causes of action asserted, or which could have been asserted, in the Action, as well as any other causes of action arising under the FLSA, the Pennsylvania Wage Payment and Collection Law, the Pennsylvania Minimum Wage Act, and any other applicable federal, state, local, or other wage and hour laws (the "**Rule 23 Pennsylvania Released Claims**").

(d)    As of the Effective Date, the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members, including Named Plaintiff Mateer, release the Peloton Releasees from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with the New York Wage Theft Prevention Act, NYLL §195(1) (the "**Initial Hire Notice and Wage Statement Released Claims**").

(e)     The FLSA Opt-In Released Claims, Rule 23 New York Released Claims, Rule 23 Pennsylvania Released Claims, and Initial Hire Notice and Wage Statement Released Claims are, collectively, the "Released Claims".

(f)     The Released Claims include claims for economic damages, non-economic damages, restitution, penalties, liquidated damages, or attorneys' fees or costs.

(g)     For the avoidance of doubt, the Released Claims include any unknown claims that FLSA Opt-Ins and Settling Class Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Peloton Releasees.   Plaintiffs and Class Members hereby expressly, knowingly, and voluntarily waive and relinquish any and all rights and benefits afforded by California Civil Code § 1542 (and under other statutes or common law principles of similar effect) as to any Released Claims.  Section 1542 reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The FLSA Opt-Ins and Settling Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever settled and released any and all of the Released Claims (based on their respective State Settlement Classes), whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts regarding the Released Claims.

(h)     The Released Claims shall also include any claims that may now or hereafter arise relating to the administration of this Agreement.   Defendant shall have no responsibility for, interest in, or liability whatsoever with respect to the administration of this Agreement or disbursement of the Settlement Fund, including without limitation the determination, administration, calculation or payment of Individual Settlement Amounts, the payment or withholding of taxes in connection with the Settlement Payments, or any losses incurred in connection with any of the foregoing.

(i) The FLSA Opt-Ins and Settling Class Members agree not to sue or otherwise make a claim against any of the Peloton Releasees that is any way related to the Released Claims (based on their respective State Settlement Classes).

(j) Nothing in this Agreement will be considered a waiver or release of any claims by the FLSA Opt-Ins or Settling Class Members that may arise after the Effective Date.

(k) Class Members who do not exercise the right to "opt out" of a State Settlement Class within the time specified in the Notice, agree to release the Peloton Releasees from the Released Claims, regardless of whether they receive or take the steps necessary to obtain the Individual Settlement Amounts provided by the Settlement Administrator from the Settlement Fund.

**2.4.    General Release Of Claims By Named Plaintiffs.**

(a) In addition to the releases in Paragraph 2.3, Named Plaintiffs (but not the FLSA Opt-Ins who are not Named Plaintiffs) each agree to fully and forever discharge and release each and every one of the Peloton Releasees from any and all claims that they have or may have against the Peloton Releasees, whether known or unknown, from the beginning of time through the date of the Final Approval Order, including, but not limited to, all claims that were or could have been asserted in the Action.  This includes, but is not limited to, any claims for wages (including, but not limited to, overtime, gap time, straight time, and the calculation of the regular rate of pay), bonuses, employment benefits (including claims under continuing employee benefit plans or claims under the Employee Retirement Income Security Act of 1974 (ERISA)), stock options, restricted stock units, damages of any kind whatsoever, arising out of any common law torts, any contracts, express or implied, any covenant of good faith and fair dealing, express or implied, any theory of wrongful discharge, any theory of negligence, any theory of retaliation, any theory of discrimination or harassment in any form, any legal restriction on Peloton's right to terminate employees, or any federal, state, or other governmental statute, regulation or ordinance, including, without limitation, Title VII of the Civil Rights Act of 1964; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; The Equal Pay Act; the Genetic Information Nondiscrimination Act of 2008; The Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; The Consolidated Omnibus Budget Reconciliation Act; The Americans with Disabilities Act of 1990; The Fair Credit Reporting Act; The Occupational Safety and Health Act; The Rehabilitation Act; The Federal Worker Adjustment and Retraining Notification Act; The Family and Medical Leave Act and other federal, state and local leave laws; The Federal False Claims Act; the National Labor Relations Act; any whistleblower protection law, including but not limited to any claims under the Sarbanes-Oxley Act of 2002 or the Dodd-Frank Wall Street Reform and Consumer Protection Act; New York State Human Rights Law, New York Executive Law; New York Civil Rights Law; New York Correction Law Article 23-A; New York Worker's Compensation Law; New York City Human Rights Law; New York City Local Civil Rights Restoration

DocuSign Envelope ID: 23157B50-73D5-45C5-B418-0F54F44F0EA6

Act of 2005; New York City Administrative Code; New York Minimum Wage Act; New York City Earned Safe and Sick Time Act; New York Worker Adjustment Retraining and Notification Act; The New York Paid Family Leave Law; The New York laws for jury duty, voting, bone marrow and blood donation, and military family leave; The New York Fair Credit Reporting Act; retaliation provisions of the New York Workers' Compensation law; Pennsylvania Human Relations Act; Pennsylvania Whistleblower Law; Pennsylvania Minimum Wage Act; Pennsylvania Wage Payment and Collection law; the Texas Labor Code (including without limitation the Texas Payday Law, the Texas Anti-Retaliation Act, any employment discrimination claims pursuant to Chapter 21 of the Texas Labor Code, the statutory provisions regarding retaliation/discrimination under the Texas Workers' Compensation Act, and the Texas Commission on Human Rights Act); the District of Columbia Human Rights Act; the District of Columbia Family and Medical Leave Act; the District of Columbia Accrued Sick and Safe Leave Act; the District of Columbia Minimum Wage Act; the District of Columbia Payment and Collection of Wages Act; the statutory provisions regarding retaliation/discrimination under the District of Columbia Workers' Compensation Act; or any other statutory or common law limitation or regulation of the employment relationship of federal, state, or other government law.  For the avoidance of doubt, Named Plaintiffs release any and all claims for and rights to economic damages, non-economic damages, restitution, penalties, liquidated damages, and attorneys' fees or costs.

(b)     Named Plaintiffs shall not be prohibited from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the National Labor Relations Board ("**NLRB**"), or from exercising rights under Section 7 of the National Labor Relations Act ("**NLRA**").  In addition, Named Plaintiffs shall not be prohibited from filing a charge or complaint with, or from participating in an investigation or proceeding conducted by, the Occupational Health and Safety Administration ("**OSHA**"), the Equal Employment Opportunity Commission ("**EEOC**"), or any other federal, state, or local agency charged with law enforcement.  In addition, nothing in this Agreement is intended to or shall prevent, impede, or interfere with Named Plaintiffs' non-waivable rights, without prior notice to Peloton, to provide information to the government or engage in any other future activity protected under whistleblower statutes, or to receive and fully retain a monetary award from a government-administered whistleblower award program for providing information directly to a government agency.  By agreeing to this Agreement, however, Named Plaintiffs are waiving any right to individual relief based on claims asserted in such a charge or complaint, except where such a waiver of individual relief is prohibited.  Named Plaintiffs hereby release and forever waive any private right to sue, and any associated applicable remedies which may be issued by any federal, state, or local agency.

(c)     If it is determined that any claim covered by this general release of claims cannot be waived as a matter of law, Named Plaintiffs expressly agree that this general release of claims will nevertheless remain valid and fully enforceable as to the remaining released claims.

**2.5.**   **Releases And Dismissals.**

    (a)   **Dismissal Of Individual Claims.**   Each Named Plaintiff, FLSA Opt-In, and Settling Class Member agrees to dismiss *with prejudice* his or her individual claims pending before the Court in the Action.   As a result, this Action will be dismissed *with prejudice*.   Each Named Plaintiff also agrees to dismiss *with prejudice* any other claim or suit pending before any court or tribunal against the Peloton Releasees, except as otherwise contemplated by Section 2.4(b).

    (b)   **Dismissal Of Class Claims.**   In addition to their individual claims, Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members agree to dismiss with prejudice the Putative State Law Class Claims they have brought under Federal Rule of Civil Procedure 23.

## 3.   <u>RELIEF AND BENEFITS</u>

**3.1.**   **Acknowledgement Of Settlement; No Admission Of Liability.**   Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members acknowledge and agree that this Agreement is a compromise and settlement of disputed claims and that neither the execution nor the terms hereof may be construed as an admission of liability on Peloton's part with respect to any disputed matter, such liability being expressly denied.

**3.2.**   **Gross Settlement Amount.**   In exchange for the releases and waivers of claims described herein, Peloton will pay a Gross Settlement Amount of Two Million Five Hundred Thousand Dollars and Zero Cents ($2,500,000.00).   This represents the maximum amount that Peloton can be required to pay under this Agreement for any purpose, except that Peloton also will bear responsibility for applicable employer-side payroll taxes on portions of Individual Settlement Amounts that are designated as wages.

**3.3.**   **Allocation of Gross Settlement Amount**

    (a)   **Attorneys' Fees And Costs**

        (i)   Within fourteen (14) calendar days prior to the Final Approval Hearing, or at such other time as requested by the Court, Plaintiffs' Counsel shall file a motion for attorneys' fees and costs.   Plaintiffs' Counsel represent and agree that (x) they will seek no more than 33.33% of the Settlement Fund ($833,250.00) (the "**Fees Award**") in attorneys' fees; and (y) they will seek reimbursement of reasonable costs incurred up to the Court's entry of the Final Approval Order, including the Settlement Administration Costs, which Plaintiffs' counsel represents shall not exceed one hundred thousand dollars and zero cents ($100,000.00) (the "**Costs**").

        (ii)   The Parties agree that the Fees Award and Costs shall be paid out of the Settlement Fund prior to the distribution of any monetary relief to the Parties.   Defendant agrees that it will not oppose any petition for an award of attorneys' fees and costs up to and including the amounts set forth above.

(iii)    Except as provided for herein, Plaintiffs' Counsel shall not be permitted to petition the Court for, or accept, any additional payments for fees, costs, or interest, and the Fees Award and Costs shall be for all claims for attorneys' fees and costs past, present, and future incurred in the Action. Payment of the Fees Award and Costs to Plaintiffs' Counsel shall constitute full satisfaction of the obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or costs in this Action incurred by any attorney on behalf of Named Plaintiffs, the FLSA Opt-Ins, and/or the Settling Class Members. Furthermore, said payment shall relieve Defendant, the Settlement Administrator, the Settlement Fund, and Peloton's Counsel of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses and/or costs to which any of them may claim to be entitled on behalf of Named Plaintiffs and/or the FLSA Opt-Ins and/or the Settling Class Members and/or in connection with the Action.

(iv)    Plaintiffs' Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of this Agreement.

(v)    A total award of attorneys' fees and costs of less than the amount specified in Paragraph 3.3(a)(i), whatever the cause, is not a basis for voiding, rescinding, or terminating this Agreement.

(b)    **Incentive Awards.**

(i)    Plaintiffs' Counsel shall seek, and Defendant will not oppose, "Incentive Awards" to each Named Plaintiff in recognition of their substantial services performed for the benefit of the FLSA Opt-Ins and Settling Class Members. These Incentive Awards shall be in addition to the Individual Settlement Amounts received by Named Plaintiffs from the Net Settlement Fund, determined in accordance with the allocation methodology set forth in Section 3.4. Defendant will not oppose Incentive Awards of $25,000.00 to each of Plaintiffs Mateer and Johnson, and $10,000.00 to Plaintiff Branchcomb.

(c)    **Net Settlement Fund.**

(i)    As defined above, the Net Settlement Fund shall constitute all Settlement Funds remaining after deductions for the payment of the Fees Award, Costs, and Incentive Awards.

3.4.    **Net Settlement Fund Allocation.** Individual Settlement Amounts for Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members shall be computed from the Net Settlement Fund as follows:

(a)    First, the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class, as defined above, will be allocated $200,000.00 from the Net Settlement

Fund, to be divided equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

(b)   Second, fifteen percent (15%) of the remaining Net Settlement Fund, will be divided on a pro rata basis across the Named Plaintiffs, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members based on their number of weeks worked and average overtime rate during the relevant time periods.

(c)   Third, the remaining funds in the Net Settlement Fund will be divided on a pro rata basis across the Named Plaintiffs and FLSA Opt-Ins who worked in a qualifying position during the relevant periods based on their total number of weeks worked and overtime rates of pay, based on Peloton's records.

(d)   Fourth, because of differences in the volume of alleged off-shift work, greater commission payments, and increased likelihood of success on the merits, FLSA ISR Collective members allocation under section (c) shall be multiplied by a factor of three.

(e)   The calculations in (b) – (d) will result in each Named Plaintiffs, FLSA Opt-Ins, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members Individual Settlement Amounts.

(f)   The Parties note that 11 FLSA Opt-Ins are also Class Members. For purposes of Net Settlement Fund allocation, individuals who are a member of the Rule 23 New York State Settlement Class or the Rule 23 Pennsylvania State Settlement Class will not have any workweeks double counted. Rather, any workweeks during which such individuals met the definition of a State Settlement Class or FLSA Collective shall be counted once both for the purpose of calculating the individual's Individual Settlement Amount.

(g)   Defendant's records of weeks worked for each Named Plaintiff, FLSA Opt-In, Rule 23 New York State Settlement Class Member, and Rule 23 Pennsylvania State Settlement Class Member shall be dispositive.

(h)   The Settlement Administrator will calculate the Individual Settlement Amounts.

**3.5.**   **No Reversion.**   No amounts paid into the Settlement Fund by Peloton will revert to Peloton.

**4.**   **NOTICE, OPT-OUT, OBJECTIONS, AND SETTLEMENT APPROVAL**

**4.1.**   **Preliminary Settlement Approval**

(a)   As soon as practicable after the Parties execute this Agreement, the Parties will jointly present this Agreement to the Court, and Named Plaintiffs shall seek preliminary settlement approval of this Agreement. Via this submission, and appropriate accompanying documentation, Named Plaintiffs, through Plaintiffs'

DocuSign Envelope ID: 23157B50-73D5-45C5-B418-0FD4F44F0EA6

Counsel, will request that the Court: (i) enter the Preliminary Approval Order approving the terms of this Agreement as fair, reasonable and adequate and in the best interests of Named Plaintiffs, FLSA Opt-Ins and the Class Members; (ii) approve the Notice; (iii) authorize the mailing of the Notices to the respective Class Members and FLSA Opt-Ins; (iv) appoint a Settlement Administrator; (v) set the Response Deadline; and (vi) schedule a Final Approval Hearing.

(b)     Plaintiffs' Counsel shall provide Peloton's Counsel the draft motion for preliminary approval with sufficient time for Defendant to review before it is filed (at least seven (7) calendar days).

**4.2.    Notice to Class Members and FLSA Opt-Ins.**

(a)     Not later than twenty (20) calendar days after the Court has issued the Preliminary Approval Order, Defendant shall disclose the names, Last Known Addresses, last known email addresses, and dates of employment for Class Members and FLSA Opt-Ins to Class Counsel and to the Settlement Administrator (the "**Class Lists**").

(b)     Prior to mailing the Notice to each Class Member and FLSA Opt-In, the Settlement Administrator shall undertake a Reasonable Address Verification Measure to ascertain the current accuracy of the Last Known Address of each Class Member and FLSA Opt-In.  To the extent this process yields an updated address, that updated address shall replace the Last Known Address and be treated as the new Last Known Address for purposes of this Agreement and for subsequent mailings related thereto.

(c)     No later than fourteen (14) calendar days after receipt of the Class Lists, the Settlement Administrator will mail the Notice (attached as Exhibit B) to all Class Members and FLSA Opt-Ins via first-class U.S. Mail, postage prepaid and return service requested to his or her Last Known Address.  The Notice shall bear the Settlement Administrator's mailing address as the return-mail address.  The Notice will include an indication it is a "Court Approved Settlement Notice authorized by the U.S. District Court for the Southern District of New York" and may also include a bar code.

(d)     No later than fourteen (14) calendar days after receipt of the Class Lists, the Settlement Administrator will email the Notice (attached as Exhibit B) to all FLSA Opt-Ins and Class Members at his or her last known email address.  The Notice shall bear the Settlement Administrator's mailing address as the return-mail address.  The Notice will include an indication it is a "Court Approved Settlement Notice authorized by the U.S. District Court for the Southern District of New York" and may also include a bar code.

**4.3.    Notices Returned as Undeliverable**

(a)     In the event that a Notice is returned to the Settlement Administrator by the United States Postal Service, but with a forwarding address for the recipient, the Settlement Administrator shall re-mail the Notice to that address, and the Notice will be

DocuSign Envelope ID: 23157B50-72D5-45C5-B418-0FD4F44F0EA6

deemed mailed as of that date (and the forwarding address shall be deemed the Last Known Address for that Class Member or FLSA Opt-In).

(b)    In the event that a Notice is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator will use publicly available databases as practicable to update those Class Members' or FLSA Opt-Ins' addresses and will cause the Notice to be re-mailed by the Settlement Administrator to such Class Members or FLSA Opt-In who can be located.

(c)    In either event, the Notice shall be deemed received once it is mailed for the second time, and the Class Member / FLSA Opt-In shall have up to and including ten (10) calendar days after the Response Deadline to request to opt out of the Settlement.

### 4.4. Website and Toll-Free Telephone Line

(a)    Not later than the date Notices are sent to all Class Members and FLSA Opt-Ins, the Settlement Administrator shall post a website containing information about the Settlement, including all relevant dates and pleadings.

(b)    The Settlement Administrator will establish and staff a toll-free telephone line that Class Members can use to contact the Settlement Administrator with questions about the Settlement or to change their addresses.

### 4.5. No Claims Process.

FLSA Opt-Ins and Class Members are not required to submit a claim form or other documentation of their claim in order to receive payment of their Individual Settlement Amount or any Incentive Award. Named Plaintiffs, however, must execute an individual release as provided for herein in order to receive their Individual Settlement Amount and Incentive Award.

### 4.6. Right to Opt-Out and Requests for Exclusion.

(a)    All Class Members will have the right to be excluded from, i.e., to "opt out" of, the State Settlement Classes. The Notice will clearly inform members of their right to "opt out" or exclude themselves from the Settlement. Class Members who wish to exercise this option must send, by first-class U.S. mail, written notice addressed to the Settlement Administrator that (1) indicates their name and address, (2) states that they desire to opt-out of the Settlement or otherwise does not want to participate in the Settlement, and (3) is signed by the Class Member (a "**Request for Exclusion**").

(b)    To be timely, a Request for Exclusion must be postmarked on or before the Response Deadline. Any Class Member who does not timely (as measured by the postmark on that individual's written notice) opt out of the Settlement by written notice directed to the Settlement Administrator and containing the requisite information shall remain a member of the State Settlement Class(es) and shall be bound by any orders of the Court about the Settlement or the State Settlement Class(es).

DocuSign Envelope ID: 23157B50-73D5-4E65-B418-0ED4E44F0EA6

(c)   If the Class Member's Request for Exclusion is defective as to the requirements listed herein, that Class Member will be given an opportunity to cure the defect(s). The Settlement Administrator will mail the Class Member a cure letter ("**Cure Letter**") within three (3) business days of receiving the defective submission to advise the Class Member that their submission is defective and that the defect must be cured to render the Request for Exclusion valid. The Class Member will have until the later of (x) the Response Deadline or (y) fifteen (15) calendar days from the date the Cure Letter is sent, to postmark, fax, or electronically submit a revised Request for Exclusion. If a Class Member responds to a Cure Letter by filing a defective Request for Exclusion, then the Settlement Administrator will have no further obligation to give notice of a need to cure. If the revised Request for Exclusion is not postmarked, received by fax, or electronically submitted within the later of (x) the Response Deadline or (y) fifteen (15) calendar days from the date of the Cure Letter, it will be deemed untimely and rejected.

(d)   The date of the postmark on the return mailing envelope or the applicable electronic timestamp for electronically submitted documents will be the exclusive means to determine whether a Request for Exclusion has been timely submitted.

(e)   Class Members or FLSA Opt-Ins who, for future reference and mailings from the Court or Settlement Administrator wish to change the name or address listed on the envelope in which the Notice was first mailed to them must fully complete the "Change of Name and/or Address Information" section on the Notice and submit it, per the instructions therein, to the Settlement Administrator. The address provided shall be deemed the Last Known Address for any such Class Member or FLSA Opt-In.

(f)   If more than 5% of Class Members validly and timely opt out of the Settlement, then Defendant may in its sole discretion exercise its right to void the Settlement, in which case this Agreement will be vacated, rescinded, cancelled, and annulled, and the Parties will return to the status quo ante as if they had not entered into this Settlement. In that event, the Settlement and all negotiations and proceedings related to the Settlement will be without prejudice of the rights of the Parties, and evidence of the Settlement, negotiations, and proceedings will be inadmissible and will not be discoverable. For the avoidance of doubt, this rescission includes the certification of the FLSA Collectives and State Settlement Classes for settlement purposes only.

### 4.7.   Objections

(a)   Any Class Members or FLSA Opt-Ins who wish to object to the Settlement must return to the Settlement Administrator a timely written statement of objection (the "**Objection**") no later than thirty (30) calendar days after the date the Settlement Administrator mails the Notice. The Objection must state (1) the case name and number; (2) the name, address, telephone number, and email address (if any) of the Class Member / FLSA Opt-In making the objection; (3) a statement of the objection(s) being asserted; (4) a detailed description of the facts and any legal

authorities underlying each objection; (5) a notice of intent to appear at the Final Approval Hearing, if the Class Member / FLSA Opt-In making the objection intends to appear; (6) a list of any witnesses the Class Member / FLSA Opt-In making the objection may call to testify at the Final Approval Hearing, whether in person, by deposition, or affidavit; and (7) a list of any exhibits, and copies of the same, which the objector may offer at the Final Approval Hearing. Any objection must be personally signed by the Class Member or FLSA Opt-In making the objection.

(b)  No member of the State Settlement Classes shall be entitled to contest in any way the approval of the terms and conditions of this Agreement or the Court's Final Approval Order except by filing and serving written objections in accordance with the provisions of this Agreement. Any member of the State Settlement Class(es) who fails to make an Objection in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objections, whether by appeal or otherwise, to the Settlement. Moreover, any member of the State Settlement Class(es) who fails to make an Objection in the manner specified above that states an intent to appear at the Final Approval Hearing shall not be permitted to appear and object at the Final Approval Hearing.

(c)  The Settlement Administrator shall provide any Objections to Peloton's Counsel and to Class Counsel within five (5) business days of receipt of same. Class Counsel shall file same with the Court at least seven (7) days before the Final Approval Hearing or as otherwise ordered by the Court.

**4.8.  Final Approval Hearing and Final Approval Order.**

(a)  The Parties agree to cooperate to work to schedule a Final Approval Hearing as soon as practicable. Within forty-five (45) calendar days of the expiration of the Response Deadline, the Parties shall submit a Motion for Final Approval to the Court which, among other things, shall identify the total number of FLSA Opt-Ins and Settling Class Members, detail the Individual Settlement Amounts that each Settling Class Member and FLSA Opt-In shall receive, and whether any Objections to the Settlement have been made. The Motion shall also include a report from the Settlement Administrator certifying that the Notice process has been completed in compliance with this Agreement and the Court's Preliminary Approval Order. In conjunction with this filing, the Parties shall present a proposed Final Approval Order and Judgment.

(b)  Plaintiffs' Counsel shall draft the Motion for Final Approval and provide Peloton's Counsel with sufficient opportunity to review the Motion before it is filed (at least seven (7) calendar days).

**4.9.  Stay Pending Appeal.**  In the event that an appeal is filed from the Court's Final Approval Order, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal.

DocuSign Envelope ID: 23157B50-73D5-45C5-B418-0F54F44F0EA6

**4.10.   If Settlement Is Not Approved.**

(a)   In the event that the Court (1) does not approve the Agreement as provided herein; (2) holds, at any stage, that any terms of the Settlement or this Agreement or any of the attached exhibits should be modified in any material way (as determined by each Party's reasonable and good faith judgment); (3) does not enter a Preliminary Approval Order; (4) does not enter a Final Approval Order; or (5) the Agreement does not become effective for any other reason, then the Parties may either jointly agree to accept the Settlement or this Agreement as judicially modified or work in good faith to modify the Agreement consistent with the Court's directive. Following any denial by any Court of approval of this settlement, if, after working in good faith to modify the Agreement consistent with the Court's directive, the Parties cannot modify the Agreement so as to obtain Court approval of the Settlement, either Party shall have the absolute discretionary right to terminate the Agreement by providing written notice to the Court, Class Counsel or Peloton's counsel (as applicable), and the Settlement Administrator.   Such notice of termination of the Agreement must be given within sixty (60) calendar days of receipt of the Court's decision denying the approval of this settlement.

(b)   If the Agreement is terminated pursuant to this Section, or if an appeal is filed and if the Settlement, this Agreement, or the Final Approval Order or its equivalent in all material respects are not in effect after the termination of all proceedings arising out of that appeal, then unless the Parties jointly agree otherwise, this Agreement shall become null and void, the Parties will return to the status quo ante.

## 5.   FUNDING AND ADMINISTRATION OF THE SETTLEMENT FUND

**5.1.   Settlement Administrator.**   Plaintiffs' Counsel has retained Simpluris, Inc. of Costa Mesa, California, as Settlement Administrator.  The Parties agree to cooperate with the Settlement Administrator and assist it in administering the Settlement.

**5.2.   Timing Of Payments By Peloton.**   Peloton will deposit 100% of the Gross Settlement Amount with the Settlement Administrator within twenty (20) calendar days after the Final Approval Order Effective Date.

**5.3.   Timing Of Payments To FLSA Opt-Ins.**   The Settlement Administrator will be responsible for calculating and mailing Settlement Payments to Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members.  The Settlement Administrator shall mail Settlement Payments to their Last Known Mailing Address (as updated, if applicable) pursuant to the timeline set forth below:

(a)   Initial payments to Named Plaintiffs, FLA Opt-Ins and Settling Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within twenty-one (21) calendar days of the Effective Date.

(b)   When a Named Plaintiff, FLSA Opt-In, or Settling Class Member does not negotiate their check, such check becomes void and the Named Plaintiff, FLSA Opt-In or Settling Class Member shall be deemed to have waived irrevocably any

right in or claim to the Settlement, and will remain subject to the terms of the Agreement.

(c)     All initial checks will expire one hundred and twenty (120) calendar days after they are issued and will state the expiration date on their faces.  If any such payment is returned by the U.S. Postal Service as undeliverable, or is uncashed or not negotiated before it expires, neither Defendant nor the Settlement Administrator nor Class Counsel shall have any further obligations to Named Plaintiffs, the FLSA Opt-Ins, or the Settling Class Members, except that: (A) For any check returned by the U.S. Postal Service with a forwarding address before the check's expiration date, the Settlement Administrator will re-mail the check to the forwarding address; and (B) If an individual contacts the Settlement Administrator or Class Counsel to request a replacement check before the initial check is negotiated, the Settlement Administrator will comply with that request by cancelling the initial check and issuing a replacement check.

(d)     The Parties agree that all Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members waive and abandon any ownership interest in any such undeliverable, returned, uncashed, or non-negotiated checks and further agree that no obligation has been generated or proven with respect to such undeliverable, returned, uncashed, or non-negotiated checks.

(e)     No person or entity shall have any claim against Defendant, Peloton's Counsel, Named Plaintiffs, Settling Class Members, Class Counsel, or the Settlement Administrator based on distributions and payments made in accordance with this Agreement.

(f)     After the initial 120-day period for negotiating checks, any unclaimed funds from the Net Settlement Fund shall be donated cy pres to the New York City Legal Aid Society.  Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members who fail to negotiate their Settlement Payments will be deemed to have waived any right in or claim to the Net Settlement Fund, but the Agreement will remain binding on them, including without limitation the Release of Claims.

(g)     Nothing herein shall be construed to prevent the Settlement Administrator or Class Counsel (through the Settlement Administrator) from contacting Settling Class Members to inform them of the expiration of the Settlement Payments.

(h)     The Settlement Administrator shall keep Class Counsel and Peloton's Counsel apprised (on a bi-weekly basis) of all distributions from the Settlement Fund and, upon completion of the administration of the Settlement, the Settlement Administrator shall provide written certification of such completion to the Court and counsel for the Parties.  The Settlement Administrator shall further provide to Class Counsel and Peloton's Counsel weekly status updates as to how many Notices have been returned undeliverable.

**5.4.    Timing Of Payments Of Fees Award And Costs.**  Within thirty (30) calendar days of the Final Approval Order Effective Date, the Settlement Administrator shall issue payment(s) from the Settlement Fund in the amounts ordered by the Court to Plaintiffs' Counsel.

**5.5.    Timing of Payments to the Settlement Administrator.**  The Settlement Administrator shall pay any Court approved Settlement Administration within thirty (30) calendar days of the Final Approval Order Effective Date.

**5.6.    Taxes and Tax Forms.**

(a)    The payments to Named Plaintiffs, FLSA Opt-Ins, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members are for back wages and liquidated damages and shall be reported by the Settlement Administrator as follows: fifty percent of all payments (other than the Incentive Awards to Named Plaintiffs referenced above) shall be reported as payment for back wages and reported on a Form W-2, and the remaining fifty percent (including the Incentive Awards to Named Plaintiffs referenced above) shall be reported on a Form 1099-MISC.  Peloton will be responsible for employer-side (and only employer-side) local, state, and federal taxes owed for these wages.

(b)    All payments to the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members for the Initial Hire Notice and Wage Statement Released Claims are for liquidated damages only and shall be reported by the Settlement Administrator on a Form 1099-MISC.

(c)    The Settlement Administrator shall be responsible for all applicable tax, withholding, and reporting obligations with respect to the Settlement Payments. The Settlement Administrator shall also be responsible for calculating all local, state, and federal taxes that Defendant may owe as a result of the payments to Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members ("**Required Employer Withholdings**").  Deductions from the Settlement Payments will be made for local, state, and federal taxes owed by Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members as a result of the payment.

(d)    To the extent that any forms must be filed or tax forms issued for the Settlement Fund pursuant to this Agreement, the Settlement Administrator will cause to be timely and properly filed and issued all tax returns and tax forms, if any, necessary with respect to the Settlement Fund and any and all payments therefrom.

**5.7.    Tax Liability.**  Peloton, Peloton's Counsel, and Class Counsel make no representations or warranties with regard to the tax consequences of the payments of the Settlement Payments.  If a government taxing authority determines that any federal, state, or local taxes on those payments or any penalties or assessments thereon are due, the recipient of the corresponding payment is solely responsible for satisfying such amount due.

# 6.    **ADDITIONAL PROVISIONS**

6.1.    **Cooperation.**  The Parties and their counsel agree not to take any action to encourage any FLSA Opt-In or Class Member to exclude themselves from, or object to, the Settlement provided for by this Agreement.  The Parties and their counsel agree to fully cooperate with one another to accomplish the terms of this Agreement, including but not limited to, executing such documents and taking such other actions as may be reasonably necessary to implement the terms of this Agreement, including all efforts contemplated by this Agreement and any other efforts that may become necessary or are ordered by the Court.

6.2.    **No Admission of Liability.**  By entering into this Agreement, Peloton does not admit any liability or wrongdoing and expressly denies the same.  The Parties understand and agree that this Agreement is being entered into by Peloton solely for the purpose of avoiding the time, cost, uncertainty and disruption associated with ongoing litigation and to settle all outstanding claims.   Neither the fact of, nor any provision contained in, this Agreement, nor the implementing documents or actions taken under them, nor Peloton's willingness to enter into this Agreement, nor the content or fact of any negotiations, communications, and discussions associated with the Settlement shall constitute or be construed in any way as an admission by or against Peloton or any of the Peloton Releasees of any fault, culpability, wrongdoing, violation of law, or liability whatsoever, the validity of any claim or fact alleged in this Action, or any infirmity of any defenses asserted by Peloton in this Action.

6.3.    **Agreement Not Evidence.**   Neither this Agreement nor any related documents, negotiations, statements, or Court proceedings may be construed as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to Peloton and the Peloton Releasees, or as a waiver by Peloton of any applicable defense to the merits of the claims asserted or to Named Plaintiffs' ability to maintain this Action as a class action, except that this Agreement is admissible at hearings necessary to obtain and implement Court approval of the Parties' Settlement or in hearings to enforce the terms of this Agreement or any related order of the Court.

6.4.    **Non-Entry Of Final Approval Order; Failure To Dismiss.**  If for any reason the Court does not enter a Final Approval Order, an individual claim is not dismissed, or if this Agreement is lawfully terminated for any other reason, Peloton reserves all of its defenses, rights, and remedies applicable to remaining claim(s), including, but not limited to, seeking decertification of the FLSA Collectives, opposing certification under Federal Rule of Civil Procedure 23, moving to dismiss, moving to transfer certain claims, moving for summary judgment, defending at a trial, filing motions, and pursuing appeals.  Likewise, Named Plaintiffs reserve all of their rights to assert their claims and seek all appropriate remedies.  Under such circumstances, Peloton's Counsel and Plaintiffs' Counsel shall not cite to or use this Agreement in this or any other judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

6.5.    **Settlement Modification.**  This Agreement may not be changed, altered, or modified except in a writing signed by the Parties.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.  The

Parties may agree by stipulation executed by their counsel to modify the exhibits to this Agreement to effectuate the purpose of this Agreement or to conform to guidance from the Court about the contents of such exhibits without the need to further amend this Agreement. A stipulation modifying the Settlement will be filed with the Court and subject to the Court's approval.

**6.6.    Confidentiality Of Agreement.**  The Parties shall not disclose the terms of this settlement publicly until the motion for Preliminary Approval is filed.

**6.7.    Publicity.**  Named Plaintiffs and Class Counsel agree that they will not proactively notify the press, respond to media inquiries, or otherwise comment to the press regarding the terms and conditions of this Agreement, which includes notifying any member of the media regarding the terms and conditions of the Agreement.  Nothing in this paragraph shall bar Class Counsel from answering Class Members' questions after issuance of Notice or in the administration of the settlement.

**6.8.    Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of laws principles thereof.

**6.9.    Consent To Continuing Jurisdiction And Forum Selection.**

(a)    The Court retains jurisdiction after entry of the Final Approval Order with respect to the interpretation, implementation, and enforcement of the terms of this Agreement, and all orders and judgments entered in connection therewith.  The Court is the exclusive venue for such actions.

(b)    The Parties acknowledge and agree that any action or proceeding arising in connection with this Agreement shall be resolved exclusively as provided in this Paragraph 6.9.  The aforementioned choices of jurisdiction and venue are intended by the Parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation or arbitration between the Parties with respect to or arising out of this Agreement in any jurisdiction or venue other than the applicable ones specified in this Paragraph.

**6.10.    Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties and supersedes any and all other agreements, understandings, negotiations, or discussions, whether oral or in writing, express or implied, between or among the Parties.  The Parties acknowledge that no other representations, inducements, promises, agreements, or warranties have been made to them or by them, or by anyone acting on their behalf, which are not embodied in this Agreement, that they have not executed this Agreement in reliance upon any such representation, inducement, promise, agreement, or warranty, and that no subsequent representation, inducement, promise, agreement, or warranty not contained in this Agreement, including, but not limited to, any purported supplements, modifications, waivers, or terminations of this Agreement, shall be valid or binding unless executed in writing by each of the Parties to this Agreement.

**6.11.    Materials Designated Confidential.**  Notwithstanding Paragraph 6.10, the Parties and their Counsel remain bound by all protective orders and confidentiality designations made

thereunder in the Action.  The Parties and their Counsel will return and/or destroy all covered materials within ninety (90) calendar days of dismissal of the Action consistent with the terms of those orders.

**6.12.    Agreement To Be Construed Fairly.**  The Parties represent and acknowledge that they and their respective counsel each had an opportunity to review and negotiate the terms of this Agreement.  This Agreement is to be construed fairly and not in favor of or against any Party, regardless of who drafted or participated in the drafting of its terms.  Any rule of construction that a document is to be construed against the drafting party shall not be applicable to this Agreement.

**6.13.    No Assignment.**  Each of the Parties to the Agreement represents and warrants that there has been no assignment or other transfer of any interest in the claims which he, she, they, or it has or may have that are being released herein, and each Party owns all claims, demands, and causes of action which it releases by this Agreement, free and clear from all liens, claims, and encumbrances.  Each Party shall hold harmless the other from any liability, claims, demands, damages, costs, expenses, and reasonable outside attorneys' fees incurred by the defending Party as a result of any such assignment or transfer contrary to the foregoing representation.

**6.14.    Authority To Enter Into Agreement.**  Each of the Parties represents and warrants that any person executing this Agreement on his, her, their, or its behalf has the full right and authority to enter into this Agreement on behalf of said Party, and has the full right and authority to execute this Agreement and to fully bind that Party to the terms and obligations of this Agreement.  Each of the persons signing this Agreement on behalf of the Parties hereto makes the same warranties referred to herein.

**6.15.    Successors And Assigns.**  The terms of this Agreement shall be binding upon the Parties and their agents, attorneys, employees, successors, assigns, and insurers.

**6.16.    Headings.**  The various headings used in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of the Agreement or any provision of it.

**6.17.    Severability.**  If any word, clause, phrase, sentence, or paragraph of this Agreement is declared void or unenforceable, such portion shall be considered independent of, and severable from, the remainder, the validity of which shall remain unaffected.

**6.18.    Signatures.**  Facsimile, email, and electronic signatures shall be deemed original signatures for all purposes and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.  The Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

<<remainder of page intentionally blank>>

**SIGNED AND AGREED TO:**

**Peloton:**

Dated: ___07/07/2023___

_____
Signature

Chief Legal Officer
_____
Print Name & Title

**Peloton's Counsel:**

Dated: _7/7/2023_____

_____
Signature

Harris M. Mufson
_____
Print Name

**Joseph D. Mateer (Individually, and for FLSA Opt-Ins and Settling Class Members):**

Dated: _____

_____
Signature

_____
Print Name

**Christopher Branchcomb (Individually, and for FLSA Opt-Ins and Settling Class Members):**

Dated: _____

_____
Signature

_____
Print Name

**Katharine Johnson (Individually, and for FLSA Opt-Ins and Settling Class Members):**

**SIGNED AND AGREED TO:**

**Peloton:**

Dated: _____

_____
Signature

_____
Print Name & Title

**Peloton's Counsel:**

Dated: _____

_____
Signature

_____
Print Name

**Joseph D. Mateer (Individually, and for FLSA Opt-Ins and Settling Class Members):**

Dated: Jul 6, 2023

_____
Joseph D Mateer (Jul 6, 2023 18:31 EDT)
Signature

Joseph D Mateer
_____
Print Name

**Christopher Branchcomb (Individually, and for FLSA Opt-Ins and Settling Class Members):**

Dated: Jul 5, 2023

*Christopher Branchcomb*
_____
Signature

Christopher Branchcomb
_____
Print Name

**Katharine Johnson (Individually, and for FLSA Opt-Ins and Settling Class Members):**

Dated: Jul 6, 2023

_____
Katharine Johnson (Jul 6, 2023 16.04 EDT)
Signature

Katharine Johnson
_____
Print Name

**FLSA Opt-Ins and Settling Class Members (By Their Counsel):**

Dated: Jul 6, 2023

_Jason R. Bristol_
Jason R. Bristol (Jul 6, 2023 11:26 EDT)
Signature

Jason R. Bristol
_____
Print Name

**Plaintiffs' Counsel:**

Dated: Jul 5, 2023

_J.R. Howell_
Signature

J.R. Howell
_____
Print Name

DocuSign Envelope ID: 2315TB50-72D5-45C6-B418-0FD4F44F0EA6

## TABLE OF EXHIBITS

A:     **List of FLSA Opt-Ins**

B:     **Model Settlement Notice**

**Exhibit A**

|   | Legal Last Name | Legal First Name |
|---|---|---|
| 1 | Adams | Kia |
| 2 | Arman | Kathleen |
| 3 | Atkins | Douglas |
| 4 | Baltazar | Parker |
| 5 | Bartolucci | Taryn |
| 6 | Beckford | Ashley |
| 7 | Black | Justin |
| 8 | Blaszczyk | Marissa |
| 9 | Blosser | Tia |
| 10 | Botica-Yarka | Jaclyn |
| 11 | Bowman-Fuentes | Shannon |
| 12 | Brady | Brian |
| 13 | Brown | Yvette |
| 14 | Bullard | Edward |
| 15 | Bullock | Shivon |
| 16 | Cackett | Marika |
| 17 | Carrick | Gabrielle |
| 18 | Cave | Tyler |
| 19 | Chandler | Sarah |
| 20 | Chaput | Taylor |
| 21 | Cherry | Kayte |
| 22 | Cisneros | Brandon |
| 23 | Clara | Cammi |
| 24 | Clark | DaSchelle |
| 25 | Cody | Michael |
| 26 | Cohen | Jeremy |
| 27 | Coley | Shannon |
| 28 | Conner | Damien |
| 29 | Corcino | Rick |
| 30 | Cordoba | Camila |
| 31 | Corona | Priscilla |
| 32 | Crockett | Brandon |
| 33 | Cummings | Kathleen |
| 34 | Curley | James |
| 35 | DelGaudio | Danielle |

| 36 | Deli | Nicholas |
|----|------|----------|
| 37 | DeSantis | Kelsey |
| 38 | Drew | Nicholas |
| 39 | Duggan | Lindsey |
| 40 | Eastwood | Pearce |
| 41 | Edelson | Emily |
| 42 | Emlund | Cassandra |
| 43 | Erazo | Gina |
| 44 | Escobar | Steven |
| 45 | Ficano | Brittany |
| 46 | Figueroa | Mitchell |
| 47 | Files | Caleb-Michael |
| 48 | Finelli | Alec |
| 49 | Fox | Jennifer |
| 50 | Franco | Johnathen |
| 51 | Galarneau | Adam |
| 52 | Garay | Juan |
| 53 | Garrido | Helen |
| 54 | Garza | Adrian |
| 55 | Gerni | Michelle |
| 56 | Gordon | Jamie |
| 57 | Gorniak | Rayme |
| 58 | Greenberg | Hayley |
| 59 | Griggs | Samantha |
| 60 | Guerra | Mariesa |
| 61 | Guvenc | Serkan |
| 62 | Haight | Heather |
| 63 | Hall | Erin |
| 64 | Hanagriff | Jonathan |
| 65 | Hapanowicz | Julia |
| 66 | Hawkins | Daryle |
| 67 | Hernandez | Jennifer |
| 68 | Ho | John |
| 69 | Hogan | Shania |
| 70 | Holland | Jamirr |
| 71 | Hudspeth | Kaitlin |
| 72 | Jackson | Steffany |
| 73 | Jensen | Melvin |

| 74 | Jose | Justin |
|---|---|---|
| 75 | Kallenberg | Courtney |
| 76 | Kelly | Elizabeth |
| 77 | Kelly | b |
| 78 | Kim | Jihan |
| 79 | Klein | Kasey |
| 80 | Larvadain | Suzann |
| 81 | LeBlanc | Kimberly |
| 82 | Leclerc | Alejandra |
| 83 | Leffler | Christine |
| 84 | Letwat | Noah |
| 85 | Liepman | Julia |
| 86 | Litt | Rhonda |
| 87 | Long | Jacob |
| 88 | Luna Sanchez | Kathy |
| 89 | Macris | Jacquelyn |
| 90 | Madden | Samuel |
| 91 | Maloney | Caroline |
| 92 | Martelo | Daniela |
| 93 | McCully | Shane |
| 94 | McGowan | Collin |
| 95 | McIntosh | April |
| 96 | Miedreich | Kathleen |
| 97 | Miller | Samantha |
| 98 | Morris | Bobbie |
| 99 | Mosseri | Rita |
| 100 | Mourer | Mark |
| 101 | Nealeigh | Jordan |
| 102 | Nereu | Derek |
| 103 | Nicoll | Alexander |
| 104 | Nobles | Jillian |
| 105 | Okner | Coleen |
| 106 | Olson | Shannon |
| 107 | Oppong | Philip |
| 108 | Ottati | Paul |
| 109 | Ottati | Ashli |
| 110 | Parker | Jonathan |
| 111 | Pearson | Preston |
| 112 | Pera | Olivia |
| 113 | Picarelli | Taylor |

| 114 | Pietruszewski | Ashley |
|-----|---------------|--------|
| 115 | Portanyi | Michael |
| 116 | Powell | Candice |
| 117 | Pucci | Ernesto |
| 118 | Rabon | Samuel |
| 119 | Ramirez | Julian |
| 120 | Rector | Mariel |
| 121 | Reyes | Krystal |
| 122 | Rivera | Elian |
| 123 | Rivera | Victor |
| 124 | Rodriguez | Julian |
| 125 | Roland | Angela |
| 126 | Ronson | James |
| 127 | Rose | Opal |
| 128 | Rosenwinkel | Paul |
| 129 | Rubin | Justin |
| 130 | Rusiecki | Tina |
| 131 | Sadusky | Brittany |
| 132 | Sander | Brianna |
| 133 | Schanck | Kristen |
| 134 | Shea | Kevin |
| 135 | Shuter | Brian |
| 136 | Silva | Christopher |
| 137 | Silver | Sarah |
| 138 | Sinn | Jordan |
| 139 | Skinner | Lane |
| 140 | Smith | Whitney |
| 141 | Sonkens | Bayleigh |
| 142 | Sprenkle | Jaimie |
| 143 | Stevens | Matthew |
| 144 | Taitte | Claire |
| 145 | Tanana | Amanda |
| 146 | Tayeh | Chelsea |
| 147 | Taylor | Alina |
| 148 | Taylor | Courtney |
| 149 | Thomas | Eric |
| 150 | Touchet | Colby |
| 151 | Tran | Eric |
| 152 | Treat | Tyler |
| 153 | Vissers | Cynthia |
| 154 | Wang | Kelvin |
| 155 | Weinberg | Ellie |

| 156 | Wheeler | Cassie |
|-----|---------|--------|
| 157 | Whipple | Matthew |
| 158 | Williams | Julian |
| 159 | Williams-Briggs | Madison |
| 160 | Wilson | Rebecca |
| 161 | Wright | Vanessa |
| 162 | Yackel | Jennifer |
| 163 | Yap | Kristina Maristela |
| 164 | Yinger | Drake |
| 165 | Zimmermann | Erin |
| 166 | Ziolkowski | Ariana |

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOSEPH D. MATEER,** **CHRISTOPHER BRANCHCOMB,** and **KATHARINE JOHNSON,** *On behalf of themselves and all others similarly situated,*<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**PELOTON INTERACTIVE, INC.**<br><br>**Defendant.** | **CASE NO. 1:22-CV-00740** |

## NOTICE OF CLASS ACTION LAWSUIT SETTLEMENT

**TO:        THE RULE 23 NEW YORK INITIAL HIRE NOTICE AND WAGE STATEMENT SETTLEMENT CLASS**

Based on the records of Peloton Interactive, Inc. ("Peloton"), you are entitled to participate in the settlement (the "Settlement") of the case captioned *Mateer et al. v. Peloton Interactive, Inc.*, Case No. 1:22-CV-00740 (the "Lawsuit").

**PLEASE READ THIS NOTICE CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS CONCERNING THE SETTLEMENT. IF THE SETTLEMENT IS APPROVED BY THE COURT AND YOU TAKE NO FURTHER ACTION, YOU WILL BE BOUND BY ITS TERMS.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **ACCEPT THE SETTLEMENT** | To accept the Settlement and receive payment from the Settlement Fund, you do not have to do anything. If the Court approves the Settlement, the Settlement Administrator will automatically send a check to your last known mailing address. |
| **OBJECT TO THE SETTLEMENT** | As described more fully in the Settlement Agreement, if you have an objection to the Settlement or to any of its terms, you may file an objection that may be reviewed by the |

| | |
|---|---|
| | Court.  You may not file an objection if you opt out of the Settlement. |
| **OPT-OUT OF THE SETTLEMENT** | As described more fully below, you can choose not to participate in the Settlement by sending an Opt-out Statement to the Settlement Administrator.  If you do so, you will receive no monetary distribution from the Settlement and you will not be bound by the Settlement of the Lawsuit.<br><br>If you opt out, you will not participate in the settlement or serve as a class member of any of the classes covered by the Settlement Agreement. |

## 1.  PARTIES AND COUNSEL DEFINED

- **Class Members:**  Any person who is a member of any of the State Settlement Classes:  the Rule 23 New York State Settlement Class Members, the Rule 23 Pennsylvania State Settlement Class Members, and the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members.

- **FLSA Opt-In**:  The individuals (including Named Plaintiffs) who filed Opt-In forms in the Lawsuit after the Court conditionally certified an FLSA collective on July 13, 2022 (ECF No. 61).

- **Named Plaintiffs**:  Joseph D. Mateer, Christopher Branchcomb, and Katharine Johnson.

- **Plaintiffs' Counsel:**  Cohen Rosenthal & Kramer LLP and Law Office of J.R. Howell.

- **Rule 23 New York State Settlement Class Member**:  All former and current employees who worked for Peloton as Inside Sales Representatives ("ISRs"), or those who performed substantially similar duties to ISRs (namely, Account Executives, Seasonal Account Executives, Inside Sales Representatives, Inside Sales Team Leads, Account Associates, Account Associate Leads, and Supervisors, Inside Sales), and who allegedly worked more than forty hours in one or more workweeks of their employment in the state of New York, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2016, and July 7, 2023.

- **Rule 23 Pennsylvania State Settlement Class Member**:  All former and current employees who worked for Peloton as a non-exempt Sales Specialist, Seasonal

2

Sales Specialist, or Assistant Showroom Manager, who allegedly worked more than forty hours in one or more workweeks of their employment in the state of Pennsylvania, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2019, and July 7, 2023.

- **Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Member**:  All current and former employees who worked for Peloton in the state of New York from January 27, 2016 through December 31, 2020, excluding those current and former employees who have released claims against Peloton under the New York Labor Law.

- **Settling Class Members**:  Any Class Member who does not timely exercise his or her right to "opt out" of the Settlement.

## 2.  WHAT IS A CLASS ACTION/WHY ARE YOU RECEIVING THIS NOTICE?

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding.  One or more representative plaintiffs file a lawsuit asserting claims on behalf of the entire class.

You have received this Notice because Peloton's records show that you are a Class Member covered by this Settlement. This Notice should not be understood as an expression of any opinion by the Court as to the merits of any claims or defenses asserted by the Parties.  The purpose of this Notice is to inform you of your rights under the Settlement resolving the Lawsuit.

## 3.  WHAT IS THIS CASE ABOUT?

The Lawsuit was commenced by Named Plaintiffs against Peloton.  The Lawsuit alleges that Peloton violated federal and state wage-payment and wage-notice laws, including the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and violations of New York and Pennsylvania state laws.  Peloton denies these allegations, denies violating the law in any way, contends that Class Members received all wages and notices to which they were entitled, and maintains that Peloton complied with all applicable laws.  The United States District Court has taken no position in this case regarding the merits of Named Plaintiffs' claims or Peloton's defenses.  As a result of extensive negotiations, the parties entered the Settlement Agreement.

## 4.  WHAT ARE THE TERMS OF THE SETTLEMENT?

Named Plaintiffs and Peloton have agreed to settle the Lawsuit for an amount not to exceed the total sum of Two Million Five Hundred Thousand Dollars and Zero Cents ($2,500,000.00) (the "Settlement Fund"), per the terms of the written Class Settlement Agreement and Release (the "Settlement Agreement").

Subject to Court approval, the following payments and expenses will be deducted from the Settlement Fund prior to any distributions to Class Members:

3

- **Incentive Awards**: Subject to court approval, the total of $25,000.00 will be paid to each of Named Plaintiffs Mateer and Johnson, and the total of $10,000.00 will be paid to Named Plaintiff Branchcomb.  These payments are being made based on the services Named Plaintiffs provided on behalf of the Class Members.

- **Attorneys' Fees and Costs**: Class Counsel will apply to the Court for attorneys' fees of one-third of the Settlement Fund ($833,250.00) and recovery of costs (up to $100,000.00).

- **Settlement Administration Costs**: Simpluris, Inc. (the "Settlement Administrator") will receive a fee estimated at  $25,659.96.

If the Court approves these payments and expenses, after these deductions, the remaining Settlement Fund (the "Net Settlement Fund") will be distributed only to Settling Class Members, as set forth in the Settlement Agreement and below:

a. The Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members will be allocated $200,000.00 from the Net Settlement Fund, to be divided equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

b. Fifteen percent (15%) of the remaining Net Settlement Fund, will be divided on a pro rata basis across the Named Plaintiffs, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members based on their number of weeks worked and average overtime rate during the relevant time periods.

c. The remaining funds in the Net Settlement Fund will be divided on a pro rata basis across the Named Plaintiffs and FLSA Opt-Ins who worked in a qualifying position during the relevant periods based on their total number of weeks worked and overtime rates of pay.

d. FLSA ISR Collective members' (as defined in the Settlement Agreement) allocation under section (c) shall be multiplied by a factor of three.


You will have 120 days after the date your individual settlement check is issued to cash it.  If you lose or do not receive your individual settlement check, you must request a replacement check within the 120-day period of your individual settlement check's issue date.  You must cash any replacement check by the later of the 120-day deadline or by the date 30 days after the date any replacement individual settlement check is issued.  If you do not cash your individual settlement check or request a replacement check within the 120-day period, your individual settlement check will be void.  Regardless of whether you cash your individual settlement check, you will remain bound by all the terms of the Settlement Agreement.  Requests for a replacement individual settlement check made after 120 days of the issue date will not be honored.

**5. HOW MUCH WILL MY PAYMENT BE AND WHEN WILL I RECEIVE IT?**

Each Settling Class Member of the Rule 23 New York State Initial Hire Notice and Wage Statement Settlement Class will receive a distribution from a fund of $200,000 to be shared equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

Based on the formula set forth above and in the Settlement Agreement, your estimated individual settlement award is approximately $110.00 ("Individual Settlement Award").

The Settlement Administrator will distribute individual settlement checks commencing within 21 days after the Settlement Agreement is effective.

**6. WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?**

Unless you opt out of this Settlement, you will be considered a Settling Class Member, which means you give up your right to file or continue a lawsuit against Peloton and other Peloton Releasees (as defined in the Settlement Agreement) relating to the New York Wage Theft Prevention Act, NYLL §195(1).

Giving up your legal claims is called a release. The precise terms of the release are in the Settlement Agreement, which is available on the Settlement Website. Unless you formally opt out of this Settlement, you will release your claims. If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Class Members, or you are welcome to talk to any other lawyer of your choosing at your own expense.

**7. HOW DO I OPT OUT OF BEING A SETTLING CLASS MEMBER?**

If you intend to exclude yourself from being a Settling Class Member, you must mail a written, signed statement to the Settlement Administrator stating, "I opt out of the Peloton wage and hour and labor law settlement" and include your name, address, and telephone number (the "Opt-out Statement"). To be effective, the Opt-out Statement must be mailed to the Settlement Administrator and postmarked by 30 calendar days from the date the Settlement Administrator mails the Notice at the following address:

Simpluris, Inc.

==[AWAITING CONFIRMATION OF OPT-OUT ADDRESS]==

**If you do not opt-out within the time limit set forth above, you will be bound by the terms of the Settlement Agreement.**

**8. WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?**

If you wish to object to the Settlement, you must first do so in writing. Class Members who have opted out of the Settlement may not submit objections to the Settlement. Written objections must be mailed via First Class United States Mail to Simpluris, Inc., by no later than thirty (30) calendar days after the date the Settlement Administrator mails the Notice.

Written objections must state (1) the case name and number; (2) your name, address, telephone number, and email address (if any); (3) a statement of the objection(s) being asserted; (4) a detailed description of the facts and any legal authorities underlying each objection; (5) a notice of intent to appear at the fairness hearing, if you intend to appear; (6) a list of any witnesses you may call to testify at the fairness hearing, whether in person, by deposition, or affidavit; and (7) a list of any exhibits, and copies of the same, which you may offer at the fairness hearing.

If you do not comply with the foregoing procedures and deadlines for submitting objections, you will not be entitled to speak at a fairness hearing or contest or appeal from approval of the Settlement or any award of attorneys' fees or expenses, or any appeal from any other orders or judgments of the Court entered in connection with the Settlement.

All objections will be provided to the Court. Named Plaintiffs and Peloton may file written responses to any objections. If your objection is overruled by the Court, you will remain bound by the Settlement.

You will be notified of the date and location of a court appearance, should the Court schedule a fairness hearing, by the Settlement Administrator or Class Counsel.

## 9. DO I HAVE A LAWYER IN THIS CASE?

The law firms of Cohen Rosenthal & Kramer LLP, 3208 Clinton Avenue, Cleveland, Ohio 44113, and the Law Office of J.R. Howell, 1223 Wilshire Boulevard, P.O. Box 543, Santa Monica, CA 90403, have been designated as legal counsel to represent you and the other Class Members. These lawyers are called "Class Counsel." You will not be charged separately for Class Counsel. Their fees will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one (at your own expense).

## 10. TAX TREATMENT

For tax purposes, 100% of each Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Member's Individual Settlement Award will be considered liquidated damages and interest subject to Form 1099 reporting as non-wage income.

At the beginning of the calendar year after the year in which your Individual Settlement Award is paid, the Settlement Administrator will issue each Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Member who has cashed his or her individual settlement check an IRS Form 1099 for that Class Member's Individual Settlement Award. Class Members are responsible for the appropriate payment of any taxes on the Individual Settlement Award they receive.

Class Counsel and Peloton's counsel do not intend this Notice to constitute tax advice, and to the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

If you are presently a party to an individual bankruptcy proceeding, it may be necessary for you to disclose your Individual Settlement Award.

**11. WHAT IF I HAVE ADDITIONAL QUESTIONS?**

If you have additional questions about this Notice or want more information, you can contact the Settlement Administrator at 1-800_____.

It is your responsibility to keep a current address on file with the Settlement Administrator. Please make sure to notify the Settlement Administrator and Class Counsel of any change of address using the contact information above.

**PLEASE DO NOT CONTACT THE JUDGE OR THE CLERK OF THE COURT WITH ANY QUESTIONS ABOUT THIS LAWSUIT.**

By Order of the Court

Dated:  [DATE]

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **JOSEPH D. MATEER,** | ) | |
| **CHRISTOPHER BRANCHCOMB,** | ) | |
| **and KATHARINE JOHNSON,** *On* | ) | **CASE NO. 1:22-CV-00740** |
| *behalf of themselves and all others* | ) | |
| *similarly situated,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PELOTON INTERACTIVE, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

### NOTICE OF CLASS ACTION LAWSUIT SETTLEMENT

**TO:**     **FLSA OPT-INS, RULE 23 NEW YORK STATE SETTLEMENT CLASS MEMBERS, AND RULE 23 PENNSYLVANIA STATE SETTLEMENT CLASS MEMBERS**

Based on the records of Peloton Interactive, Inc. ("Peloton"), you are entitled to participate in the settlement (the "Settlement") of the case captioned *Mateer et al. v. Peloton Interactive, Inc.*, Case No. 1:22-CV-00740 (the "Lawsuit").

**PLEASE READ THIS NOTICE CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS CONCERNING THE SETTLEMENT. IF THE SETTLEMENT IS APPROVED BY THE COURT AND YOU TAKE NO FURTHER ACTION, YOU WILL BE BOUND BY ITS TERMS.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **ACCEPT THE SETTLEMENT** | To accept the Settlement and receive payment from the Settlement Fund, you do not have to do anything. If the Court approves the Settlement, the Settlement Administrator will automatically send a check to your last known mailing address. |
| **OBJECT TO THE SETTLEMENT** | As described more fully in the Settlement Agreement, if you have an objection to the Settlement or to any of its terms, you may file |

| | an objection that may be reviewed by the Court.  You may not file an objection if you opt out of the Settlement. |
|---|---|
| **OPT-OUT OF THE SETTLEMENT** | As described more fully below, you can choose not to participate in the Settlement by sending an Opt-out Statement to the Settlement Administrator.  If you do so, you will receive no monetary distribution from the Settlement and you will not be bound by the Settlement of the Lawsuit.<br><br>If you opt out, you will not participate in the settlement or serve as a class member of any of the classes covered by the Settlement Agreement. |

## 1.  PARTIES AND COUNSEL DEFINED

- **Class Members:**  Any person who is a member of any of the State Settlement Classes:  the Rule 23 New York State Settlement Class Members, the Rule 23 Pennsylvania State Settlement Class Members, and the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members.

- **FLSA Opt-In**:  The individuals (including Named Plaintiffs) who filed Opt-In forms in the Lawsuit after the Court conditionally certified an FLSA collective on July 13, 2022 (ECF No. 61).

- **Named Plaintiffs**:  Joseph D. Mateer, Christopher Branchcomb, and Katharine Johnson.

- **Plaintiffs' Counsel:**  Cohen Rosenthal & Kramer LLP and Law Office of J.R. Howell.

- **Rule 23 New York State Settlement Class Member**:  All former and current employees who worked for Peloton as Inside Sales Representatives ("ISRs"), or those who performed substantially similar duties to ISRs (namely, Account Executives, Seasonal Account Executives, Inside Sales Representatives, Inside Sales Team Leads, Account Associates, Account Associate Leads, and Supervisors, Inside Sales), and who allegedly worked more than forty hours in one or more workweeks of their employment in the state of New York, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2016, and July 7, 2023.

- **Rule 23 Pennsylvania State Settlement Class Member**:  All former and current employees who worked for Peloton as a non-exempt Sales Specialist, Seasonal

Sales Specialist, or Assistant Showroom Manager, who allegedly worked more than forty hours in one or more workweeks of their employment in the state of Pennsylvania, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2019, and July 7, 2023.

- **Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Member**:  All current and former employees who worked for Peloton in the state of New York from January 27, 2016 through December 31, 2020, excluding those current and former employees who have released claims against Peloton under the New York Labor Law.

- **Settling Class Members**:  Any Class Member who does not timely exercise his or her right to "opt out" of the Settlement.

## 2.  WHAT IS A CLASS ACTION/WHY ARE YOU RECEIVING THIS NOTICE?

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding.  One or more representative plaintiffs file a lawsuit asserting claims on behalf of the entire class.

You have received this Notice because Peloton's records show that you are a Class Member covered by this Settlement. This Notice should not be understood as an expression of any opinion by the Court as to the merits of any claims or defenses asserted by the Parties.  The purpose of this Notice is to inform you of your rights under the Settlement resolving the Lawsuit.

## 3.  WHAT IS THIS CASE ABOUT?

The Lawsuit was commenced by Named Plaintiffs against Peloton.  The Lawsuit alleges that Peloton violated federal and state wage-payment and wage-notice laws, including the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and violations of New York and Pennsylvania state laws.  Peloton denies these allegations, denies violating the law in any way, contends that Class Members received all wages and notices to which they were entitled, and maintains that Peloton complied with all applicable laws.  The United States District Court has taken no position in this case regarding the merits of Named Plaintiffs' claims or Peloton's defenses.  As a result of extensive negotiations, the parties entered the Settlement Agreement.

## 4.  WHAT ARE THE TERMS OF THE SETTLEMENT?

Named Plaintiffs and Peloton have agreed to settle the Lawsuit for an amount not to exceed the total sum of Two Million Five Hundred Thousand Dollars and Zero Cents ($2,500,000.00) (the "Settlement Fund"), per the terms of the written Class Settlement Agreement and Release (the "Settlement Agreement").

Subject to Court approval, the following payments and expenses will be deducted from the Settlement Fund prior to any distributions to Class Members:

3

- **Incentive Awards**: Subject to court approval, the total of $25,000.00 will be paid to each of Named Plaintiffs Mateer and Johnson, and the total of $10,000.00 will be paid to Named Plaintiff Branchcomb. These payments are being made based on the services Named Plaintiffs provided on behalf of the Class Members.

- **Attorneys' Fees and Costs**: Class Counsel will apply to the Court for attorneys' fees of one-third of the Settlement Fund ($833,250.00) and recovery of costs (up to $100,000.00).

- **Settlement Administration Costs**: Simpluris, Inc. (the "Settlement Administrator") will receive a fee estimated at $25,659.96.

If the Court approves these payments and expenses, after these deductions, the remaining Settlement Fund (the "Net Settlement Fund") will be distributed only to Settling Class Members, as set forth in the Settlement Agreement and below:

a. The Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members will be allocated $200,000.00 from the Net Settlement Fund, to be divided equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

b. Fifteen percent (15%) of the remaining Net Settlement Fund, will be divided on a pro rata basis across the Named Plaintiffs, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members based on their number of weeks worked and average overtime rate during the relevant time periods.

c. The remaining funds in the Net Settlement Fund will be divided on a pro rata basis across the Named Plaintiffs and FLSA Opt-Ins who worked in a qualifying position during the relevant periods based on their total number of weeks worked and overtime rates of pay.

d. FLSA ISR Collective members' (as defined in the Settlement Agreement) allocation under section (c) shall be multiplied by a factor of three.

You will have 120 days after the date your individual settlement check is issued to cash it. If you lose or do not receive your individual settlement check, you must request a replacement check within the 120-day period of your individual settlement check's issue date. You must cash any replacement check by the later of the 120-day deadline or by the date 30 days after the date any replacement individual settlement check is issued. If you do not cash your individual settlement check or request a replacement check within the 120-day period, your individual settlement check will be void. Regardless of whether you cash your individual settlement check, you will remain bound by all the terms of the Settlement Agreement. Requests for a replacement individual settlement check made after 120 days of the issue date will not be honored.

4

5.  **HOW MUCH WILL MY PAYMENT BE AND WHEN WILL I RECEIVE IT?**

Each Settling Class Member will receive a share of the Net Settlement Fund based on the formula described above and in the Settlement Agreement at Paragraph 3.4 ("Individual Settlement Award"), which takes into account the number of weeks you worked, your average overtime rate, and position(s) held during the relevant time period(s).

The Settlement Administrator will distribute individual settlement checks commencing within 21 days after the Settlement Agreement is effective.

6.  **WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?**

Unless you opt out of this Settlement, you will be considered a Settling Class Member, which means you give up your right to file or continue a lawsuit against Peloton and other Peloton Releasees (as defined in the Settlement Agreement) based on your membership in the following classes, as applicable:

**FLSA Opt-Ins**: the FLSA Opt-Ins release the Peloton Releasees (as defined in the Settlement Agreement) from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with compensation for any work performed for Peloton, including, but not limited to, claims for overtime, travel time, unreported time, reported time, work performed in the United States, work performed outside the United States, and the causes of action asserted, or which could have been asserted, in the Lawsuit, as well as any other causes of action arising under the FLSA, the New York Labor Law, the Pennsylvania Wage Payment and Collection Law, and the Pennsylvania Minimum Wage Act, and any other applicable federal, state, local, or other wage and hour laws.

**The Rule 23 New York State Settlement Class**: the Rule 23 New York State Settlement Class Members release the Peloton Releasees (as defined in the Settlement Agreement) from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with compensation for any work performed for Peloton, including, but not limited to, claims for overtime, travel time, unreported time, reported time, work performed in the United States, work performed outside the United States, and the causes of action asserted, or which could have been asserted, in the Lawsuit, as well as any other causes of action arising under the FLSA, the New York Labor Law, and any other applicable federal, state, local, or other wage and hour laws.

**The Rule 23 Pennsylvania State Settlement Class**: the Rule 23 Pennsylvania State Settlement Class Members release the Peloton Releasees (as defined in the Settlement Agreement) from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with compensation for any work performed for Peloton, including, but not limited to, claims for overtime, travel time, unreported time, reported time, work performed in the United States, work performed outside the United States, and the causes of action asserted, or which could have been asserted, in the Lawsuit, as well as any other causes of

action arising under the FLSA, the Pennsylvania Wage Payment and Collection Law, the Pennsylvania Minimum Wage Act, and any other applicable federal, state, local, or other wage and hour laws.

Giving up your legal claims is called a release. The precise terms of the release are in the Settlement Agreement, which is available on the Settlement Website. Unless you formally opt out of this Settlement, you will release your claims. If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Class Members, or you are welcome to talk to any other lawyer of your choosing at your own expense.

**7.  HOW DO I OPT OUT OF BEING A SETTLING CLASS MEMBER?**

If you intend to exclude yourself from being a Settling Class Member, you must mail a written, signed statement to the Settlement Administrator stating, "I opt out of the Peloton wage and hour and labor law settlement" and include your name, address, and telephone number (the "Opt-out Statement").  To be effective, the Opt-out Statement must be mailed to the Settlement Administrator and postmarked by 30 calendar days from the date the Settlement Administrator mails the Notice at the following address:

Simpluris, Inc.<br>[AWAITING CONFIRMATION OF OPT-OUT ADDRESS]

**If you do not opt-out within the time limit set forth above, you will be bound by the terms of the Settlement Agreement.**

**8.  WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?**

If you wish to object to the Settlement, you must first do so in writing.  Class Members who have opted out of the Settlement may not submit objections to the Settlement.  Written objections must be mailed via First Class United States Mail to Simpluris, Inc., by no later than thirty (30) calendar days after the date the Settlement Administrator mails the Notice.

Written objections must state (1) the case name and number; (2) your name, address, telephone number, and email address (if any); (3) a statement of the objection(s) being asserted; (4) a detailed description of the facts and any legal authorities underlying each objection; (5) a notice of intent to appear at the fairness hearing, if you intend to appear; (6) a list of any witnesses you may call to testify at the fairness hearing, whether in person, by deposition, or affidavit; and (7) a list of any exhibits, and copies of the same, which you may offer at the fairness hearing.

If you do not comply with the foregoing procedures and deadlines for submitting objections, you will not be entitled to speak at a fairness hearing or contest or appeal from approval of the Settlement or any award of attorneys' fees or expenses, or any appeal from any other orders or judgments of the Court entered in connection with the Settlement.

All objections will be provided to the Court. Named Plaintiffs and Peloton may file written responses to any objections. If your objection is overruled by the Court, you will remain bound by the Settlement.

You will be notified of the date and location of a court appearance, should the Court schedule a fairness hearing, by the Settlement Administrator or Class Counsel.

### 9. DO I HAVE A LAWYER IN THIS CASE?

The law firms of Cohen Rosenthal & Kramer LLP, 3208 Clinton Avenue, Cleveland, Ohio 44113, and the Law Office of J.R. Howell, 1223 Wilshire Boulevard, P.O. Box 543, Santa Monica, CA 90403, have been designated as legal counsel to represent you and the other Class Members. These lawyers are called "Class Counsel." You will not be charged separately for Class Counsel. Their fees will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one (at your own expense).

### 10. TAX TREATMENT

For tax purposes, the payments to FLSA Opt-Ins, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members are for back wages and liquidated damages and shall be reported by the Settlement Administrator as follows: fifty percent of all payments shall be reported as payment for back wages and reported on a Form W-2, and the remaining fifty percent shall be reported on a Form 1099-MISC. Peloton will be responsible for employer-side (and only employer-side) local, state, and federal taxes owed for these wages.

At the beginning of the calendar year after the year in which your Individual Settlement Award is paid, the Settlement Administrator will issue each Class Member who has cashed his or her individual settlement check an IRS Form W-2 and/or IRS Form 1099 for the Class Member's Individual Settlement Award. Class Members are responsible for the appropriate payment of any taxes on the Individual Settlement Award they receive.

Class Counsel and Peloton's counsel do not intend this Notice to constitute tax advice, and to the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

If you are presently a party to an individual bankruptcy proceeding, it may be necessary for you to disclose your Individual Settlement Award.

### 11. WHAT IF I HAVE ADDITIONAL QUESTIONS?

If you have additional questions about this Notice or want more information, you can contact the Settlement Administrator at 1-800_____.

It is your responsibility to keep a current address on file with the Settlement Administrator. Please make sure to notify the Settlement Administrator and Class Counsel of any change of address using the contact information above.

**PLEASE DO NOT CONTACT THE JUDGE OR THE CLERK OF THE COURT WITH ANY QUESTIONS ABOUT THIS LAWSUIT.**

By Order of the Court
Dated:  [DATE]

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **JOSEPH D. MATEER,** | ) | |
| **CHRISTOPHER BRANCHCOMB,** | ) | |
| **and KATHARINE JOHNSON,** *On* | ) | **CASE NO. 1:22-CV-00740** |
| *behalf of themselves and all others* | ) | |
| *similarly situated,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PELOTON INTERACTIVE, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## NOTICE OF CLASS ACTION LAWSUIT SETTLEMENT

**TO:**    **THE RULE 23 NEW YORK INITIAL HIRE NOTICE AND WAGE STATEMENT SETTLEMENT CLASS**

Based on the records of Peloton Interactive, Inc. ("Peloton"), you are entitled to participate in the settlement (the "Settlement") of the case captioned *Mateer et al. v. Peloton Interactive, Inc.*, Case No. 1:22-CV-00740 (the "Lawsuit").

**PLEASE READ THIS NOTICE CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS CONCERNING THE SETTLEMENT. IF THE SETTLEMENT IS APPROVED BY THE COURT AND YOU TAKE NO FURTHER ACTION, YOU WILL BE BOUND BY ITS TERMS.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **ACCEPT THE SETTLEMENT** | To accept the Settlement and receive payment from the Settlement Fund, you do not have to do anything. If the Court approves the Settlement, the Settlement Administrator will automatically send a check to your last known mailing address. |
| **OBJECT TO THE SETTLEMENT** | As described more fully in the Settlement Agreement, if you have an objection to the Settlement or to any of its terms, you may file an objection that may be reviewed by the |

1

| | |
|---|---|
| | Court.  You may not file an objection if you opt out of the Settlement. |
| **OPT-OUT OF THE SETTLEMENT** | As described more fully below, you can choose not to participate in the Settlement by sending an Opt-out Statement to the Settlement Administrator.  If you do so, you will receive no monetary distribution from the Settlement and you will not be bound by the Settlement of the Lawsuit.<br><br>If you opt out, you will not participate in the settlement or serve as a class member of any of the classes covered by the Settlement Agreement. |

## 1.  PARTIES AND COUNSEL DEFINED

- **Class Members:**  Any person who is a member of any of the State Settlement Classes:  the Rule 23 New York State Settlement Class Members, the Rule 23 Pennsylvania State Settlement Class Members, and the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members.

- **FLSA Opt-In**:  The individuals (including Named Plaintiffs) who filed Opt-In forms in the Lawsuit after the Court conditionally certified an FLSA collective on July 13, 2022 (ECF No. 61).

- **Named Plaintiffs**:  Joseph D. Mateer, Christopher Branchcomb, and Katharine Johnson.

- **Plaintiffs' Counsel:**  Cohen Rosenthal & Kramer LLP and Law Office of J.R. Howell.

- **Rule 23 New York State Settlement Class Member**:  All former and current employees who worked for Peloton as Inside Sales Representatives ("ISRs"), or those who performed substantially similar duties to ISRs (namely, Account Executives, Seasonal Account Executives, Inside Sales Representatives, Inside Sales Team Leads, Account Associates, Account Associate Leads, and Supervisors, Inside Sales), and who allegedly worked more than forty hours in one or more workweeks of their employment in the state of New York, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2016, and July 7, 2023.

- **Rule 23 Pennsylvania State Settlement Class Member**:  All former and current employees who worked for Peloton as a non-exempt Sales Specialist, Seasonal

2

Sales Specialist, or Assistant Showroom Manager, who allegedly worked more than forty hours in one or more workweeks of their employment in the state of Pennsylvania, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2019, and July 7, 2023.

- **Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Member**:  All current and former employees who worked for Peloton in the state of New York from January 27, 2016 through December 31, 2020, excluding those current and former employees who have released claims against Peloton under the New York Labor Law.

- **Settling Class Members**:  Any Class Member who does not timely exercise his or her right to "opt out" of the Settlement.

## 2.   WHAT IS A CLASS ACTION/WHY ARE YOU RECEIVING THIS NOTICE?

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding.  One or more representative plaintiffs file a lawsuit asserting claims on behalf of the entire class.

You have received this Notice because Peloton's records show that you are a Class Member covered by this Settlement. This Notice should not be understood as an expression of any opinion by the Court as to the merits of any claims or defenses asserted by the Parties.  The purpose of this Notice is to inform you of your rights under the Settlement resolving the Lawsuit.

## 3.   WHAT IS THIS CASE ABOUT?

The Lawsuit was commenced by Named Plaintiffs against Peloton.  The Lawsuit alleges that Peloton violated federal and state wage-payment and wage-notice laws, including the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and violations of New York and Pennsylvania state laws.  Peloton denies these allegations, denies violating the law in any way, contends that Class Members received all wages and notices to which they were entitled, and maintains that Peloton complied with all applicable laws.  The United States District Court has taken no position in this case regarding the merits of Named Plaintiffs' claims or Peloton's defenses.  As a result of extensive negotiations, the parties entered the Settlement Agreement.

## 4.   WHAT ARE THE TERMS OF THE SETTLEMENT?

Named Plaintiffs and Peloton have agreed to settle the Lawsuit for an amount not to exceed the total sum of Two Million Five Hundred Thousand Dollars and Zero Cents ($2,500,000.00) (the "Settlement Fund"), per the terms of the written Class Settlement Agreement and Release (the "Settlement Agreement").

Subject to Court approval, the following payments and expenses will be deducted from the Settlement Fund prior to any distributions to Class Members:

3

- **Incentive Awards**: Subject to court approval, the total of $25,000.00 will be paid to each of Named Plaintiffs Mateer and Johnson, and the total of $10,000.00 will be paid to Named Plaintiff Branchcomb.  These payments are being made based on the services Named Plaintiffs provided on behalf of the Class Members.

- **Attorneys' Fees and Costs**: Class Counsel will apply to the Court for attorneys' fees of one-third of the Settlement Fund ($833,250.00) and recovery of costs (up to $100,000.00).

- **Settlement Administration Costs**: Simpluris, Inc. (the "Settlement Administrator") will receive a fee estimated at  $25,659.96.

If the Court approves these payments and expenses, after these deductions, the remaining Settlement Fund (the "Net Settlement Fund") will be distributed only to Settling Class Members, as set forth in the Settlement Agreement and below:

a. The Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members will be allocated $200,000.00 from the Net Settlement Fund, to be divided equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

b. Fifteen percent (15%) of the remaining Net Settlement Fund, will be divided on a pro rata basis across the Named Plaintiffs, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members based on their number of weeks worked and average overtime rate during the relevant time periods.

c. The remaining funds in the Net Settlement Fund will be divided on a pro rata basis across the Named Plaintiffs and FLSA Opt-Ins who worked in a qualifying position during the relevant periods based on their total number of weeks worked and overtime rates of pay.

d. FLSA ISR Collective members' (as defined in the Settlement Agreement) allocation under section (c) shall be multiplied by a factor of three.


You will have 120 days after the date your individual settlement check is issued to cash it.  If you lose or do not receive your individual settlement check, you must request a replacement check within the 120-day period of your individual settlement check's issue date.  You must cash any replacement check by the later of the 120-day deadline or by the date 30 days after the date any replacement individual settlement check is issued.  If you do not cash your individual settlement check or request a replacement check within the 120-day period, your individual settlement check will be void.  Regardless of whether you cash your individual settlement check, you will remain bound by all the terms of the Settlement Agreement.  Requests for a replacement individual settlement check made after 120 days of the issue date will not be honored.

**5.  HOW MUCH WILL MY PAYMENT BE AND WHEN WILL I RECEIVE IT?**

Each Settling Class Member of the Rule 23 New York State Initial Hire Notice and Wage Statement Settlement Class will receive a distribution from a fund of $200,000 to be shared equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

Based on the formula set forth above and in the Settlement Agreement, your estimated individual settlement award is approximately $110.00 ("Individual Settlement Award").

The Settlement Administrator will distribute individual settlement checks commencing within 21 days after the Settlement Agreement is effective.

**6.  WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?**

Unless you opt out of this Settlement, you will be considered a Settling Class Member, which means you give up your right to file or continue a lawsuit against Peloton and other Peloton Releasees (as defined in the Settlement Agreement) relating to the New York Wage Theft Prevention Act, NYLL §195(1).

Giving up your legal claims is called a release. The precise terms of the release are in the Settlement Agreement, which is available on the Settlement Website. Unless you formally opt out of this Settlement, you will release your claims. If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Class Members, or you are welcome to talk to any other lawyer of your choosing at your own expense.

**7.  HOW DO I OPT OUT OF BEING A SETTLING CLASS MEMBER?**

If you intend to exclude yourself from being a Settling Class Member, you must mail a written, signed statement to the Settlement Administrator stating, "I opt out of the Peloton wage and hour and labor law settlement" and include your name, address, and telephone number (the "Opt-out Statement"). To be effective, the Opt-out Statement must be mailed to the Settlement Administrator and postmarked by 30 calendar days from the date the Settlement Administrator mails the Notice at the following address:

Simpluris, Inc.
[AWAITING CONFIRMATION OF OPT-OUT ADDRESS]

**If you do not opt-out within the time limit set forth above, you will be bound by the terms of the Settlement Agreement.**

**8.  WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?**

If you wish to object to the Settlement, you must first do so in writing. Class Members who have opted out of the Settlement may not submit objections to the Settlement. Written objections must be mailed via First Class United States Mail to Simpluris, Inc., by no later than thirty (30) calendar days after the date the Settlement Administrator mails the Notice.

Written objections must state (1) the case name and number; (2) your name, address, telephone number, and email address (if any); (3) a statement of the objection(s) being asserted; (4) a detailed description of the facts and any legal authorities underlying each objection; (5) a notice of intent to appear at the fairness hearing, if you intend to appear; (6) a list of any witnesses you may call to testify at the fairness hearing, whether in person, by deposition, or affidavit; and (7) a list of any exhibits, and copies of the same, which you may offer at the fairness hearing.

If you do not comply with the foregoing procedures and deadlines for submitting objections, you will not be entitled to speak at a fairness hearing or contest or appeal from approval of the Settlement or any award of attorneys' fees or expenses, or any appeal from any other orders or judgments of the Court entered in connection with the Settlement.

All objections will be provided to the Court. Named Plaintiffs and Peloton may file written responses to any objections. If your objection is overruled by the Court, you will remain bound by the Settlement.

You will be notified of the date and location of a court appearance, should the Court schedule a fairness hearing, by the Settlement Administrator or Class Counsel.

## 9. DO I HAVE A LAWYER IN THIS CASE?

The law firms of Cohen Rosenthal & Kramer LLP, 3208 Clinton Avenue, Cleveland, Ohio 44113, and the Law Office of J.R. Howell, 1223 Wilshire Boulevard, P.O. Box 543, Santa Monica, CA 90403, have been designated as legal counsel to represent you and the other Class Members. These lawyers are called "Class Counsel." You will not be charged separately for Class Counsel. Their fees will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one (at your own expense).

## 10. TAX TREATMENT

For tax purposes, 100% of each Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Member's Individual Settlement Award will be considered liquidated damages and interest subject to Form 1099 reporting as non-wage income.

At the beginning of the calendar year after the year in which your Individual Settlement Award is paid, the Settlement Administrator will issue each Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Member who has cashed his or her individual settlement check an IRS Form 1099 for that Class Member's Individual Settlement Award. Class Members are responsible for the appropriate payment of any taxes on the Individual Settlement Award they receive.

Class Counsel and Peloton's counsel do not intend this Notice to constitute tax advice, and to the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

If you are presently a party to an individual bankruptcy proceeding, it may be necessary for you to disclose your Individual Settlement Award.

## 11. WHAT IF I HAVE ADDITIONAL QUESTIONS?

If you have additional questions about this Notice or want more information, you can contact the Settlement Administrator at 1-800_____.

It is your responsibility to keep a current address on file with the Settlement Administrator. Please make sure to notify the Settlement Administrator and Class Counsel of any change of address using the contact information above.

**PLEASE DO NOT CONTACT THE JUDGE OR THE CLERK OF THE COURT WITH ANY QUESTIONS ABOUT THIS LAWSUIT.**

By Order of the Court

Dated:  [DATE]

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSEPH D. MATEER,** ) | |
| **CHRISTOPHER BRANCHCOMB,** ) | |
| **and KATHARINE JOHNSON,** *On* ) | **CASE NO. 1:22-CV-00740** |
| *behalf of themselves and all others* ) | |
| *similarly situated,* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **PELOTON INTERACTIVE, INC.** ) | |
| ) | |
| **Defendant.** ) | |
| ———————————————— ) | |

**NOTICE OF CLASS ACTION LAWSUIT SETTLEMENT**

**TO:** **FLSA OPT-INS, RULE 23 NEW YORK STATE SETTLEMENT CLASS MEMBERS, AND RULE 23 PENNSYLVANIA STATE SETTLEMENT CLASS MEMBERS**

Based on the records of Peloton Interactive, Inc. ("Peloton"), you are entitled to participate in the settlement (the "Settlement") of the case captioned *Mateer et al. v. Peloton Interactive, Inc.*, Case No. 1:22-CV-00740 (the "Lawsuit").

**PLEASE READ THIS NOTICE CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS CONCERNING THE SETTLEMENT. IF THE SETTLEMENT IS APPROVED BY THE COURT AND YOU TAKE NO FURTHER ACTION, YOU WILL BE BOUND BY ITS TERMS.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **ACCEPT THE SETTLEMENT** | To accept the Settlement and receive payment from the Settlement Fund, you do not have to do anything. If the Court approves the Settlement, the Settlement Administrator will automatically send a check to your last known mailing address. |
| **OBJECT TO THE SETTLEMENT** | As described more fully in the Settlement Agreement, if you have an objection to the Settlement or to any of its terms, you may file |

1

| | an objection that may be reviewed by the Court. You may not file an objection if you opt out of the Settlement. |
|---|---|
| **OPT-OUT OF THE SETTLEMENT** | As described more fully below, you can choose not to participate in the Settlement by sending an Opt-out Statement to the Settlement Administrator. If you do so, you will receive no monetary distribution from the Settlement and you will not be bound by the Settlement of the Lawsuit.<br><br>If you opt out, you will not participate in the settlement or serve as a class member of any of the classes covered by the Settlement Agreement. |

## 1. PARTIES AND COUNSEL DEFINED

- **Class Members:** Any person who is a member of any of the State Settlement Classes: the Rule 23 New York State Settlement Class Members, the Rule 23 Pennsylvania State Settlement Class Members, and the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members.

- **FLSA Opt-In**: The individuals (including Named Plaintiffs) who filed Opt-In forms in the Lawsuit after the Court conditionally certified an FLSA collective on July 13, 2022 (ECF No. 61).

- **Named Plaintiffs**: Joseph D. Mateer, Christopher Branchcomb, and Katharine Johnson.

- **Plaintiffs' Counsel:** Cohen Rosenthal & Kramer LLP and Law Office of J.R. Howell.

- **Rule 23 New York State Settlement Class Member**: All former and current employees who worked for Peloton as Inside Sales Representatives ("ISRs"), or those who performed substantially similar duties to ISRs (namely, Account Executives, Seasonal Account Executives, Inside Sales Representatives, Inside Sales Team Leads, Account Associates, Account Associate Leads, and Supervisors, Inside Sales), and who allegedly worked more than forty hours in one or more workweeks of their employment in the state of New York, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2016, and July 7, 2023.

- **Rule 23 Pennsylvania State Settlement Class Member**: All former and current employees who worked for Peloton as a non-exempt Sales Specialist, Seasonal

Sales Specialist, or Assistant Showroom Manager, who allegedly worked more than forty hours in one or more workweeks of their employment in the state of Pennsylvania, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2019, and July 7, 2023.

- **Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Member**:  All current and former employees who worked for Peloton in the state of New York from January 27, 2016 through December 31, 2020, excluding those current and former employees who have released claims against Peloton under the New York Labor Law.

- **Settling Class Members**:  Any Class Member who does not timely exercise his or her right to "opt out" of the Settlement.

## 2.  WHAT IS A CLASS ACTION/WHY ARE YOU RECEIVING THIS NOTICE?

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding.  One or more representative plaintiffs file a lawsuit asserting claims on behalf of the entire class.

You have received this Notice because Peloton's records show that you are a Class Member covered by this Settlement. This Notice should not be understood as an expression of any opinion by the Court as to the merits of any claims or defenses asserted by the Parties.  The purpose of this Notice is to inform you of your rights under the Settlement resolving the Lawsuit.

## 3.  WHAT IS THIS CASE ABOUT?

The Lawsuit was commenced by Named Plaintiffs against Peloton.  The Lawsuit alleges that Peloton violated federal and state wage-payment and wage-notice laws, including the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and violations of New York and Pennsylvania state laws.  Peloton denies these allegations, denies violating the law in any way, contends that Class Members received all wages and notices to which they were entitled, and maintains that Peloton complied with all applicable laws.  The United States District Court has taken no position in this case regarding the merits of Named Plaintiffs' claims or Peloton's defenses.  As a result of extensive negotiations, the parties entered the Settlement Agreement.

## 4.  WHAT ARE THE TERMS OF THE SETTLEMENT?

Named Plaintiffs and Peloton have agreed to settle the Lawsuit for an amount not to exceed the total sum of Two Million Five Hundred Thousand Dollars and Zero Cents ($2,500,000.00) (the "Settlement Fund"), per the terms of the written Class Settlement Agreement and Release (the "Settlement Agreement").

Subject to Court approval, the following payments and expenses will be deducted from the Settlement Fund prior to any distributions to Class Members:

3

- **Incentive Awards**: Subject to court approval, the total of $25,000.00 will be paid to each of Named Plaintiffs Mateer and Johnson, and the total of $10,000.00 will be paid to Named Plaintiff Branchcomb. These payments are being made based on the services Named Plaintiffs provided on behalf of the Class Members.

- **Attorneys' Fees and Costs**: Class Counsel will apply to the Court for attorneys' fees of one-third of the Settlement Fund ($833,250.00) and recovery of costs (up to $100,000.00).

- **Settlement Administration Costs**: Simpluris, Inc. (the "Settlement Administrator") will receive a fee estimated at $25,659.96.

If the Court approves these payments and expenses, after these deductions, the remaining Settlement Fund (the "Net Settlement Fund") will be distributed only to Settling Class Members, as set forth in the Settlement Agreement and below:

a. The Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class Members will be allocated $200,000.00 from the Net Settlement Fund, to be divided equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.

b. Fifteen percent (15%) of the remaining Net Settlement Fund, will be divided on a pro rata basis across the Named Plaintiffs, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members based on their number of weeks worked and average overtime rate during the relevant time periods.

c. The remaining funds in the Net Settlement Fund will be divided on a pro rata basis across the Named Plaintiffs and FLSA Opt-Ins who worked in a qualifying position during the relevant periods based on their total number of weeks worked and overtime rates of pay.

d. FLSA ISR Collective members' (as defined in the Settlement Agreement) allocation under section (c) shall be multiplied by a factor of three.

You will have 120 days after the date your individual settlement check is issued to cash it. If you lose or do not receive your individual settlement check, you must request a replacement check within the 120-day period of your individual settlement check's issue date. You must cash any replacement check by the later of the 120-day deadline or by the date 30 days after the date any replacement individual settlement check is issued. If you do not cash your individual settlement check or request a replacement check within the 120-day period, your individual settlement check will be void. Regardless of whether you cash your individual settlement check, you will remain bound by all the terms of the Settlement Agreement. Requests for a replacement individual settlement check made after 120 days of the issue date will not be honored.

4

**5. HOW MUCH WILL MY PAYMENT BE AND WHEN WILL I RECEIVE IT?**

Each Settling Class Member will receive a share of the Net Settlement Fund based on the formula described above and in the Settlement Agreement at Paragraph 3.4 ("Individual Settlement Award"), which takes into account the number of weeks you worked, your average overtime rate, and position(s) held during the relevant time period(s).

The Settlement Administrator will distribute individual settlement checks commencing within 21 days after the Settlement Agreement is effective.

**6. WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?**

Unless you opt out of this Settlement, you will be considered a Settling Class Member, which means you give up your right to file or continue a lawsuit against Peloton and other Peloton Releasees (as defined in the Settlement Agreement) based on your membership in the following classes, as applicable:

**FLSA Opt-Ins**: the FLSA Opt-Ins release the Peloton Releasees (as defined in the Settlement Agreement) from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with compensation for any work performed for Peloton, including, but not limited to, claims for overtime, travel time, unreported time, reported time, work performed in the United States, work performed outside the United States, and the causes of action asserted, or which could have been asserted, in the Lawsuit, as well as any other causes of action arising under the FLSA, the New York Labor Law, the Pennsylvania Wage Payment and Collection Law, and the Pennsylvania Minimum Wage Act, and any other applicable federal, state, local, or other wage and hour laws.

**The Rule 23 New York State Settlement Class**: the Rule 23 New York State Settlement Class Members release the Peloton Releasees (as defined in the Settlement Agreement) from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with compensation for any work performed for Peloton, including, but not limited to, claims for overtime, travel time, unreported time, reported time, work performed in the United States, work performed outside the United States, and the causes of action asserted, or which could have been asserted, in the Lawsuit, as well as any other causes of action arising under the FLSA, the New York Labor Law, and any other applicable federal, state, local, or other wage and hour laws.

**The Rule 23 Pennsylvania State Settlement Class**: the Rule 23 Pennsylvania State Settlement Class Members release the Peloton Releasees (as defined in the Settlement Agreement) from all known or unknown claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever arising out of, relating to, or in connection with compensation for any work performed for Peloton, including, but not limited to, claims for overtime, travel time, unreported time, reported time, work performed in the United States, work performed outside the United States, and the causes of action asserted, or which could have been asserted, in the Lawsuit, as well as any other causes of

action arising under the FLSA, the Pennsylvania Wage Payment and Collection Law, the Pennsylvania Minimum Wage Act, and any other applicable federal, state, local, or other wage and hour laws.

Giving up your legal claims is called a release. The precise terms of the release are in the Settlement Agreement, which is available on the Settlement Website. Unless you formally opt out of this Settlement, you will release your claims. If you have any questions, you can talk for free to the attorneys identified below who have been appointed by the Court to represent the Class Members, or you are welcome to talk to any other lawyer of your choosing at your own expense.

## 7. HOW DO I OPT OUT OF BEING A SETTLING CLASS MEMBER?

If you intend to exclude yourself from being a Settling Class Member, you must mail a written, signed statement to the Settlement Administrator stating, "I opt out of the Peloton wage and hour and labor law settlement" and include your name, address, and telephone number (the "Opt-out Statement"). To be effective, the Opt-out Statement must be mailed to the Settlement Administrator and postmarked by 30 calendar days from the date the Settlement Administrator mails the Notice at the following address:

Simpluris, Inc.
[AWAITING CONFIRMATION OF OPT-OUT ADDRESS]

**If you do not opt-out within the time limit set forth above, you will be bound by the terms of the Settlement Agreement.**

## 8. WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?

If you wish to object to the Settlement, you must first do so in writing. Class Members who have opted out of the Settlement may not submit objections to the Settlement. Written objections must be mailed via First Class United States Mail to Simpluris, Inc., by no later than thirty (30) calendar days after the date the Settlement Administrator mails the Notice.

Written objections must state (1) the case name and number; (2) your name, address, telephone number, and email address (if any); (3) a statement of the objection(s) being asserted; (4) a detailed description of the facts and any legal authorities underlying each objection; (5) a notice of intent to appear at the fairness hearing, if you intend to appear; (6) a list of any witnesses you may call to testify at the fairness hearing, whether in person, by deposition, or affidavit; and (7) a list of any exhibits, and copies of the same, which you may offer at the fairness hearing.

If you do not comply with the foregoing procedures and deadlines for submitting objections, you will not be entitled to speak at a fairness hearing or contest or appeal from approval of the Settlement or any award of attorneys' fees or expenses, or any appeal from any other orders or judgments of the Court entered in connection with the Settlement.

All objections will be provided to the Court.  Named Plaintiffs and Peloton may file written responses to any objections.  If your objection is overruled by the Court, you will remain bound by the Settlement.

You will be notified of the date and location of a court appearance, should the Court schedule a fairness hearing, by the Settlement Administrator or Class Counsel.

## 9.  DO I HAVE A LAWYER IN THIS CASE?

The law firms of Cohen Rosenthal & Kramer LLP, 3208 Clinton Avenue, Cleveland, Ohio 44113, and the Law Office of J.R. Howell, 1223 Wilshire Boulevard, P.O. Box 543, Santa Monica, CA 90403, have been designated as legal counsel to represent you and the other Class Members.  These lawyers are called "Class Counsel."  You will not be charged separately for Class Counsel.  Their fees will be paid from the Settlement Fund.  If you want to be represented by your own lawyer, you may hire one (at your own expense).

## 10.  TAX TREATMENT

For tax purposes, the payments to FLSA Opt-Ins, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members are for back wages and liquidated damages and shall be reported by the Settlement Administrator as follows: fifty percent of all payments shall be reported as payment for back wages and reported on a Form W-2, and the remaining fifty percent shall be reported on a Form 1099-MISC. Peloton will be responsible for employer-side (and only employer-side) local, state, and federal taxes owed for these wages.

At the beginning of the calendar year after the year in which your Individual Settlement Award is paid, the Settlement Administrator will issue each Class Member who has cashed his or her individual settlement check an IRS Form W-2 and/or IRS Form 1099 for the Class Member's Individual Settlement Award.  Class Members are responsible for the appropriate payment of any taxes on the Individual Settlement Award they receive.

Class Counsel and Peloton's counsel do not intend this Notice to constitute tax advice, and to the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

If you are presently a party to an individual bankruptcy proceeding, it may be necessary for you to disclose your Individual Settlement Award.

## 11.  WHAT IF I HAVE ADDITIONAL QUESTIONS?

If you have additional questions about this Notice or want more information, you can contact the Settlement Administrator at 1-800_____.

It is your responsibility to keep a current address on file with the Settlement Administrator. Please make sure to notify the Settlement Administrator and Class Counsel of any change of address using the contact information above.

**PLEASE DO NOT CONTACT THE JUDGE OR THE CLERK OF THE COURT WITH ANY QUESTIONS ABOUT THIS LAWSUIT.**

By Order of the Court
Dated:  [DATE]

# EXHIBIT D



# Susan N. Eisenberg

## Member

## Miami

**seisenberg@cozen.com | (305) 704-5941**

Susan N. Eisenberg has more than 25 years of experience representing employers in all aspects of employment matters and is widely recognized as one of the leading employment law attorneys in Florida. Susan has extensive jury and non-jury trial experience involving sex, race, religion, age and disability harassment and discrimination issues. She also litigates non-compete and confidentiality issues as well as accessibility issues under the Americans with Disabilities Act. She regularly handles single plaintiff as well as class-action litigation. Susan is also widely known for her experience with wage and hour issues and is one of the authors of the premiere treatise titled *The Fair Labor Standards Act.*

Susan also advises clients on employment law compliance, discipline, terminations, reductions in force and wage and hour audits. She has extensive experience in conducting workplace investigations including those involving high level executives. She prepares workplace policies and procedure manuals, employment contracts, non-compete and confidentiality agreements and separation agreements. Susan also conducts informative and entertaining in-house training on employment issues.

Susan is Florida Bar Board Certified in Labor and Employment Law and has been a Fellow of the College of Labor and Employment Lawyers since 2007. Susan was recognized as one of the top 20 women lawyers in South Florida in 2014 and was recognized in 2019 as an Influential Business Woman by the *South Florida Business Journal.* In 2020 she was named a "Lawyer of the Year" for labor & employment litigation by Best Lawyers. She has consistently received Band 1 ranking from Chambers USA and is also recognized by Chambers Global.

Susan is the office managing partner of Cozen O'Connor's Miami offices and has chaired its Shareholder Nominating Committee, previously sat on its Shareholder Compensation Committee, and its Management Committee. She is currently serving a three year term on Cozen O'Connor's Board of Directors. She is a frequent lecturer, author and bar association leader. She regularly writes and speaks on employment issues for the American Bar Association, Practicing Law Institute, and American Conference Institute. Susan is the former chair of the American Bar Association's Federal Labor Standards Legislation Committee, president of the Academy of Florida Management Attorneys, and founding member and president of the Wage and Hour Defense Institute. Susan is the former management co-chair of the American Bar Association Labor and Employment Section Conference Planning Committee.

In addition to her litigation and counseling practice, for more than 18 years Susan has been an Arbitrator with the American Arbitration Association and a Certified Mediator.

Susan earned her Bachelor of Science from the University of Michigan and her law degree from the University of Miami where she was a member of Law Review and president of the Moot Court Board. Before practicing law, Susan was licensed and worked as a pharmacist in Michigan and Florida.

## Experience

Secured an important arbitration victory on behalf of a client facing a commission claim of more than

---

**Practice Areas**
- Employment Litigation
- Labor & Employment

**Industry Sectors**
- Hospitality

**Education**
- University of Miami School of Law, J.D., 1986
- University of Michigan, B.S., 1979

**Bar Admissions**
- Florida

**Awards & Honors**
- Board Certified in Labor & Employment Law, The Florida Bar Board of Legal Specialization and Education
- Fellow, The College of Labor and Employment Lawyers
- Founding Member, Wage and Hour Defense Institute (WHDI)
- The Best Lawyers in America 2020, Listed as "Lawyer of the Year" for Litigation - Labor and Employment in Miami
- The Best Lawyers in America 2016, Listed as "Lawyer of the Year" for Employment Law - Management in Miami
- The Best Lawyers in America, 2006-2023
- South Florida Legal Guide Top Lawyers 2012-2015, 2019
- Named a 2019 Influential Business Woman by South Florida Business Journal
- Chambers USA 2004-2023
- Chambers USA 2012, Women in Law Awards, Short List for Employment Lawyer of the Year
- Chambers Global 2018-2023
- Lawdragon Top Leading U.S. Corporate Employment Lawyers, 2020-2021
- Super Lawyers Magazine 2012-2023
- Super Lawyers Magazine "Top 50 Women Lawyers" Florida, 2008, 2010-2011, 2013-2015
- Super Lawyers Magazine 2013, Listed in Florida as one of the "Top 100 Lawyers"
- Super Lawyers Magazine 2013, Listed in Florida as one of the "Top 100 Miami Lawyers"
- Daily Business Review 2014, Recognized as a Top 20 Women in Law Honoree in South Florida

---

Susan N. Eisenberg
seisenberg@cozen.com
P: (305) 704-5941 | F: (305) 704-5955

©2023 Cozen O'Connor. All rights reserved.



- Daily Business Review Florida Legal Awards 2021 - Distinguished Leader
- Florida Trend's Legal Elite 2005, 2007, 2010, 2012-2013, 2017
- The International Who's Who of Business Lawyers, 2012
- Certified Mediator, Florida Supreme Court
- American Arbitration Association, Arbitrator
- Benchmark Labor & Employment Star for the South
- Martindale-Hubbell, AV Rated

$1.3 million, plus attorney's fees and costs of more than $450,000, filed by a former salesperson alleging breach of his commission plan. At issue was a decelerator provision in the commission plan which the client had applied to the claimant's commission on a $14 million sale. After six days of arbitration involving several complex legal issues, the arbitrator ruled in the client's favor on all legal and factual issues. This was a particularly important victory for the client, as the same clause had been at issue in a number of other jurisdictions.

Defended a destination transportation company in case centered on whether drivers are exempt from overtime under the Motor Carrier Act. We were able to show that the drivers were exempt from overtime based on the use of "thru-ticketing," thus establishing an exemption under the Motor Carrier Act. This position established that even if drivers only drive intra-state, they can still be exempt if they are carrying passengers who enter from outside the state.

Represented a compliance company that specializes in collecting and disposing of regulated substances (such as medical waste and sharps, pharmaceuticals, hazardous waste) and providing services for recalled and expired goods. This matter was a pregnancy discrimination case that dealt with the interaction between the Americans with Disabilities Act and the Pregnancy Discrimination Act. We were able to establish that the employer must treat pregnancy as any other impairment and settled the case for a nominal value.

Obtained summary judgment on all counts in a race discrimination and retaliation claim filed in federal court under Title VII and 42 U.S.C. §1981 against our client and two of its employees. This victory was particularly significant because the plaintiff alleged that there was direct evidence of discrimination. We also obtained a significant favorable ruling on our motion to strike jury trial based upon an employment agreement between the company and plaintiff which was also enforced with regard to the individual defendants even though they did not sign the agreement. Finally, we obtained a rare award of attorneys' fees against the plaintiff.

Obtained summary judgment on behalf of a client by successfully arguing that the plaintiff's impairment did not constitute a disability under the Americans with Disabilities Act. This victory was particularly significant because it was the first decision under the 2008 Amendments to the ADA specifically holding that an impairment which resolves in 30 days, with no permanent residual effects, does not constitute a disability.

Susan N. Eisenberg
seisenberg@cozen.com
P: (305) 704-5941 | F: (305) 704-5955

©2023 Cozen O'Connor. All rights reserved.



# EXHIBIT E



3194-C Airport Loop Drive
Costa Mesa, CA 92626
800-779-2104
www.simpluris.com

| | | | |
|---|---|---|---|
| Estimate Number: | 20230522-JJK-01 | *Prepared By:* | Jacob Kamenir |
| Estimate Date: | 5/22/2023 | | 612-208-7322 |
| Estimate Expiration Date: | 8/20/2023 | | jkamenir@simpluris.com |

|  | Primary Contact | | Additional Contact |
|---|---|---|---|
| Name: | **JR Howell** | Attorney: | |
| Firm: | Cohen Rosenthal & Kramer, LLP | Firm: | |
| Email: | jrhowell@jrhlegalstrategies.com | Email: | |

**Case Name:** *Mateer v. Peloton Interactive, Inc.*

## Assumptions

**In addition to the assumptions enumerated below, this estimate assumes that**
(1) Simpluris will receive data in a single, complete file; (2) there will be no substantial change to class size or in response rate;
(3) administration costs will be paid from the QSF, and (4) Simpluris will submit revisions to this estimate to account for any
material changes to scope.

| | | | |
|---|---|---|---|
| Anticipated Class Size: | 2,130 | Undeliverable Rate: | 10% |
| Claims Rate: | n/a | Mail Skip Trace Success Rate: | 75% |
| Opt-out Rate: | 1.0% | Email Skip Trace Success Rate: | 70% |
| Language(s) for Communication | EN | Call Rate: | 3% |
| Reminder Mailing: | n/a | Average Call Length: | 3 Minutes |
| Unclaimed Funds: | TBD | Fund Distribution: | Simpluris |
| State(s): | OH | Number of Distributions: | 1 |
| Length of Administration: | 9 Months | Tax Year(s): | 2 |

## Case Setup

• Data compilation: develop case-specific response tracking

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Project Manager - Case Setup | $125.00 | 4 | $500.00 |
| Database Manager - Initial Data Analysis | $140.00 | 2 | $280.00 |
| | | **Total:** | **$780.00** |

## Notice and Communications

• Class website hosting case documents
• Full notice by letter

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Class Website | $500.00 | 1 | $500.00 |
| Website Hosting and Security Monitoring and Tracking | *$135.00* | 9 Months | $1,215.00 |
| Notice Packet (assuming two double-sided pages) | $1.00 | 2,130 | $2,130.00 |
| Letter Postage | $0.59 | 2,130 | $1,256.70 |
| NCOA/CASS/LACS | $0.20 | 2,130 | $426.00 |
| Undeliverable Processing and Skip Trace | $0.35 | 213 | $74.55 |
| Remail Notice (assuming 75% skip trace success) | $1.90 | 160 | $304.00 |
| Remail Postage | $0.63 | 160 | $100.80 |
| Mailing Supervisor | $50.00 | 4 | $200.00 |
| Establish Email Campaign | $500.00 | 1 | $500.00 |
| Email Notice | $0.05 | 166 | $8.30 |
| Undeliverable Processing and Skip Trace | $0.35 | 17 | $5.81 |
| Re-email Notice (assuming 70% skip trace success) | $0.05 | 12 | $0.60 |
| | | **Total:** | **$6,721.76** |

## Inbound Call Center

• Establish case-specific toll-free number and 24/7 IVR; live agents during business hours
• Assuming 3-minute calls

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| IVR Call Center Setup | $500.00 | 1 | $500.00 |
| Uptime Monitoring and Testing, Tracking, Reporting | *$225.00* | 9 Months | $2,025.00 |
| Live Agents (includes toll-free number charges) | $62.00 | 5 | $310.00 |
| | | **Total:** | **$2,835.00** |

## Administration

- Process incoming class and counsel communications, opt-outs, and objections for duration of 9-month administration

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Database Manager | $140.00 | 1 | $140.00 |
| Project Manager | $125.00 | 6 | $750.00 |
| Opt-out Processing | $3.50 | 22 | $77.00 |
| Weekly Reporting to Counsel | $100.00 | 4 | $400.00 |
| | | **Total:** | **$1,367.00** |

## Award Disbursement

- Establish 26 CFR § 1.468B-1 compliant Qualified Settlement Fund ("QSF")
- Conduct regular and annual IRS-mandated QSF reporting and reconciliation (one per calendar year)
- Complete all required filings with state and federal tax authorities

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Disbursement Data Preparation | $140.00 | 2 | $280.00 |
| Disbursement Manager - Data Validation | $100.00 | 1 | $100.00 |
| Setup Banking Account/QSF | $750.00 | 1 | $750.00 |
| QSF Monthly Reconciliation and Maintenance | *$200.00* | 9 | $1,800.00 |
| Print & Mail Check and Tax Documents | $0.75 | 2,130 | $1,597.50 |
| Postage | $0.00 | 2,130 | $0.00 |
| Process Returned Checks (assuming 5%) | $0.25 | 107 | $26.75 |
| Skip Trace Search Undeliverable Checks | $0.35 | 107 | $37.45 |
| Remail Checks (includes postage) | $2.50 | 107 | $267.50 |
| QSF Reporting and Final Declaration | $500.00 | 1 | $500.00 |
| QSF Annual Tax Reporting and Reconciliation | *$1,350.00* | 2 | $2,700.00 |
| Distribution Manager | $125.00 | 4 | $500.00 |
| | | **Total:** | **$8,559.20** |

## Case Completion

- Final audit and review
- Send final declaration and reporting to counsel

| Category | Unit Value | # of Units | Total |
|---|---|---|---|
| Data Manager-Final Reporting | $140.00 | 2 | $280.00 |
| Clerical-Clean Up Any Misc. | $50.00 | 1 | $50.00 |
| Project Manager-Wrap-up Final Issues | $125.00 | 2 | $250.00 |
| | | **Total:** | **$580.00** |

| | |
|---|---|
| Total Estimated Cost of Administration: | $20,842.96 |
| Previous Balance: | $4,817.00 |
| **Total Estimated Cost:** | **$25,659.96** |

Confidential and Proprietary

# Terms and Conditions

All administration services to be provided by Simpluris to Client, are provided subject to the following terms and conditions ("Agreement"):

**1. Services**: Simpluris agrees to provide Client those services set forth in the Proposal (the "Services") to which these terms and conditions are attached and which has been provided to Client. As compensation for such Services, Client agrees to pay the fees for Services outlined in the Proposal. Simpluris will often take direction from Client's representatives, employees, agents and or professionals (collectively, the "Client Parties") with respect to the Services. The parties agree that Simpluris may rely upon, and Client agrees to be bound by, any direction, advice or information provided by the Client Parties to the same extent as if provided by Client. Client agrees and understands that Simpluris shall not provide Client or any other party with any legal advice.

**2. Fee Estimates Not Binding:** Simpluris and Client acknowledge that it is difficult to determine all necessary work required for the Services or the total amount of fees that may be incurred in performing the Services. Client agrees that fees for Services described in the Proposal are estimated based on the requirements provided by Client. Actual fees charged by Simpluris may be greater or less than such estimate. Client specifically agrees that it will be responsible for the payment of all such fees. Simpluris will provide estimates and budgets, but they are not intended to be binding; are subject to unforeseen circumstances, and by their nature are inexact.

**3. Billing and Payment**: Simpluris will invoice Client on a regular basis unless a specific timeframe is otherwise set forth in the Proposal. Client shall pay all invoices within 30 days of receipt. Amounts unpaid after thirty (30) days are subject to a service charge at the rate of 1.5% per month or, if less, the highest rate permitted by law. Services are not provided on a contingency basis and Client shall remain liable to Simpluris for all fees incurred by Simpluris in performing the Services, regardless of any circumstance that impacts the outcome of Client's matter, including but not limited to, court decisions, actions by the parties, or a failure to consummate a settlement.

**4. Further Assurances:** Client agrees that it will use its best efforts to include provisions reasonably acceptable to Simpluris in any relevant court order, settlement agreement or similar document that provide for the payment of Simpluris' fees and expenses hereunder. No agreement to which Simpluris is not a party shall reduce or limit the full and prompt payment of Simpluris' fees and expenses as set forth herein and in the Proposal.

**5. Rights of Ownership**: The parties understand that the software programs and other materials furnished Simpluris to Client and/or developed during the course of the performance of Services are the sole property of Simpluris. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Client agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished to Client. Fees and expenses paid by Client do not vest in Client any rights in such property, it being understood that such property is only being made available for Client's use during and in connection with the Services provided by Simpluris.

**6. Bank Accounts**: Simpluris will establish a demand deposit checking account (i.e. non-interest bearing) for funds received related to a distribution, unless directed otherwise in writing by the parties or unless the settlement agreement stipulates otherwise. Simpluris may derive financial benefits from financial institutions in connection with the deposit and investment of settlement funds with such institutions, including without limitation, discounts on eligible banking services and fees, and compensation for services Simpluris performs for financial institutions to be eligible for FDIC deposit insurance. The amounts held pursuant to these Terms and Conditions are at the sole risk of Client and, without limiting the generality of the foregoing, Simpluris shall have no responsibility or liability for any diminution of the fund that may result from any deposit made with a financial institution including any losses resulting from a default by such institution or other credit losses. It is acknowledged and agreed that Simpluris will have acted prudently in depositing the fund at such institution.

**7. Retention of Documents & Data**: Unless otherwise required in writing by the Client or court orders, all returned/undeliverable physical documents will be securely shredded after the data has been confirmed uploaded to our systems. Simpluris will retain bank and tax documents for such period of time as it determines is required to maintain compliance with various federal and state law requirements. Unless otherwise required in writing by the Client or court orders, Simpluris will adhere to the Company's data deletion policies and will destroy all remaining project-related information from our systems three (3) years after the conclusion of the project. Storage beyond three (3) years is available upon request and will be billed as incurred.

**8. Limitation of Liability; Disclaimer of Warranties**: Simpluris warrants that it will perform the Services diligently, with competence and reasonable care.  In no event will Simpluris be liable to Client or any third party for any claims, losses, costs, penalties, fines, judgments, tax activities, lost profits or business opportunities, business interruptions or delay, special, exemplary, punitive, consequential, indirect or incidental damages relating to the performance of the Services, regardless of whether Client's claim is for breach of contract, tort (including negligence and strict liability) or otherwise, regardless of whether such damage was foreseeable and whether such party has been advised of the possibility of such damages.  Simpluris' cumulative liability for damages to Client hereunder will be limited to the total fees charged or chargeable to Client for the particular portion of the Services affected by Simpluris' omission or error. THE WARRANTIES SET FORTH IN THIS SECTION ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.

**9. Force Majeure:** To the extent performance by Simpluris of any of its obligations hereunder is substantially prevented or delayed by reason of any act of God, flood, fire, earthquake or explosion, war, terrorism, invasion, riot or other civil unrest, embargoes or blockades in effect on or after the date



that Simpluris began performing Services, epidemic, pandemic, quarantine, civil commotion, national or regional emergency, strikes, labor stoppages or slowdowns or other industrial disturbances, passage of Law or any action taken by a governmental or public authority, including imposing an export or import restriction, quota, or other restriction or prohibition or any complete or partial government shutdown, or national or regional shortage of adequate power or telecommunications or transportation or because of any other matter beyond Simpluris' reasonable control, then Simpluris' performance shall be excused and this Agreement, at Simpluris' option, be deemed suspended during the continuation of such condition and for a reasonable time thereafter.

**10. Rights in Data**: Client agrees that it will not obtain, nor does Simpluris convey, any rights of ownership in the programs, system data, or materials provided or used by Simpluris in the performance of the Services.

**11. Electronic Communications**: During the provision of the Services, the parties may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

**12. Notice**: Any notice required or permitted hereunder shall be in writing and shall be delivered personally, by, or sent by registered mail, postage prepaid, or overnight courier to the address identified by each Party in the Proposal. Notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in United States mail, or, if sent by courier, one business day after delivery to such courier service. Notice should be addressed to an officer or principal of Client and Simpluris, as the case may be.

**13. Waiver:** Failure or delay on the part of a party to exercise any right, power or privilege hereunder shall not operate as a waiver thereof or any of other subject, right, power or privilege.

**14. Termination:** Client may terminate the Services at any time upon 30 days prior written notice to Simpluris. Termination of Services shall in no event relieve Client of its obligation make any payments due and payable to Simpluris for Services rendered up to the effective date of Termination. Simpluris may terminate this Agreement (i) for any reason upon no less than 60 days prior written notice to the Client; or (ii) upon 15 calendar days' prior written notice if the Client is not current in payment of fees.

**15. Jurisdiction:** These Terms and Conditions will be governed by and construed in accordance with the laws of the state of California, without giving effect to any choice of law principles.

**16. Survival:** Any remedies for breach of this Agreement, this Section and the following Sections will survive any expiration or termination of this Agreement: Section 4 - Limitation of Liability; Disclaimer of Warranties, Section 6 – Rights in Data, and Section 12- Jurisdiction, 14 -Confidentiality, and Section 15 – Indemnification.

**17. Confidentiality**: Simpluris maintains reasonable and appropriate safeguards to protect the confidentiality and security of data provided by Client to Simpluris in connection with the Services. If, pursuant to a court order or other proceeding, a third-party requests that Simpluris to disclose any confidential data provided by or for Client, Simpluris will promptly notify the Client unless prohibited by applicable law. Client will then have the option to provide Simpluris with qualified legal representation at Client's expense to defend against such request. If, pursuant to a court order, Simpluris is required to disclose data, produce documents, or otherwise act in contravention of the obligation to maintain confidentiality set forth in these terms and conditions, Simpluris will not be liable for breach of said obligation.

**18. Indemnification**: Client will indemnify and hold Simpluris (and the officers, employees, affiliates and agents) harmless against any losses whatsoever incurred by Simpluris, arising out of any action by a third party, including governmental agencies, in connection with , or related to (i) any breach of the terms by Client; (ii) the processing and handling of any payment by Simpluris in accordance with Client's instructions, including without limitation, the imposition of any stop payment or void payment on any check or the wrongful dishonor of a check by Simpluris pursuant to Client's instructions.

**19. Severability**: If any term or condition or provisions of this Agreement shall be held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**20. Database Administration:** Simpluris' database administration for Client assumes that Client will provide complete data that includes all information required to send notifications and calculate and mail settlement payments. Data must be provided in a complete, consistent, standardized electronic format. Simpluris' standardized format is Microsoft Excel, however, Simpluris may accept other formats at its discretion. Further developments or enhancements to non-standardized data will be billed to Client by Simpluris on a time and materials basis according to Simpluris' Standard Rates.

**21. Entire Agreement**: These Terms and Conditions together with the Proposal constitutes the entire agreement between the parties with respect of the subject matter hereof and supersede all prior understandings, agreements, or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof.



**simpluris** | Simpluris Overview

Simpluris has administered over 9,000 matters, managed over $8 billion in settlement funds, and provided its services for over 15 years. Our beginning-to-end services include complete project management, mailings & notification campaigns, contact center, legal intake, data management, disbursements & tax reporting, among others. Our offices are in California & Florida to provide comprehensive coverage across the US.

### Technology Driven Legal Administration

Our internally developed Cadence™ case management platform was designed from the ground up to serve a multitude of industries and verticals in the federal, state, and private sectors, including consumer, employment, insurance, banking, data breach, remediation, and mass tort cases. Simpluris built the platform to handle the entire lifecycle of a project alongside our highly trained in-house experts.

### Extensible Solution, Flexible Architecture

With an extensible application model, we can provide your firm with the ability to manage all your matters in a highly flexible architecture while enhancing your existing processes, document management, and reporting tools. Add to this Simpluris' LiveCase™ real-time case/matter reporting dashboard, and you have 24/7 access to all your matters with a click of a button.

### Cadence™ – Robust Enterprise Software For Legal And Financial Administration

Cadence™ provides for a centralized, unified legal processing platform. It includes detailed QA and audit controls and history in over 30 areas and the flexibility to handle nearly any legal process. It has proven to scale across thousands of projects and millions of records with Amazon's secure AWS cloud hosting. With a comprehensive security posture, we can meet various compliance & regulatory requirements.

### Technology Infrastructure

Simpluris has invested in a single, central, robust operational web application for the past 15+ years employing best-of-breed technologies (e.g., C#/.Net/SQL Microsoft stack, Amazon AWS, JavaScript frameworks) and Agile software development methodologies. We utilize multiple environments to test and ensure a consistent operation of our platform. We also employ redundant application and database servers to prevent downtime and data loss.

### Security Focused

Security must be a primary goal in everything a data handling firm does in today's world. Simpluris starts with industry best practices role-based functionality, where users only have access to information and functionality determined by their respective roles. Simpluris utilizes encryption at rest (storage & database column level) and encryption in transit to protect your data throughout your matter. Simpluris routinely conducts penetration tests to validate and harden our security infrastructure to ensure client data is well protected.

**Strategize with one of our experts**

(800) 779–2104 | 3194-C Airport Loop Dr., Costa Mesa, CA 92626 | simpluris.com



# Security Summary – White Paper

 

Simpluris is committed to the security and overall protection of its own and its customer's data and information. As demonstration of our commitment, we maintain SOC 2 certification which requires us to adhere to strict policies and procedures surrounding information security including processing and storage of confidential customer data. Simpluris has and maintains a comprehensive, written Information Security Program that complies with all applicable laws and regulations (e.g. HIPAA, Gramm-Leach-Bliley Act, MA 201 CMR 17.00) and that is designed to (a) ensure the security, privacy and confidentiality of Client and Class Member Information, (b) protect against any reasonably anticipated threats or hazards to the security or integrity of Client or Class Member Information, and (c) protect against unauthorized access to, use, deletion, or modification of Class Member Information. Simpluris has designated specific employees to be responsible for the administration of its Information Security Program. In addition, Simpluris regularly monitors, tests, and updates its Information Security Program.

Simpluris uses Client and Class Member Information only for the purposes for which its' clients provide it, as described in any Agreements or Court Orders governing the provision of Simpluris' services in any particular case.
Simpluris has and maintains a process for identifying, assessing, and mitigating the risks to Class Member Information in each relevant area of Simpluris' operations and evaluating the effectiveness of the safeguards for controlling these risks.
Simpluris restricts access to Class Member Information only to those employees, agents, or subcontractors who need to know the information to perform their jobs. Simpluris performs background checks of all its employees that will have access to Sensitive Personal Information, including a review of their references, employment eligibility, education, and criminal background to ensure they do not pose a risk to the security of Client or Class Member Information.

Simpluris adheres to the following industry best practices to safeguard its systems which process, store or transmit Client and Class Member Information:

- Identity and Access Management.
- Complex passwords that must be changed regularly.
- Role-based access control systems to limit individual employee access to network applications and systems based on their specific job role and function.
- Data Loss Prevention and Intrusion Prevention System software at multiple layers to prevent from internal and external threats of data leaks, malicious activity, and policy violations.
- Encryption of Class Member Information in if it is transmitted over public or wireless networks (e.g., via email, ftp, Internet, etc.).
- Implementation of a Secure File Transfer system (using SSL encryption) for transmitting documents back and forth to clients.
- Encryption of servers, portable media, laptops, desktops, smartphones, mobile devices, and new technologies that store Class Member Information.
- Complex password authentication for remote access to Company's networks.
- Upon hire and annually thereafter, training of all employees with access to Class Member Information, (including any agents, and subcontractors with access to Class Member Information) about their obligations to implement the Information Security Program.
- Disciplinary measures for employees who violate the Information Security Program.
- Preventing terminated employees from accessing Class Member Information.
- Appropriately configured and updated firewall, antivirus, and spyware software.
- Prompt application of vendor-recommended security patches and updates to systems and other applications to avoid any adverse impact to Class Member Information.
- Separation of Duties.
- Infrastructure and Physical Security.
- Business Continuity Planning.
- Disaster Recovery Planning.

# EXHIBIT F

# Employment Research Corporation

## APPENDIX A

**1 – CURRICULUM VITAE OF MS. LAURA STEINER**

**2 – CASES MS. STEINER TESTIFIED IN PAST FOUR YEARS**

**3 – CURRICULUM VITAE OF MS. TERESA FULIMENI**

**4 – CASES MS. FULIMENI TESTIFIED IN PAST FOUR YEARS**

**5 – RATES CHARGED FOR THIS CASE**

# ☑ Employment Research Corporation

## 1 — Curriculum Vitae

## Laura R. Steiner

**Employment Research Corporation**
**2661 Emerald Ave**
**Ann Arbor, Michigan 48104**
**Office:  (734) 477-9040**
**Direct:  (734) 395-4223**
**lauras@employmentresearch.com**

### Current Position

Vice President, Employment Research Corporation, 2002-present
Member, Forensic JobStats, 2010-present

### Previous Positions

Director, Marketing Consulting, User Interfaces, 2000-2002
Senior Consultant, Employment Research Corporation, 1997-1999
Account Executive/Group Manager, PERT Survey Research (now MetrixLab), 1993-1997
Manager, Analysis Group, PERT Survey Research (now MetrixLab), 1992-1993
Coordinator, Ethnic Advertising and Customer Satisfaction Programs, United States Postal
    Service, Northeast Regional Headquarters, 1990-1992

### Education

MBA, Yale School of Management, 1991
BA, Comparative Literature, Magna Cum Laude, with high distinction, University of Michigan, 1987

### Legal and Economic Consulting

Managed full-scale employment audits for large corporations in various industries.  Audits included analysis of issues such as workforce, promotions, terminations, compensation and hiring.  Worked with clients to design surveys and prepare instructions to collect internal company feedback from various regional offices.

Managed review, coding and analysis of human resources documents including job applications and personnel files in OFCCP and EEOC audits and other legal matters.  Participated in negotiations with corporate, legal, and government representatives.

Prepared analyses of economic loss in cases involving premature death, injury, termination from work, and age, race, and gender discrimination. Worked on analyses for plaintiffs and defendants.

Conducted studies of employment mitigation including labor market analyses and evaluations of job market opportunities for given time periods and geographic areas.

# ☑ Employment Research Corporation

Performed occupational analyses to determine overtime exemptions under the FLSA.  Studies were based on interviews, observations, surveys, and in-depth review of documents such as job descriptions, personnel files, job postings, and performance evaluations.

Calculated damages in wage and hour cases under the FLSA and other state and local labor regulations.  Conducted surveys to estimate time worked, and relied on payroll data, timekeeping data, and other information to estimate unpaid wages and penalties owed to plaintiffs.

Conducted studies of route assignments and account assignments.  Analyzed all routes nationwide across multiple years of data.  Benchmarked results to census population data to measure employee assignments into neighborhoods of various demographic compositions. Co-directed study for the Corporation for Public Broadcasting to assess the training needs of Public Broadcasting employees through the year 2000. This study addressed a variety of issues relating to diversity including staffing, programming, and audience demographics. Study completed in 1995.

## Other Professional Experience

Presenter of "Using Help Wanted Ads to Assess Failure to Mitigate" with Malcolm Cohen at the National Association of Forensic Economics Association Western Meetings, held in conjunction with the Western Economic Association International Virtual 96th Annual conference June 27, 2021.

Author of "Using Online Help - Wanted Advertising as a Tool in Vocational Assessments" by Malcolm Cohen, Ph.D. Laura R. Steiner, MBA and Carrie Fried Thorpe, Journal of Forensic Vocational Analysis, Vol. 16, No 2. Winter 2016: 27-36, co-authored with Malcolm S. Cohen and Carrie Fried Thorpe.

Author of "WANTED Technologies: One Billion Help Wanted Advertisements Database: Uses & Limitations." presented by Malcolm Cohen, Ph.D. and Laura R. Steiner, MBA at: American Board of Vocational Experts (ABVE) 2015 Annual Conference, San Antonio, TX, March 21, 2015, co-authored with Malcolm S. Cohen.

Author of "Using Online Help-Wanted Advertising Data and Other Indicators to Access Whether a Plaintiff's Job Search was Sufficient to Mitigate Damages" by Malcolm Cohen, Ph.D. and Laura R. Steiner, MBA at: The Earnings Analyst, Official Journal of the American Rehabilitation Economics Association, vol. 13, 2013: 13-34, co-authored with Malcolm S. Cohen.

Author of "A Scientific Approach to Mitigation of Economic Damages in Discrimination and Wrongful Discharge" Presented by Malcolm Cohen, Ph.D. at:  National Association of Forensic Economists (NAFE) Forensic Economics II Session at the 2012 ASSA Meeting, Chicago, IL, January 7, 2012, co-authored with Malcolm Cohen, Ph.D.

Author of "How Economic Research Can Provide a Scientific Basis for Measuring Compensation Loss and Failure to Mitigate Damages" 29th Annual Labor and Employment Law Institute, sponsored by the Institute for Continuing Legal Education, the Michigan Law Schools, the Michigan State Bar Association and the FMCS, April 1, 2004, co-authored with Malcolm Cohen, Ph.D. and Teresa Fulimeni, MA.

Member of the research team for a study of the impact of the 'New Economy' on the overtime provisions of the Fair Labor Standards Act for the U.S. Department of Labor, 2001.

Conducted usability testing and surveyed consumer perceptions of products including mobile internet, industry-specific search engines, web-based e-mail, and other high-tech consumer products among consumers in the United States, Israel, and Singapore.

# ☑ Employment Research Corporation

Conducted small- and large-scale survey research products including customer satisfaction, internal employee surveys, new product introduction, advertising awareness, and customer tracking studies. Analyzed results and presented recommendations.  Projects were completed for clients in a variety of industries including consumer products, healthcare, financial services, and technology companies.

While at the U.S. Postal Service, worked with adverting agencies on regional marketing campaigns for the Express Mail product line.

Coordinated efforts to increase customer satisfaction ratings with the Postal Service through employee training and employee interviewing.  Tracked performance through survey research and large database analysis.  Coordinated region-wide *Dale Carnegie* training of window clerks.  Guided divisional training coordinators in implementation of training and customer satisfaction measurement issues.

## Professional Affiliations

American Association for Public Opinion Research (AAPOR)

National Association of Forensic Economics (NAFE)

Society for Human Resource Management (SHRM)

# Employment Research Corporation

## 2 — CASES TESTIFIED IN PAST FOUR YEARS

| Cite | Deposition Date | Trial Date | Court | Case Number | Plaintiff or Defendant |
|---|---|---|---|---|---|
| Jimmy Lee Bynum Jr. v CSL Behring et al | 07/27/2022 | | In the Circuit Court of Kankakee County, Illinois | 2020L107 | D |
| Fredeen v California Cemetery & Funeral Services | 04/20/2022 03/17/2022 | | Superior Court of the State of California for the County of Los Angeles | BC706930 | P |
| Morgan et al v Rohr Inc. et al | 10/26/2021 | | USDC, Southern District of California | 3:20-CV-00574-GPC-AHG | P |
| Torrez v Del Taco LLC | 10/11/2021 | | Superior Court of The State of California for The County of Alameda | JCCP4904 | P |
| Zibdea v Jones Ontario Acquisition | | 8/19/2021 | In Re Arbitration ADR Services Inc. | 19-6557 | D |
| Escamilla v Ono Hawaiian BBQ, Inc. | 08/02/2021 | | Superior Court of The State of California for The County of Los Angeles | BC651992 | P |
| Guzman v Marriott | 07/28/2021 | | Superior Court of The State of California for The County of Riverside | PSC1601106 | D |
| Alvarado v Wal-mart | 07/21/2021 | | USDC, Central District of California | 2:20-cv-01926-AB-KK | P |
| Bucio v ABM Industries | 01/29/2021 | | Superior Court of The State of California for The County of San Francisco | CJC-07-004502 | P |
| Christian Koszka v California State Assembly | 03/20/2019 | | Superior Court of The State of California for The County of Sacramento | 34-2016-00199407 | D |
| Zuniga v Alexandria Care Center | 11/19/2018 | | Superior Court of the State of California County of Los Angeles | BC529776 | P |

# ☑ Employment Research Corporation

**3— Curriculum Vitae**

**Teresa Fulimeni, MA**

**Employment Research Corporation**
**2661 Emerald Ave**
**Ann Arbor, Michigan 48104**
**Office:  (734) 477-9040**
**Direct:  (734) 678-8605**
**tf@employmentresearch.com**

## Current Position

Senior Analyst, Employment Research Corporation, December 2003-present

## Previous Positions

Research Associate, Employment Research Corporation, August 2000-December 2003

Associate Project Manager/Instructor/Facilitator, Nommos Consulting Group,
August 1998-August 2000

Teaching Assistant, University of Iowa, August 1996-May 1998

## Education

Master of Science in Predictive Analytics, Northwestern University, April 2016

Master of Arts in Economics, University of Iowa, July 1998

Bachelor of Arts in Economics, magna cum laude, Ohio Wesleyan University, May 1996

## Continuing Education

New Horizons Computer Learning Centers, "2778 Writing Queries Using Microsoft SQL Server 2008 Transact-SQL," July 2011

University of Michigan Inter-university Consortium for Political and Social Research (ICPSR) Summer Program in Quantitative Methods of Social Research, "Categorical Data Analysis: Regression Models for Discrete Outcomes", August 2004

## Professional Activities

Co-author with Malcolm Cohen, Ph.D. and Laura Steiner, MBA, "How Economic Research Can Provide a Scientific Basis for Measuring Compensation Loss and Failure to Mitigate Damages" 29th Annual Labor and Employment Law Institute, sponsored by the Institute for Continuing Legal Education, the Michigan Law Schools, and The Michigan State Bar Association and the FMCS, April 2004.

# ☑ Employment Research Corporation

Co-presenter to Cleveland Inns of Court with Malcolm Cohen, Ph.D., "How Economic and Statistical Research Can Provide a Scientific Basis for Testimony in Mitigation and Discrimination Cases," February 10, 2011

**Economic and Statistical Consulting**

Prepared analyses of economic loss in cases involving premature death, injury, termination from work, and age, race, and gender discrimination.

Worked on statistical analyses for plaintiffs and defendants, including reduction in force and compensation.

Managed, planned and performed comprehensive employment audits including statistical analyses for corporations and government agencies, and management of large payroll and administrative databases

Calculated damages in wage and hour cases under the FLSA and other state and local labor regulations.

Provided expert testimony in cases of economic loss

# ☑ Employment Research Corporation

## 4 — Cases Testified IN PAST FOUR YEARS

| Cite | Deposition Date | Trial Date | Court | Case Number | Plaintiff or Defendant |
|------|-----------------|------------|-------|-------------|------------------------|
| Bowers and Tidwell v Prolink Staffing Services LLC | 6/23/2022 | | Superior Court of the State of California for the County of Los Angeles | 21STCV22188 | P |
| Fredeen v California Cemetery & Funeral Services | 03/18/2022 | | Superior Court of the State of California for the County of Los Angeles | BC706930 | P |
| Zallis v Hanlon et al | 02/04/2022 | | In the Circuit Court of Cook County, Illinois, Law Division | 2018L009238 | P |
| Reiter and Seagroves et al v Susan Sanford | 12/06/2021 | | In the Circuit Court of Shelby County, Tennessee for the 30th Judicial District of Memphis | CT-2519-19 | D |
| Martins v Flowers Baking Co | 08/04/2021 | | United States District Court for the Middle District of Florida Tampa Division | 8:16-cv-03145-MSS-JSS | P |
| The St. Louis Police Leadership et al v City of St. Louis | 02/17/2021 | | Missouri Circuit Court Twenty-Second Judicial Circuit (St. Louis City) | 1622-CC00779 | P |
| Bucio v ABM Industries | 01/29/2021 | | Superior Court of The State of California for The County of San Francisco | CJC-07-004502 | P |
| The St. Louis Police Leadership et al v City of St. Louis | 11/03/2020 | | Missouri Circuit Court Twenty-Second Judicial Circuit (St. Louis City) | 1522-CC00235 | P |

# Employment Research Corporation

## 5 — RATES

Dr. Malcolm Cohen rate is $550 per hour

Ms. Laura Steiner / Ms. Teresa Fulimeni rate is $385 per hour

Senior Analyst rate is $350 per hour

Analyst rate is $275 per hour

# EXHIBIT G

**EXHIBIT G**

**Individuals Rules and Procedures for Civil Cases**
**Judge Lorna G. Schofield**
**III. Motions Rules and Procedures**
**C. Particular Matters and Motions**
**5. Class Actions**

**PRELIMINARY APPROVAL DISCLOSURE**

| | |
|---|---|
| Proposed Plan of Allocation | ¶1.18 "Net Settlement Fund" means the amount of money remaining after the Settlement Fund is reduced by the following amounts: (x) Plaintiffs' Counsel's attorneys' fees up to $833,250, and costs up to $100,000, subject to Court approval; and (y) Incentive Awards to Named Plaintiffs, subject to Court approval.<br><br>¶3.4 Net Settlement Fund Allocation.  Individual Settlement Amounts for Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members shall be computed from the Net Settlement Fund as follows:<br><br>(a) First, the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class, as defined above, will be allocated an amount not to exceed $200,000.00 from the Net Settlement Fund, to be divided equally across those Settling Class Members who are part of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.<br><br>(b) Second, fifteen percent (15%) of the remaining Net Settlement Fund, will be divided on a pro rata basis across the Named Plaintiffs, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members based on their number of weeks worked and average overtime rate during the relevant time periods.<br><br>(c) Third, the remaining funds in the Net Settlement Fund will be divided on a pro rata basis across the Named Plaintiffs and FLSA Opt-Ins who worked in a qualifying position during the relevant periods based on their total number of weeks worked and overtime rates of pay, based on Peloton's records.<br><br>(d) Fourth, because of differences in the volume of alleged off-shift work, greater commission |

**EXHIBIT G**

**Individuals Rules and Procedures for Civil Cases**
**Judge Lorna G. Schofield**
**III. Motions Rules and Procedures**
**C. Particular Matters and Motions**
**5. Class Actions**

**PRELIMINARY APPROVAL DISCLOSURE**

| | |
|---|---|
| | payments, and increased likelihood of success on the merits, FLSA ISR Collective members allocation under section (c) shall be multiplied by a factor of three.<br><br>(e) The calculations in (b) – (d) will result in each Named Plaintiffs, FLSA Opt-Ins, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members Individual Settlement Amounts.<br><br>(f) The Parties note that 11 FLSA Opt-Ins are also Class Members.  For purposes of Net Settlement Fund allocation, individuals who are a member of the Rule 23 New York State Settlement Class or the Rule 23 Pennsylvania State Settlement Class will not have any workweeks double counted.  Rather, any workweeks during which such individuals met the definition of a State Settlement Class or FLSA Collective shall be counted once both for the purpose of calculating the Gross Workweek Amount and the individual's Individual Settlement Amount.<br><br>(g) Defendant's records of weeks worked for each Named Plaintiff, FLSA Opt-In, Rule 23 New York State Settlement Class Member, and Rule 23 Pennsylvania State Settlement Class Member shall be dispositive.<br><br>(h) The Settlement Administrator will calculate the Individual Settlement Amounts. |
| (a) Total Settlement Fund (defined as "Gross Settlement Amount" in Class Settlement Agreement and Release ¶1.13) | $2,500,000.00 |
| (b) Claims Administrator's Fees Costs and Expenses (defined as "Settlement Administration Costs" in Class | $25,659.96 (Estimate for Settlement Administration) |

**EXHIBIT G**

**Individuals Rules and Procedures for Civil Cases**
**Judge Lorna G. Schofield**
**III. Motions Rules and Procedures**
**C. Particular Matters and Motions**
**5. Class Actions**

**PRELIMINARY APPROVAL DISCLOSURE**

| | |
|---|---|
| Settlement Agreement and Release ¶1.36) | |
| (c) Proposed Attorneys' Fees Costs and Expenses (Class Settlement Agreement and Release ¶3.3(a)(i)) | $833,250.00 (Fees of 33.33%); Expenses/Costs not to exceed $100,000 (including Settlement Administration) |
| (e) Named Plaintiffs' Proposed Service Fee (defined as "Incentive Award" in the Class Settlement Agreement and Release ¶1.15) | $25,000.00 to each of Plaintiffs Mateer and Johnson, and $10,000.00 to Plaintiff Branchcomb |
| (f) Any Other Deduction from Settlement Fund Before Payment to Class members | N/A |
| (g) Anticipated Recovery in Dollars | Pursuant to ¶3.4(h) and ¶5.3 of the Parties' Agreement the Settlement Administrator will be responsible for calculating individual settlement amounts and mailing Settlement Payments to Named Plaintiffs, FLSA Opt-Ins, and Settling Class Members and therefore the exact figures have not yet been calculated.  In addition, the class sizes are approximate.  Plaintiffs will either supplement this submission or provide exact figures prior to final approval based on the Court's preference. |

# EXHIBIT H

**EXHIBIT H**

**Individuals Rules and Procedures for Civil Cases**
**Judge Lorna G. Schofield**
**III. Motions Rules and Procedures**
**C. Particular Matters and Motions**
**5. Class Actions**

**PROPOSED SCHEDULE OF CLASS ACTION SETTLEMENT PROCEDURE**

| **Date** | **Activity** |
|---|---|
| July 7, 2023 | Plaintiffs' submission of Unopposed Motion for Certification of Settlement Classes, Preliminary Approval of Settlement, Appointment of Plaintiffs' Counsel as Class Counsel, Appointment of Named Plaintiffs as Class representatives, Approval of the Proposed Notices of Settlement and Class Action Settlement Procedure |
| A date to be set by the Court | Order Granting Preliminary Approval |
| Not later than twenty (20) calendar days after the Court has issued the Preliminary Approval Order | Defendant shall disclose the names, Last Known Addresses, last known email addresses, and dates of employment for Class Members and FLSA Opt-Ins to Class Counsel and to the Settlement Administrator (the "Class Lists") |
| No later than fourteen (14) calendar days after receipt of the Class Lists | Settlement Administrator will mail the Notices to all Class Members and FLSA Opt-Ins; the Settlement Administrator will e-mail the Notice to all FLSA Opt-Ins at his or her last known e-mail Address; the Settlement Administrator shall post a website containing information about the Settlement, including all relevant dates and pleadings; The Settlement Administrator will establish and staff a toll-free telephone line that Class Members can use to contact the Settlement Administrator with questions about the Settlement or to change their addresses. |
| No later than thirty (30) calendar days after the date the Settlement Administrator mails the Notice | "Response Deadline" Deadline for Opt-Out and Requests for Exclusion; Deadline for Objections to Settlement<br><br>In the event a Notice is returned to the Settlement Administrator, the Notice shall be deemed received once it is mailed for the second time, and the Class Member / FLSA Opt-In shall have up to and including ten (10) calendar days after the Response Deadline to request to opt out of the Settlement.<br><br>If the Settlement Administrator receives a defective submission from a Class Member, the Settlement Administrator will mail the Class Member a cure letter ("Cure Letter") within three (3) business days of receiving |

**EXHIBIT H**

**Individuals Rules and Procedures for Civil Cases**
**Judge Lorna G. Schofield**
**III. Motions Rules and Procedures**
**C. Particular Matters and Motions**
**5. Class Actions**

**PROPOSED SCHEDULE OF CLASS ACTION SETTLEMENT PROCEDURE**

| <u>Date</u> | <u>Activity</u> |
|---|---|
| | the defective submission to advise the Class Member that their submission is defective and that the defect must be cured to render the Request for Exclusion valid. The Class Member will have until the later of (x) the Response Deadline or (y) fifteen (15) calendar days from the date the Cure Letter is sent, to postmark, fax, or electronically submit a revised Request for Exclusion. |
| Within five (5) business days of receipt of Objections | The Settlement Administrator shall provide any Objections to Defendant's Counsel and to Class Counsel within five (5) business days of receipt of same. |
| Within forty-five (45) calendar days of the expiration of the Response Deadline | The Parties shall submit a Motion for Final Approval to the Court which, among other things, shall identify the total number of FLSA Opt-Ins and Settling Class Members, detail the Individual Settlement Amounts that each Settling Class Member and FLSA Opt-In shall receive, and whether any Objections to the Settlement have been made. The Motion shall also include a report from the Settlement Administrator certifying that the Notice process has been completed in compliance with this Agreement and the Court's Preliminary Approval Order. In conjunction with this filing, the Parties shall present a proposed Final Approval Order and Judgment. |
| At least fourteen (14) calendar days prior to the Final Approval Hearing | Class Counsel shall file a motion for attorneys' fees and costs. |
| At least seven (7) days before the Final Approval Hearing | Class Counsel shall file any Objections with the Court (or as otherwise ordered by the Court). |
| A date to be set by the Court. | Final Approval Hearing |
| Within twenty (20) calendar days after the Final Approval Order Effective Date | Defendant will deposit 100% of the Gross Settlement Amount with the Settlement Administrator |
| Within twenty-one (21) calendar days of the Final Approval Order Effective Date | Initial payments to Named Plaintiffs, FLA Opt-Ins and Settling Class Members will be mailed by the Settlement Administrator |

**EXHIBIT H**

**Individuals Rules and Procedures for Civil Cases**
**Judge Lorna G. Schofield**
**III. Motions Rules and Procedures**
**C. Particular Matters and Motions**
**5. Class Actions**

**PROPOSED SCHEDULE OF CLASS ACTION SETTLEMENT PROCEDURE**

| <u>Date</u> | <u>Activity</u> |
|---|---|
| Within thirty (30) calendar days after the Final Approval Order Effective Date | The Settlement Administrator shall issue payment(s) from the Settlement Fund in the amounts ordered by the Court to Class Counsel. |
| One hundred and twenty (120) calendar days after issuance of initial checks | All initial checks will expire one hundred and twenty (120) calendar days after they are issued and will state the expiration date on their faces. Any unclaimed funds from the Net Settlement Fund shall be donated *cy pres* to the New York City Legal Aid Society. |