UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH D. MATEER,
CHRISTOPHER BRANCHCOMB,
and KATHARINE JOHNSON,
*On behalf of themselves and all others*
*similarly situated,*

      Plaintiffs,

      vs.

PELOTON INTERACTIVE, INC.

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 1:22-cv-00740

JUDGE LORNA G. SCHOFIELD

MAGISTRATE JUDGE
GABRIEL W. GORENSTEIN

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS .....................................................................................4

III.    SUMMARY OF SETTLMENT TERMS, THE CLASS REACTION, AND
        DISTRIBUTION PLAN .......................................................................................5

        A.      The Settlement Terms ...............................................................................5

        B.      The Settlement Payments ..........................................................................9

                1.      Payments to the Rule 23 New York Initial Hire Notice and Wage
                        Statement Settlement Class ............................................................9

                2.      Payments to the FLSA Collective and Rule 23 New York and
                        Pennsylvania State Settlement Classes .........................................9

IV.     ARGUMENT ......................................................................................................11

        A.      The Standards And Procedures For Final Approval Of Class Action
                Settlements Under Rule 23 Have Been Satisfied ....................................11

                1.      This settlement procedure is procedurally fair given the terms and
                        negotiations ...................................................................................12

                2.      This settlement satisfied the *Grinnell* factors and is
                        substantively fair ..........................................................................13

        B.      The Standards And Procedures For Final Approval Of Class Action
                Settlements Under The FLSA Have Been Satisfied .................................18

        C.      Final Certification Is Appropriate To Resolve All Claims Against Peloton
                Interactive, Inc. ......................................................................................18

V.      CONCLUSION ...................................................................................................19

## TABLE OF AUTHORITIES

## CASES

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ...............................................11, 18

*Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ...........................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* ("*Visa*"), 396 F.3d 96, 116 (2d Cir. 2005) .............11

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ....................................................11

*Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000) .........................................................17

*Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ........................................................19

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)................................13, 16

*Sewell v. Bovis Lend Lease LMB, Inc.*,
        No. 09 Civ 6548, 2012 WL 1320124, at *11 (S.D.N.Y. Apr. 16, 2012) ...................15

*Torres v. Gristede's Oper. Corp.*,
        No. 04 Civ. 3316, 2010 WL 5507892, at *6 (S.D.N.Y. Dec. 21, 2010).....................16

*Ayers v. SGS Control Servs., Inc.*,
        No. 03 Civ. 9078, 2008 WL 4185813, at *4 (S.D.N.Y. Sept. 9, 2008) ................13, 14

*McBean v. City of New York,* 233 F.R.D. 377, 387 (S.D.N.Y. 2006)......................................15

*Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003) ........................................ 16-17

*In re Austrian & German Bank Holocaust Litig.*,
        80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000)..................................................................14

*Brooks v. Am. Export Indus., Inc.*,
        1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977).........................16

*Craig v. Rite Aid Corp.*,
        No. 08 Civ. 2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013) ...........................15

*Zhou v. Wang's Rest.*,
        No. 05 Civ. 279, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007).......................18

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 .....................................................................................................................11

I.        <u>INTRODUCTION</u>

On behalf of themselves and the classes they represent, Plaintiffs Joseph Mateer, Christopher Branchcomb, and Katharine Johnson hereby move for an Order granting Final Approval of the Settlement Agreement (as amended by the parties) that was approved preliminarily by the Court on August 23, 2023. (ECF. No. 158).  Prior to the filing of the Notice of Motion for Final Approval of Settlement Agreement, Defendant Peloton Interactive, Inc., ("Peloton") was provided a copy thereof and the related moving papers and exhibits in support. Peloton does not oppose the relief sought herein. *See* Declaration of Class Counsel, J.R. Howell ("Howell Decl.") at ¶ 34. A copy of the final Settlement Agreement is attached as Exhibit 1 to the Howell Declaration.[1]

On January 28, 2022, Plaintiff Joseph Mateer filed this collective and class action alleging that Peloton had failed to pay certain of its employees overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law. In April of 2022, Plaintiff Mateer amended the Complaint to add two additional Named Plaintiffs, Katharine Johnson from the Commonwealth of Pennsylvania, and Christopher Branchcomb, who was residing in the State of Texas at the time of filing. That Amended Complaint added Pennsylvania state law claims and related class allegations by Plaintiff Johnson and additional individual and class claims under New York's Wage Theft Prevention Act (WTPA) by Plaintiff Mateer. The Complaint was amended once more to clarify Plaintiff Johnson's legal theory on July 30, 2022. Peloton denies all allegations in Plaintiffs' Complaint, First Amended Complaint, and Second Amended Complaint.

---

[1] Unless otherwise noted, all exhibits referenced herein are attached to the Howell Declaration.

Since the granting of preliminary approval of the FLSA ISR and Showroom Sales Personnel Collective ("FLSA Collective"), Rule 23 New York State Settlement Class, Rule 23 Pennsylvania State Settlement Class, and Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class (collectively, "class members"), the Court-appointed Settlement Administrator, Simpluris, Inc., reports that it sent the class notices to 2,028 addresses as furnished by Peloton. A chart detailing the number of returned and remailed notices is listed in the Settlement Administrator's Declaration at Paragraph 16. *See* Declaration of Lindsay Romo ("Romo Decl.") ¶ 16, attached as Exhibit 2.

A total of sixteen (16) notices were returned to Simpluris from among the FLSA Opt-ins, the Rule 23 New York State Settlement Class, and the Pennsylvania State Settlement class. *See* Exhibit 2 at ¶ 9. Of these, none were returned with a forwarding address. *Id.* A total of one hundred and twenty (120) notices were returned to Simpluris. *Id.* Of these, twenty-two (22) were returned with a forwarding address. If a Class Member's Class Notice was returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e., skip trace) on all of these addresses by using Accurint, a research tool owned by Lexis-Nexis. *Id.* Simpluris used the Class Member's name and previous address to locate a current address. *Id.* Through the advanced address searches, Simpluris was able to locate fifty-three (53) updated addresses for the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class and eleven (11) updated addresses for the notice to the remaining classes. *Id.* Simpluris promptly mailed the relevant Notice to those updated addresses. *Id.* According to the Settlement Administrator, As of this date, there are forty-five (45) notices to the Rule 23 Initial Hire Notice and Wage Statement Settlement Class that remain undeliverable as of this date and five (5) such notices to the remaining classes. *Id.*

The Settlement Administrator received a total of 16 opt-out forms and 0 objections. The breakdown by class type of opt-out notices is set forth below:

| Class Type | Number of Opt-Outs | Objections |
|---|---|---|
| FLSA Collective | 0 | 0 |
| Rule 23 NY Wage Class | 2 | 0 |
| Rule 23 PA Wage Class | 0 | 0 |
| Rule 23 NY WTPA Class | 14 | 0 |

*See* Ex. 2 at ¶¶ 7-9, 11.

The response from class members has been overwhelmingly positive. No class members have objected to the settlement terms. Howell Decl. ¶ 38. There were no requests for exclusion from either the Rule 23 Pennsylvania State Settlement Class or the FLSA Collective. Howell Decl. ¶ 30. There were only 2 requests for exclusion from the New York State Settlement Class and only 14 such requests from the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class. Howell Decl. ¶ 30.

The result obtained is fair, reasonable, and will enable the many class members who previously joined the federal claim to receive recompense for the alleged wage violations, alleged violations of the WTPA, and to avoid the risks of further litigation. Plaintiffs request, and Peloton does not oppose, that the Court certify the settlement collectives and classes and grant final approval of the settlement.

3

II.     STATEMENT OF FACTS

Peloton makes and distributes fitness equipment and interactive fitness classes.  Its products, services, memberships, and/or subscriptions were sold by employees who worked out of its offices in New York or Texas or who worked remotely as well as sales personnel who worked from showrooms in various locations across the country.  These employees were generally categorized as inside sales representatives (ISRs) or showroom sales personnel. All of these employees worked in pre-assigned shifts and were paid a combination of wages and commissions. The operative Complaint alleges Defendant failed to pay for all overtime worked and failed to adequately compensate them for those overtime hours that were actually compensated. The operative Complaint also alleges that Peloton failed to provide its New York employees with initial hire notices and wage statements containing information required by the WTPA. Peloton vigorously denies these allegations against which it has raised numerous defenses.

The Court conditionally certified an FLSA collective action by Order dated July 13, 2022. (ECF No. 61). Notice was issued to more than 1,300 ISRs and showroom sales personnel nationwide. The opt-in period concluded on September 26, 2022, with 169 individuals filing consent forms to join the FLSA action.

Class claims for related unpaid overtime under New York and Pennsylvania state law claims are brought pursuant to Rule 23 of the Federal Rules of Civil Procedure for the subset of ISRs and showroom sales personnel in those respective jurisdictions.

Additionally, there is a claim under the New York Wage Theft Prevention Act that alleged Peloton failed to provide initial hire notices and wage statements containing certain information.

While the FLSA Collective is nationwide in scope, the Rule 23 classes are limited to their respective states. The FLSA Collective was not an overlap of the Rule 23 classes. Not every member of the Rule 23 New York and Pennsylvania State Settlement Classes have opted in to the FLSA Collective. The individuals who comprise the Rule 23 Initial Hire Notice and Wage Statement Settlement Class were employed solely in the state of New York and are not restricted to employees who worked as ISRs or as Showroom Sales Personnel. Additionally, the FLSA Collective was limited to a three-year lookback period for statute of limitations purposes, but members of the Rule 23 New York State Settlement Class consisted of employees who had worked at Peloton within the six years prior to the filing of the original complaint, because of the longer limitations period available under New York state law.

On December 8, 2022, the Parties mediated this action before Susan Eisenberg, a private mediator well-versed in the wage and hour and class action matters at issue. Her resume is attached to the Howell Declaration as Exhibit 3. By the time of the mediation, the Parties had conducted extensive discovery and litigated through early dispositive motions. Discovery materials included thousands of pages of documents produced over several months and included detailed compensation data for individuals who consented to join the FLSA action. The Plaintiffs conducted interviews and surveys of FLSA opt-ins, which included members of the putative New York and Pennsylvania state law classes. Initial consultations with the mediator and informal discussions among the Parties occurred in the days leading up to the mediation on December 8, 2022, which was followed by several months of ongoing discussions of settlement terms and conditions.

What the Plaintiffs present for the Court's consideration is the culmination of several months of arms-length, contentious negotiation. The terms of the settlement are set forth below.

III.    SUMMARY OF SETTLEMENT TERMS, THE CLASS REACTION, AND
DISTRIBUTION PLAN.

    A.    The Settlement Terms

    The Settlement Agreement defines four settlement classes:  (1) all ISRs or Showroom

Sales Personnel who filed valid consent forms to opt-in to the FLSA collective action (the

"FLSA Collective"); (2) all former and current employees who worked for Peloton as ISRs, and

who allegedly worked more than forty hours in one or more workweeks of their employment in

the state of New York, and who allegedly were not paid overtime for all hours worked at the

statutorily required rate of one-and one-half times their regular rate of pay, at any time between

January 27, 2016, and July 7, 2023, (the "Rule 23 New York State Settlement Class"); (3) all

former and current employees who worked for Peloton as non-exempt Showroom Sales

Personnel, who allegedly worked more than forty hours in one or more workweeks of their

employment in the state of Pennsylvania, and who allegedly were not paid overtime for all hours

worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any

time between January 27, 2019, and July 7, 2023, (the "Rule 23 Pennsylvania State Settlement

Class"); and (4) all current and former employees who worked for Peloton in the state of New

York from January 27, 2016 through December 31, 2020, excluding those current and former

employees who have released claims against Peloton under the New York Labor Law (NYLL)

(the "Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class"). Howell

Decl., ex. 1 at ¶¶ 1.9-1.11; 1.30-1.32. The 166 members of the FLSA Collective are identified in

the list attached to the Settlement Agreement as Exhibit A. Howell Decl., ex. 1. After accounting

for exclusions, the Settlement Administrator reports that there are 23 members of the Rule 23

New York State Settlement Class; 46 members of the Rule 23 Pennsylvania State Settlement

Class; and 1,805 members of the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class.  Howell Decl. Ex. 2 at ¶ 29.

The settlement provides for a gross settlement amount of $2,500,000.00, which amount is the maximum amount that Peloton is required to pay under the settlement. Howell Decl., Ex. 1 at ¶ 1.13. From this amount all required payments will be made including all payments to class members, attorneys' fees and litigation costs, the full cost of settlement administration, class representative enhancement payments, and all payroll and withholding taxes. *Id*. The settlement will continue to be managed by the court-appointed settlement administrator, Simpluris, Inc. Howell Decl. Ex 2 at ¶ 17.

Plaintiffs' counsel will seek no more than 33 1/3 percent of the gross settlement amount as attorneys' fees, plus an additional amount for actual litigation costs. Howell Decl., Ex. 1 at ¶ 3.3(a)(i). These two amounts must be approved by the Court and will be requested in a separate motion. In addition, the settlement provides for leave to request class representative enhancement payments not to exceed $25,000 each for Plaintiffs Mateer and Johnson and $10,000 for Plaintiff Branchcomb.  *Id*. at ¶ 3.3(b)(i).

The Net Settlement Fund (all Settlement Funds remaining after deductions for the payment of Court-approved Settlement Administration Costs, Fees Award, Costs, and Incentive Awards) will be computed from the Net Settlement Fund as follows:

(a)     First, the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class, as defined above, will be allocated an amount not to exceed $200,000.00 from the Net Settlement Fund.

(b)     Second, fifteen percent (15%) of the remaining Net Settlement Fund, will be divided on a *pro rata* basis across the Named Plaintiffs, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members based on their number of weeks worked and average overtime rate during the relevant time periods.

(c)    Third, the remaining funds in the Net Settlement Fund will be divided on a *pro rata* basis across the Named Plaintiffs and FLSA Opt-Ins who worked in a qualifying position during the relevant periods based on their total number of weeks worked and overtime rates of pay, based on Peloton's records.

(d)    Fourth, because of differences in the volume of alleged off-shift work, greater commission payments, and increased likelihood of success on the merits, FLSA ISR Collective members allocation under section (c) shall be multiplied by a factor of three.

(e)    The calculations in (b) – (d) will result in each Named Plaintiffs, FLSA Opt-Ins, Rule 23 New York State Settlement Class Members, and Rule 23 Pennsylvania State Settlement Class Members Individual Settlement Amounts.

(f)    The Parties note that 11 FLSA Opt-Ins are also Class Members.  For purposes of Net Settlement Fund allocation, individuals who are a member of the Rule 23 New York State Settlement Class or the Rule 23 Pennsylvania State Settlement Class will not have any workweeks double counted.  Rather, any workweeks during which such individuals met the definition of a State Settlement Class or FLSA Collective shall be counted once both for the purpose of calculating the Gross Workweek Amount and the individual's Individual Settlement Amount.

(g)    Defendant's records of weeks worked for each Named Plaintiff, FLSA Opt-In, Rule 23 New York State Settlement Class Member, and Rule 23 Pennsylvania State Settlement Class Member shall be dispositive.

(h)    The Settlement Administrator will calculate the Individual Settlement Amounts.

Howell Decl., Ex. 1 at ¶ 3.4.

No funds will revert to Defendant and every participating class member who worked at least one work week during the Class Period will receive remuneration from the Net Settlement Fund.

These allocations are based upon a review of the average overtime rates, number of weeks worked, the estimated exposure for each class as well as the risk of loss, in light of overall principals of fairness to the absent class members and the members of the FLSA Collective. The estimated exposure for each class is based upon actual payroll and time records, the maximum limitations period for each class, the proper overtime rate for each class member, and the relative strength and weaknesses of Peloton's substantive and procedural defenses to each class, with

noted discrepancies with respect to the strengths of certain dispositive defenses against

Showroom Sales Personnel as opposed to those against the ISRs.

        B.      The Settlement Payments

            1.      Payments to the Rule 23 New York Initial Hire Notice and Wage
                     Statement Settlement Class.

Members of the Rule 23 Initial Hire Notice and Wage Statement Settlement Class who

did not return to the settlement administrator a timely and valid form to opt-out of the settlement

will be entitled to an equal share of $200,000, in the amount of $110.80. Howell Decl. ¶ 32.

            2.      Payments to the FLSA Collective and Rule 23 New York and
                     Pennsylvania State Settlement Classes.

A summary of average class member payments is set forth on page 15, *infra*.

Approximate payments to each participating class member are attached to the Howell

Declaration as Exhibit 4. These figures are approximations because the class members will be

sharing *pro rata* of the net settlement funds remaining after the Court makes a ruling on

Plaintiffs' requests for attorney fees, litigation costs, and settlement administrator expenses. At

this juncture, the approximates attached as Exhibit 4 to the Howell Declaration are the best guide

that can be provided to the Court to assess individual class member recovery.

Members of the FLSA Collective, and the Rule 23 New York and Pennsylvania State

Settlement Classes who did not return to the settlement administrator a timely and valid form to

opt-out of the settlement will be entitled to a *pro rata* share of the net settlement fund allocated

to their respective classes—fifteen percent (15%) to the Rule 23 New York and Pennsylvania

State Settlement Classes and the balance to the FLSA Collective. This *pro rata s*hare will be

determined based upon the total number of weeks worked during the relevant period in which a

class member worked as multiplied by their average overtime rate.  *Pro rata* allocations to

members of the FLSA Collective who worked in a position classified as "inside sales" (defined in the Settlement Agreement in ¶ 1.10) will be multiplied by a factor of three to account for a commensurate difference in their average overtime rate as compared to the other collective members, and other factors discussed below.

Based upon the class member compensation data produced by Peloton and analysis issued by Plaintiffs' experts, it was apparent that on average, those class members who worked in positions classified as Inside Sales Representatives had "regular rates" that, on average, were approximately three times greater than those class members who worked as Showroom Sales Personnel at showroom locations. Additionally, it was apparent that individuals who worked as Inside Sales Representatives either claimed to have worked more off-the-clock hours without compensation or had access to systems that allegedly facilitated off-the-clock work more readily than their counterparts who worked in the showrooms. Lastly, it was counsel's assessment that the likelihood of success on the merits for individuals who worked as Showroom Sales Personnel was substantially less than that for individuals who worked as Inside Sales Representatives, owing to factors related to Peloton's available defenses, class representative challenges, statute of limitations factors, and procedural/venue questions. As a result, the parties agreed that increasing the *pro rata* share of Inside Sales Representatives within the FLSA collective by a factor of 3 (using a 3X multiplier) was a fair and reasonable mechanism to address apparent disparities among these two groups of FLSA Collective members in terms of compensation, off-the-clock hours allegedly worked, and likelihood of success on the merits.

The notices of preliminary approval, a summary of the terms of the Settlement Agreement (as amended by the parties), along with a link to a website containing the settlement agreement, were sent to class members by the settlement administrator. Howell Decl. ¶ 31. The

settlement provided for a single re-mailing, utilizing available databases, for notices returned as undeliverable, and posting of the notice and Settlement Agreement on a website established by the settlement administrator. Howell Decl., Ex. 1 at ¶ 4.3. The settlement administrator made reasonable efforts to locate the correct mailing address before re-mailing undeliverable notices. Howell Decl. at ¶ 31.

Class members were provided an opportunity to opt-out of the settlement; all class members were given an opportunity to file objections to the settlement and provided notice of their opportunity to appear at the final approval hearing. Howell Decl. at ¶¶ 29-31.

Plaintiffs submit that the settlement terms are fair and reasonable and therefore should be approved by the Court. Peloton has not indicated an intent to oppose this request. Howell Decl. ¶ 34.

IV.    ARGUMENT

A.    The Standards and Procedures For Final Approval Of Class Action Settlements Under Rule 23 Have Been Satisfied.

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Rule 23(e) requires approval to ensure that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* ("*Visa*"), 396 F.3d 96, 116 (2d Cir. 2005); *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts.").

In the Second Circuit, courts examine both procedural and substantive fairness with the understanding that the law favors compromise and settlement of class actions. *Visa*, 396 F.3d at 116-19. Settlement eliminates the uncertainty, delay, and expense of a trial, while simultaneously

reducing the burden on judicial resources. *See id*. Here, the settlement is both procedurally and substantively fair.

          1.      This settlement procedure is procedurally fair given the terms and <u>negotiations.</u>

Fairness is evaluated by examining "the settlement's terms and the negotiating process leading to settlement." *Visa*, 396 F.3d at 116. In reviewing procedural fairness, the Court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quotation omitted). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116.

Here, the settlement was reached through negotiation among experienced counsel with the assistance of an independent mediator, after more than a year of litigation. *See supra* section II (describing discovery conducted and settlement negotiations); *see also* Howell Decl. at ¶¶ 8-17 (same). This litigation allowed the parties to assess the strength of their claims and defenses and reach a settlement based on well-informed arm's length negotiations. Such negotiations raise a presumption that the settlement satisfies the requirements of due process. *Visa*, 396 F.3d at 116-17 (settlement presumptively procedurally fair where "a consensual resolution was achieved based on full information and honest negotiation between well-represented and evenly balanced parties"); *D'Amato*, 236 F.3d at 85-86 (settlement procedurally fair where it was based on arm's length negotiations by experienced counsel); *see also* Howell Decl. ¶ 17-18 (describing the settlement negotiation process).

2.    <u>This settlement satisfied the *Grinnell* factors and is substantively fair</u>.

In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), the Second Circuit set forth numerous factors a district court is to consider when assessing the substantive fairness of a class action settlement. These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of class members to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id*.

The first *Grinnell* factor favors approval. If the settlement is not approved, significant additional time, effort, and expense would be incurred to resolve remaining discovery disputes, conduct class discovery, prepare for trial, make pre-trial submissions and motions, complete a complicated class action trial, make post-trial submissions, and pursue possible appeals. Risk, expense, and delay are inherent in this process. Courts have recognized that this factor favors settlement under similar circumstances. *See Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078, 2008 WL 4185813, at *4 (S.D.N.Y. Sept. 9, 2008) (Berman, J.) ("The first *Grinnell* factor . . . supports the Settlement because, among other reasons, significant additional time, effort, and expense would be incurred to complete the trial, make post-trial submissions, and pursue likely appeals.").

The second *Grinnell* factor also supports approval. Class members support the settlement. No class member objected to the settlement. Howell Decl. ¶ 28. No class members requested exclusion from the Rule 23 Pennsylvania State Settlement Class or the FLSA Collective. Only 2 individuals requested exclusion from the Rule 23 New York State Settlement Class and only 15

requested exclusion from the Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class. Howell Decl. ¶ 30. With such strong support, this factor favors approval of the settlement. *See Visa*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Ayers*, 2008 WL 4185813, at *4 (settlement approved where one objection was filed out of 2,476 potential class members).

The third *Grinnell* factor also favors approval of the settlement. As discussed above in section II, this action had been heavily litigated before the parties reached the settlement. The parties engaged in significant formal and informal discovery, analyzed voluminous time and compensation data, interviewed putative class members, and were considering at the time of mediation various motions, including class certification and motions for summary judgment. *See supra* section II; Howell Decl. at ¶¶ 14, 21. The substantial amount of discovery permitted the parties to gain a full understanding of the issues. Accordingly, this factor favors approval of the settlement.

The fourth through sixth *Grinnell* factors—the risks faced by the class in establishing liability and damages and maintaining the class action—all support approval of the settlement. In considering the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) (internal quotation marks omitted). Even in actions where establishing liability appears to be a near certainty, courts recognize the inherent risks of submitting any claim to a jury. *See, e.g., McBean v. City of New York,* 233 F.R.D. 377, 387 (S.D.N.Y. 2006) ("[T]here are no guarantees in life, and while it appears likely that plaintiffs would be able to establish liability at trial, things change.").

14

Plaintiffs believe that their case is strong, but recognize that they faced real litigation and appellate risks if this case did not settle, as these cases are not easily litigated. "Courts have recognized that wage and hour cases involve complex legal issues." *Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *11 (S.D.N.Y. Apr. 16, 2012). Plaintiffs also recognize the risks posed by continued litigation, including the challenges associated with obtaining Rule 23 certification of the New York and Pennsylvania classes and maintaining the FLSA claim as a collective action. Plaintiffs also face substantial risks proving liability and damages. Defendant has asserted certain defenses against individual class representatives that could potentially bar class certification, such as standing challenges and FLSA exemptions. Defendant also asserted class-wide FLSA exemptions, which if successful would be a complete defense to all wage and hour claims, that the class members qualified as exempt commissioned salespersons under section 7(i) of the FLSA and parallel state law exemptions. The issues are complex, and as demonstrated by the previous proceedings, would be vigorously contested, resulting in significant expense if the litigation should continue. A number of the legal issues could be reviewed *de novo* on appeal, such as the lingering standing question. Without settlement, there is meaningful risk that the class members would receive less than the settlement amount or nothing. In sum, the *Grinnell* elements of risk all existed here. *See Craig v. Rite Aid Corp.*, No. 08 Civ. 2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013) ("It is undisputed that copious risks abound with respect to maintaining this [retail misclassification] action and establishing liability[.]").

The seventh *Grinnell* factor is not relevant here. This factor alone does not suggest that the settlement is unfair. *Torres v. Gristede's Oper. Corp.*, No. 04 Civ. 3316, 2010 WL 5507892, at *6 (S.D.N.Y. Dec. 21, 2010) ("[A] defendant's ability to withstand a greater judgment,

standing alone, does not suggest that the settlement is unfair." (internal quotation marks omitted)) (citing authorities).

The eighth and ninth factors also favor approval of the settlement. "There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the judge will not be reversed if the appellate court concludes that the settlement lies within that range." *Visa*, 396 F.3d at 119. Whether a specific settlement amount is "reasonable . . . is not susceptible to a mathematical equation yielding a particularized sum." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003). A "settlement can be approved even when it amounts to only a small percentage of the recovery sought." *Id.* (citing authorities); *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).

Here, the $2,500,000.00 settlement is reasonable because it is a substantial compromise of a fiercely disputed matter that will provide significant benefits to each class member who joined the federal claim or who elected not to opt-out, with payments averaging as follows:

| Class Type | Average Payment |
| --- | --- |
| FLSA Collective | $6,599.55 |
| Rule 23 NY Wage Class | $3,317.13 |
| Rule 23 PA Wage Class | $2,518.90 |
| Rule 23 NY WTPA Class | $110.80 |

*See* Howell Decl. ¶ 32.

While Plaintiffs might have been able to obtain a larger amount at trial, the "proposed settlement provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo*, 258 F. Supp. 2d at 260. Even if a "class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery." *Id.* at 261. Any class member who believed that he or she would have been entitled to more could have opted out and pursued an independent remedy.

Additionally, the fairness of the settlement was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. *See Visa*, 396 F.3d at 119 (recognizing importance of district court's finding that "experienced and able counsel fought this litigation 'aggressively' and 'negotiated feverishly.'") (quotation omitted).

In sum, the *Grinnell* factors weigh in favor of final approval. Because the settlement is "fair, adequate, and reasonable, and not a product of collusion," *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant final approval of this settlement.

B.    The Standards And Procedures For Final Approval Of Class Action Settlements <u>Under The FLSA Have Been Satisfied</u>.

In evaluating a proposed settlement of FLSA claims, the court "must determine whether the settlement is a fair and reasonable resolution of a *bona fide* dispute." *Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (quoting *Zhou v. Wang's Rest.*, No. 05 Civ. 279, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007)). Settlements should be approved where they reflect a "reasonable compromise over issues." *Id.*

This action involves numerous disputed issues under the FLSA including whether employees who worked in positions as Inside Sales Representatives or Showroom Sales Personnel were susceptible to the commissioned salesperson exemption under section 7(i) of the FLSA, which included a detailed examination of Peloton's status as a "retail or service establishment," and unique remote work environments during the COVID pandemic. In addition, it is uncertain whether Plaintiffs could maintain their collective action through trial given the dispositive motions pending at the time of the settlement mediation. In short, this settlement provides a reasonable resolution of a *bona fide* dispute. Final approval of the FLSA settlement is appropriate.

  C. Final Certification Is Appropriate To Resolve All Claims Against Peloton Interactive, Inc.

The Supreme Court has confirmed the legitimacy of class certification for settlement purposes, explaining that "the 'settlement only' class has become a stock device" and that "all Federal Circuits . . . recognize [its] utility . . . ." *Amchem*, 521 U.S. at 618. Before granting such certification, the district court must find that the proposed settlement class satisfies all the requirements of Rule 23(a) and that the action is sustainable under Rule 23(b). *Id.* at 620-21. Here, these Rule 23(a) and (b) requirements have been met for settlement purposes, as the Court already found when it granted preliminary approval. *See* ECF No. 158.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Thus, the parties request that the Court finally certify the Rule 23 settlement classes as follows:

Rule 23 New York State Settlement Class: All former and current employees who worked for Peloton as ISRs, and who allegedly worked more than forty hours in one or more workweeks of their employment in the state of New York, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2016, and July 7, 2023.

<u>Rule 23 Pennsylvania State Settlement Class</u>: All former and current employees who worked for Peloton as non-exempt Showroom Sales Personnel, who allegedly worked more than forty hours in one or more workweeks of their employment in the state of Pennsylvania, and who allegedly were not paid overtime for all hours worked at the statutorily required rate of one-and one-half times their regular rate of pay, at any time between January 27, 2019, and July 7, 2023.

<u>Rule 23 New York Initial Hire Notice and Wage Statement Settlement Class</u>: All current and former employees who worked for Peloton in the state of New York from January 27, 2016 through December 31, 2020, excluding those current and former employees who have released claims against Peloton under the NYLL.

On July 13, 2022, the Court granted conditional certification of the FLSA Collective.

(ECF No. 61). Because the Court has already determined that the action is appropriate for

conditional certification, certification is also appropriate for settlement purposes.

V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs request that the Court finally approve their class

action settlement. Plaintiffs have conferred with Defendant, which does not intend to oppose this

motion. *See* Howell Decl. ¶ 34.

Dated: December 14, 2023

Respectfully submitted,

By: /s/ Jason R. Bristol                          /s/ J.R. Howell
Jason R. Bristol (OH #0072989) (*pro hac vice*)   J.R. Howell (CA #268086) (*pro hac vice*)
jbristol@crklaw.com                               jrhowell@jrhlegalstrategies.com
James B. Rosenthal (OH #0062872) (*pro hac vice*)  LAW OFFICE OF J.R. HOWELL
jbr@crklaw.com                                    1223 Wilshire Boulevard
COHEN ROSENTHAL & KRAMER LLP                       P.O. Box 543
3208 Clinton Avenue                               Santa Monica, CA 90403
Cleveland, Ohio 44113                             Phone: (202) 650-8867
(216) 815-9500 (Tel.)

***Attorneys for Plaintiffs, the FLSA Collective, and the Rule 23 Classes***